UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO MAYEN,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>　　　　　　　　　Defendants. | Case No.: 17-CV-50 JLS (MDD)<br><br>**ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISMISS; AND**<br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**<br><br>(ECF Nos. 6, 6-2) |

　　　　Presently before the Court is Defendant New Penn Financial, LLC's Motion to Dismiss Plaintiff's Complaint or for a More Definite Statement, ("MTD," ECF No. 6-1). Also before the Court are Plaintiff Julio Mayen's Response in Opposition and Objection to, ("Opp'n," ECF No. 7), and Defendant's Reply in Support of, ("Reply," ECF No. 8), Defendant's MTD, as well as Defendants' Request for Judicial Notice in Support of Motion to Dismiss, ("RJN," ECF No. 9-2). The Court vacated the hearing on the motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 9.) After considering the parties' arguments and the law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's RJN and **GRANTS** Defendant's MTD.

# BACKGROUND

On December 27, 2004, Plaintiff Julio Mayen purchased the residential property located at 15335 Castle Peak Lane, Jamul, CA 91935 (the "Property") with a $1,088,000 loan, secured by a deed of trust on the Property, from Countrywide Home Loans, Inc. (Compl. ¶ 18, ECF No. 1.) Plaintiff "allegedly defaulted on the loan" on March 1, 2009. (*Id.* ¶ 19.) On December 24, 2013, Plaintiff alleges that Resurgent Capital Services L.P. ("Resurgent") "sent Plaintiff a letter stating they have acquired the servicing rights of Plaintiffs [sic] defaulted loan." (*Id.* ¶ 20.) In response, Plaintiff claims he "sent Resurgent a debt validation letter disputing the amount and validity of the debt" on January 31, 2014. (*Id.* ¶ 21.) Shortly thereafter, Plaintiff alleges he received "a notice from Resurgent and Shellpoint transferring servicing rights to Shellpoint" on February 14, 2014, (*id.* ¶ 22), and in response, Plaintiff claims he "sent Shellpoint a debt validation letter disputing the amount and validity of the debt" on March 31, 2014, (*id.* ¶ 23).

Plaintiff further alleges that in response to Plaintiff's letters disputing his debt, "Shellpoint has provided documents as if Plaintiff has requested a Qualified Written Request (QWR) instead of account-level documents substantiating the amount and validity of the debt," and that "[t]o this date, Defendant has never validated or verified the alleged debt." (*Id.* ¶ 24.) In addition, Plaintiff alleges that "Defendant, for the past 12 months, has sent Plaintiff six demands for payment without providing any account-level documentation substantiating the amount of the debt." (*Id.* ¶ 25.) Finally, Plaintiff alleges that "Defendant's correspondence regarding debt amounts due are very inconsistent and confusing." (*Id.* ¶ 26.)

Plaintiff filed a complaint against Defendant on January 11, 2017, alleging causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, *et seq.* ("RFDCPA"). (*See generally* Compl.) Plaintiff brings three claims against Defendant based on these allegations: (1) Defendant's continued collection activity of a disputed debt violates FDCPA Section 1692g(b); (2) Defendant's false representation

of the character and amount of Plaintiff's debt violates FDCPA Section 1692e(2)A; and (3) Defendant's violations of the FDCPA constitute violations of the RFDCPA. (*See generally id.*) Plaintiff seeks statutory and actual damages, attorney's fees, costs, and injunctive relief. (*Id.* ¶¶ 29, 31.) On March 17, 2017, Defendant moved to dismiss Plaintiff's Complaint or for a more definite statement. (ECF No. 6.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*,

550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). When a plaintiff appears pro se, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson*, 295 F.3d at 895. Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Furthermore, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdick v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## ANALYSIS

### I. Request for Judicial Notice

Defendant's Motion to Dismiss is accompanied by a Request for Judicial Notice. (*See generally* RJN.) Although within the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Court generally may not consider matters outside of the pleadings, *see* Fed. R. Civ. P. 12(d), it is nonetheless "appropriate for the Court to take notice of 'relevant facts obtained from the public record . . . .' " *See Papasan*, 478 U.S. at 298; *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012) (noting

that a court may "take judicial notice of undisputed matters of public record" and that "documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents" (citing *Lee v. City of L.A.*, 250 F.3d 668, 688, 689 (9th Cir. 2001))).

      Defendant moves the Court to take judicial notice of fourteen exhibits in support of its motion: (1) the Deed of Trust recorded on December 30, 2004 in the Official Records of the County Recorder's Office of San Diego County, California; (2) the Assignment of Deed of Trust recorded on June 13, 2011 in the Official Records of the County Recorder's Office of San Diego County, California; (3) the Notice of Default and Election to Sell under Deed of Trust recorded on February 29, 2016 in the Official Records of the County Recorder's Office of San Diego County, California; (4) the Notice of Trustee's Sale recorded on June 27, 2016 in the Official Records of the County Recorder's Office of San Diego County, California; (5) the Electronic Docket from Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (6) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on February 21, 2013 in Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (7) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on March 22, 2013 in Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (8) the Electronic Docket from Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (9) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on August 22, 2016 in Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (10) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on September 20, 2016 in Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (11) the Electronic Docket from Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California; (12) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on November 28, 2016 in Case No. 16-07181-LT13, United States Bankruptcy

Court for the Southern District of California; (13) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on January 4, 2017 in Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California; and (14) the Notice of Entry of Order Dismissing Case and Vacating All Automatic Stays and Injunctions issued on March 9, 2017 in Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California. (*See generally* RJN.)

Plaintiff opposes all documents filed by Defendant for "trying to make this case about [Plaintiff's] alleged debt." (Opp'n 6.[1]) Plaintiff further argues that the exhibits filed by Defendant "are irrelevant in this case for the simple reason that this case is about the *conduct* of Shellpoint as they attempted to collect an alleged debt" and that "[t]his is a very straight forward claim for violations of the FDCPA and the Rosenthal Act resulting from Shellpoint's conduct and has nothing to do with any alleged debt." (*Id.* (emphasis in original).) However, Plaintiff does not question the authenticity of Defendant's Exhibits 1 and 3[2] and the documents are objectively verifiable. *See* Fed. R. Evid. 201(b). Given the foregoing, and because Defendant's argument that Plaintiff's failure to allege facts supporting claims under the FDCPA and RFDCPA has the potential to dispose of all of Plaintiff's causes of action, the Court find Exhibits 1 and 3 are validly judicially noticed.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's RJN.

II. **Motion to Dismiss**

Defendant moves to dismiss Plaintiff's FDCPA and RFDCPA claims on multiple grounds: (1) judicial estoppel from Plaintiff's three prior bankruptcies bars Plaintiff from bringing this entire action; (2) Plaintiff fails to allege facts supporting claims under the FDCPA or RFDCPA; and (3) Plaintiff fails to include a necessary and indispensable

---

[1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

[2] Because the Court does not need to consider Exhibits 2 or 4–14 to rule on Defendant's MTD, *infra* Sections II.A–B, the Court does not grant judicial notice to Exhibits 2 or 4–14.

party—co-borrower, Sarah A. Mayen. (*See generally* Defendant's Memorandum of Points and Authorities to Its Motion to Dismiss or for a More Definite Statement ("MTD"), ECF No. 6-1.) Alternatively, Defendant requests that Plaintiff provide a more definite statement. (*Id.*) However, before the Court can determine whether judicial estoppel bars this entire action, the Court must first determine whether Plaintiff's allegations support a cause of action under the FDCPA or RFDCPA. If Plaintiff is unable to allege sufficient facts supporting the plausibility of his claims that Defendant violated the FDCPA or RFDCPA, then Plaintiff never had a claim to disclose during Plaintiff's bankruptcy proceedings.

### A. Whether Plaintiff Failed to State a Claim for Violation of the FDCPA

Defendant argues that it does not qualify as a debt collector under the FDCPA because Plaintiff "has not alleged Shellpoint began servicing his loan after he had already defaulted" and "[a]s the complaint currently stands, it is altogether unclear what the status of the loan was at the time of service transfer to Shellpoint." (MTD 4–5.) Defendant further argues that Plaintiff's claim "fails because his loan obligation serviced by Shellpoint is not a 'consumer debt' for FDCPA purposes" and even if Plaintiff's mortgage loan did qualify as a consumer debt under the FDCPA, "the complaint does not contain a single specific fact connecting Shellpoint's conduct to any FDCPA prohibition." (*Id.* at 5.) In response, Plaintiff argues that Defendant qualifies as a debt collector under the FDCPA because "the alleged default date of the alleged loan was March 1, 2009 which was at least four and a half years prior to" Plaintiff receiving the February 14, 2014 "notice from Resurgent/Shellpoint transferring servicing rights to Shellpoint." (Opp'n 12.) And therefore, Plaintiff argues, Defendant's failure to respond to Plaintiff's March 31, 2014 "debt [v]alidation letter disputing the amount and validity of the debt" and Defendant's "six different demands for payment without providing any account-level documentation substantiating the amount of the alleged debt" constitute "continued collection activity of a disputed debt making this lawsuit ripe and proper for this claim." (*Id.* at 13.)

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA "regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." *Gonzales v. Arrow Financial Servs., LLC*, 660 F.3d 1055, 1060–61 (9th Cir. 2011). To state a claim under the FDCPA, a plaintiff must show: (1) that he is a consumer; (2) that the debt arises out of a transaction entered into for personal, family, or household purposes; (3) that the defendant qualifies as a debt collector under 15 U.S.C. § 1692a(6); and (4) that the defendant violated one of the provisions of the FDCPA. *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal. 2011). Because Plaintiff's debt originates from his obligation to pay for property he purchased for personal use, only the third and fourth prongs are at issue here.

### *(1)   Whether Defendant Qualifies as a Debt Collector*

Under the FDCPA, "[t]he term 'debt collector' means any person who . . . [is] in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Section 1692a(6)(F)(iii) of the FDCPA exempts—among other entities—"a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) ("[D]ebt collector does not include those 'mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing . . . .' ") (summarizing and quoting S. Rep. No. 95–382, at 3–4 (1977), *reprinted in* 1977 U.S.C.C.C.A.N. 1695, 1698); *id.* ("[E]xemption in § 1692a(6)(F)(iii) was intended to apply to mortgage companies and other parties 'whose business is servicing *current* accounts . . . .' ") (summarizing and quoting Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection Practices Act § 803, 53 Fed. Reg. 50,097, 50,103 (Dec. 13, 1988) (emphasis in original)). Therefore, to

determine the threshold issue of whether Defendant, a mortgage servicing company, qualifies as a debt collector, the Court must first address whether Plaintiff's debt was in default at the time it was assigned to Defendant.

Because the FDCPA does not define "in default," "courts interpreting Section 1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at issue." *De Dios*, 641 F.3d at 1074; *cf. id.* at 1075 n.3 (noting further that the FDCPA's "legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue."). Here, the recorded Deed of Trust to Plaintiff's property that Defendant filed as Exhibit 1 states the following:

> Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

(MTD Ex. 1, ECF No. 6-3, at 11.) However, the recorded Notice of Default and Election to Sell Under Deed of Trust filed by Defendant as Exhibit 3 identifies Plaintiff's debt as delinquent and overdue since March 1, 2009. (MTD Ex. 3, ECF No. 6-3, at 73 ("A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following: The monthly installment which became due on 3/1/2009, along with late charges, and all subsequent monthly installments.").)

Defendant's arguments that Plaintiff never alleged the loan was in default are unavailing. Plaintiff alleges in the Complaint that he "allegedly defaulted on the loan" on March 1, 2009, and that on February 14, 2014, he "received a notice from Resurgent and Shellpoint transferring servicing rights to Shellpoint." (Compl. ¶¶ 18, 22.) Plaintiff further alleges that "Shellpoint acquired the servicing rights of Plaintiff's consumer debt over four

and a half years after default . . . ." (*Id.* ¶ 16; *see also id.* ¶ 3 (noting that Plaintiff's claim is brought "as a result of Defendant's conduct in the collection of an alleged consumer debt in default for over four and a half years prior to being assigned to Defendant for collection").) In response to Plaintiff's allegations, Defendant neither disputes that the mortgage loan was in default, nor cites to any evidence to support that argument in its MTD or Reply. The Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. Given that payments on the loan were overdue and delinquent for over four and a half years, the Court finds that Plaintiff sufficiently alleges facts plausibly showing that the debt was in default at the time it was assigned to Defendant. Accordingly, the Court concludes that Defendant qualifies as a debt collector under the FDCPA.

>  (2) *Whether Defendant's Conduct Violated 15 U.S.C. § 1692g*

Section 1692g governs the validation of debts and requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice." § 1692g(a). The initial communication or notice must contain the following information:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgement against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id.* To satisfy the requirements of § 1692g(a), "the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently

prominent to be noticed . . . [and it] must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (quoting *Swanson v. S. Or. Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). In this circuit, courts assess the sufficiency of a notice "under the 'least sophisticated debtor' standard." *Swanson*, 869 F.2d at 1225. The purpose of the standard is " 'to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1062 (quoting *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000)). However, the standard also " 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.' " *Id.* (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

Section 1692g(b) identifies the following course of action for a consumer to dispute a debt and the appropriate response from the debt collector:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Section 1692g was added to the FDCPA "specifically to ensure that debt collectors gave consumers adequate information concerning their legal rights." *Swanson*, 869 F.2d at 1225. Thus identification of the sender of the notice is central to whether a notice is deficient because § 1692g(a) requires the entity seeking collection of any debt to send an initial communication or notice with the requisite information identified above. Moreover, any determination on the sufficiency of a defendant's notice of debt requires reviewing the information contained in the notice and the manner in which it is presented. However, §§ 1692g(a) and 1692g(b) also require that a consumer wishing to dispute a debt must do so

within thirty days of receipt of notice of debt, and a "tardy request for verification of the debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt." *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999).

Plaintiff alleges that on February 14, 2014, he "received a notice from Resurgent and Shellpoint transferring servicing rights to Shellpoint." (Compl. ¶ 22.) Because the notice was not an exhibit to the Complaint, the Court is unable to ascertain from Plaintiff's allegations which debt collector, Resurgent or Shellpoint, sent the notice. Furthermore, the Court cannot ascertain from Plaintiff's allegations what information the notice contained, aside from identifying the transfer of servicing rights from Resurgent to Shellpoint. Consequently, the Court must find that Plaintiff's allegations do not plausibly state a claim that Defendant's notice was deficient under § 1692g(a).

To be sure, allegations that Defendant violated § 1692g(a) are not necessary for Plaintiff's claim that Defendant separately violated § 1692g(b). However, Plaintiff alleges that he sent Defendant "a debt validation letter disputing the amount and validity of the debt" on March 31, 2014, (*id.* ¶ 23), i.e., forty-five days after the notice sent from Resurgent/Shellpoint. Based on Plaintiff's own allegations, his debt validation letter was untimely and Defendant was under no obligation to verify the debt. Therefore the Court must find that Plaintiff fails to state a facially plausible claim that Defendant violated § 1692g(b) of the FDCPA. Accordingly, the Court **GRANTS** this portion of Defendant's MTD.

        *(3)    Whether Defendant's Conduct Violated 15 U.S.C. § 1692e(2)A*

Plaintiff claims that Defendant violated § 1692e(2)A for the following reasons: (a) "Defendant has never substantiated the principle amount of this alleged debt as true and accurate;" (b) "Defendant's correspondence regarding debt amounts due are [sic] very inconsistent and confusing;" and (c) "Defendant has falsely represented the character and amount of this debt." (Compl. ¶ 26.) In response, Defendant argues that "the complaint does not contain a single specific fact connecting Shellpoint's conduct to any FDCPA prohibition." (MTD 5.)

Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Section 1692e(2)A specifically identifies "[t]he false representation of—the character, amount, or legal status of any debt" as conduct that violates § 1692e. In this circuit, "liability under § 1692e of the FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. Determining whether conduct violates § 1692e "requires an objective analysis that takes into account whether the 'least sophisticated debtor would likely be misled by a communication.' " *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (internal quotation marks omitted)). Furthermore, the FDCPA "does not ordinarily require proof of intentional violation, and is a strict liability statute." *Gonzales*, 660 F.3d 1055 (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 667 F.3d 939, 948 (9th Cir. 2011)).

Ultimately, Plaintiff's claim that Defendant violated § 1692e(2)A rests on Defendant's alleged failure to substantiate the amount of Plaintiff's debt. However, as the *Mahon* court instructed, a "tardy request for verification of the debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt." 171 F.3d at 1202 ("If no written demand is made, 'the collector may assume the debt to be valid.' ") (quoting *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996)). Again, based on Plaintiff's own allegations and absent any allegations that Defendant's notice was deficient, Plaintiff's debt validation letter was untimely and Defendant was under no obligation to verify the debt. Therefore, the Court must find the debt amount to be valid, and that Plaintiff fails to state a facially plausible claim that Defendant violated § 1692e(2)A of the FDCPA. Accordingly, the Court **GRANTS** this portion of Defendant's MTD.

### B. Whether Plaintiff Failed to State a Claim for Violation of the Rosenthal Act

Plaintiff alleges that Defendant's violations of the FDCPA also constitute violations of the RFDCPA under California Civil Code section 1788.17. (Compl. ¶¶ 25–26.) As California's version of the FDCPA, the RFDCPA "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations."

*Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17). Therefore, whether a debt collector's conduct "violates the [RFDCPA] turns on whether it violates the FDCPA." *Id.* Because Plaintiff's RFDCPA claims are based on the same allegations as his FDCPA claims, the analysis above, *supra* Section II.A.3, applies here and Plaintiff's RFDCPA claims must also fail. Accordingly, the Court **GRANTS** this portion of Defendants' MTD.

### C. Whether Judicial Estoppel Bars Plaintiff's Claims

Defendant argues that Plaintiff's claims are judicially estopped for failure to disclose them in his three prior bankruptcies. (MTD 3.) In response, Plaintiff argues that "[t]he alleged bankruptcies have been withdrawn by plaintiff and as a result have no bearing on the claims of the defendants making their claims moot as a result." (Opp'n 7.) Plaintiff further argues that he has always maintained the same position in each of his three bankruptcy cases, i.e., "that the alleged debt is and has been disputed" and that Defendant has "never validat[ed] or verif[ied] the alleged debt." (*Id.* at 7–8.) However, because the Court above determined that Plaintiff's causes of action should be dismissed, the Court does not reach this argument.

### D. Whether Plaintiff Failed to Include a Necessary and Indispensable Party

Finally, Defendant argues that Plaintiff's failure to join Sarah A. Mayen, a co-borrower on the mortgage loan, as an indispensable party under Fed. R. Civ. P. 19(a) is a sufficient basis for dismissal. (MTD 7; Reply 4.) Again, because the Court above determined that Plaintiff's causes of action should be dismissed, the Court does not reach this argument.

### CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's RJN, (ECF No. 6-1), and **GRANTS** Defendant's MTD on all causes of action, (ECF No. 6). Nonetheless, the Court will not yet dismiss Plaintiff's claims with prejudice. *E.g.*, *Polich v. Burlington N. Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review,

1  that the complaint could not be saved by any amendment." (citing *Kelson v. City of Springfield*, 767 F.2d 651, 653 (9th Cir. 1985))). Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's Complaint and **GRANTS** Plaintiff leave to file an amended Complaint, if any, <u>on or before fourteen days from the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: August 16, 2017

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

15

17-CV-50 JLS (MDD)