**AKERMAN LLP**
PRESTON K. ASCHERIN (SBN 260361)
Email: preston.ascherin@akerman.com
PARISA JASSIM (SBN 273915)
Email: parisa.jassim@akerman.com
601 West Fifth Street, Suite 300
Los Angeles, California 90071
Telephone:  (213) 688-9500
Facsimile:   (213) 627-6342

Attorneys for Defendant
NEW PENN FINANCIAL, LLC dba
SHELLPOINT MORTGAGE SERVICING

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO MAYEN,<br><br>  Plaintiff,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>  Defendants | Case No. 3:17-CV-0050-JLS-MDD<br>Assigned to the Hon. Janis L. Sammartino<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES TO ITS MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT AS TO PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br><u>Documents Filed Herewith</u><br>1. Notice of Motion to Dismiss<br>2. Request for Judicial Notice<br>3. Order<br>4. Proof of Service<br><br><u>Hearing Date:</u><br>Date:   November 16, 2017<br>Time:   1:30 p.m.<br>Crtrm.: 4D<br><br>Complaint Filed:   January 11, 2017<br>FAC Filed:   September 20, 2017<br>Trial Date:   None |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In 2004, Mr. Mayen and his spouse, non-party Sarah A. Mayen, borrowed over one million dollars to buy property at 15335 Castle Peak Lane, Jamul, California. They are over $600,000.00 past due on their loan. Rather than cure the default, Mr. Mayen has filed multiple bankruptcies and this lawsuit seeking to legitimize his refusal to make loan payments and also pursuing a baseless $2,000,000.00 damages award.

His factually barren, nominally amended first amended complaint (**FAC**) fails to state a claim:

- **First**, judicial estoppel continues to bar this entire action due to Mr. Mayen's *three* prior bankruptcies.[1]

- **Second**, Mr. Mayen fails to allege facts supporting claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (**FDCPA**) or the Rosenthal Fair Debt Collection Practices Act, Cal Civ. Code § 1788, *et seq*. (**Rosenthal Act** or **RFDCPA**). This court found Mr. Mayen's original FDCPA and RFDCPA claims were deficient due to his failure to allege timely debt validation disputes. In response, Mr. Mayen filed an FAC with exhibits conclusively establishing untimeliness.

- **Third**, Mr. Mayen still fails to include Ms. Mayen despite her being a necessary and indispensable party to the suit.[2]

These incurable deficiencies warrant dismissing with prejudice.

///
///
///
///

---

[1] The court did not consider or reach the judicial estoppel arguments raised in Shellpoint's motion to dismiss the original complaint, granting the motion on other, independent grounds.

[2] Like Shellpoint's judicial estoppel arguments, the court did not consider or reach this argument in the original motion to dismiss, though neither does the FAC attempt to cure the deficiency.

## II. STATEMENT OF FACTS

### A. The Loan and Deed of Trust

On December 27, 2004, Julio Mayen and co-borrower Sarah A. Mayen obtained a $1,088,000.00 loan from Countrywide Home Loans, Inc., secured by a deed of trust on 15335 Castle Peak Lane, Jamul, California 91935. (Request for Judicial Notice (**RJN**), Ex. 1.) On June 13, 2011, Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide, recorded a document assigning the beneficial interest under the deed of trust to The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07. (RJN, Ex. 2.)

On February 29, 2016, the Law Offices of Les Zieve, as substituted trustee, recorded a notice of the Mayens' default of $633,368.93. (RJN, Ex. 3.) On June 27, 2016, that trustee recorded a notice of trustee's sale, with a total loan balance of $1,531,800.03. (RJN, Ex. 4.) No sale has taken place.

### B. Mr. Mayen's Bankruptcy Filings

On February 21, 2013, Mr. Mayen filed a chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Southern District of California, initiating case number 3:13-01660-LT13. (RJN, Exs 5-6.) Mr. Mayen's filed schedules failed to disclose his present claims against Shellpoint. (RJN, Ex. 7.) This first bankruptcy was discharged on May 23, 2013. (RJN, Ex. 5.)

On August 22, 2016, Mr. Mayen filed a second chapter 13 bankruptcy petition in the Southern District, initiating case number 3:16-05104-LT13. (RJN, Exs. 8-9.) Mr. Mayen again failed to disclose his instant claims. (RJN, Ex. 10.) The second bankruptcy was discharged on January 11, 2017. (RJN, Ex. 8.)

On November 28, 2016, Mr. Mayen filed a *third* chapter 13 bankruptcy petition in the Southern District, initiating case number 3:16-07181-LT13. (RJN, Exs. 11-12.) He failed to disclose his claims again. (RJN, Ex. 13.) The third bankruptcy was dismissed on March 7, 2017. (RJN, Ex. 14.)

### III. <u>LEGAL STANDARD</u>

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. *Allarcom Pay Television v. Gen. Instrument Corp.*, 69 F.3d 381, 385 (9th Cir. 1995). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding.").

### IV. <u>ARGUMENT</u>

#### A. **Judicial Estoppel Bars this Entire Case**

Mr. Mayen's claims should be held judicially estopped because he failed to disclose them in his three bankruptcy proceedings. Judicial estoppel is meant to prevent litigants from "playing fast and loose" with the courts by advancing inconsistent positions in the same, or different, cases. *See Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 783 (9th Cir. 2001); *Aguilar v. Lerner*, 32 Cal. 4th 974, 986 (2004). The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the

position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." *Aguilar* at 986.

Mr. Mayen's FAC alludes to conduct occurring between 2014 and 2016. (FAC ¶¶ 20-24.) Two of his three bankruptcies were initiated later but neither mention his dispute here. (RJN, Exs. 8-14.) Under the bankruptcy code, all of a debtor's interests in property at the time his petition is filed, including any claims he may have, must be added to the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). Mr. Mayen abused the bankruptcy process by failing to schedule the claims he now alleges against Shellpoint in his bankruptcy schedules. (*See* RJN, Exs. 7, 10, 13.) When a debtor fails to disclose all assets, he is judicially estopped from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Without judicial estoppel, the debtor "would gain a windfall by receiving the protection of the bankruptcy court without having disclosed a potential asset while retaining the possibility of a settlement or verdict" on the undisclosed claim. *Caviness v. England,* No. CIV S-04-2388 GEB DAD PS, 2007 WL 1302522, at *10-11 (E.D. Cal. May 3, 2007).

The same is true even where the bankruptcy is ultimately dismissed, as was the case with Mr. Mayen's third bankruptcy. (RJN, Ex. 14.) *See Swendsen v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-02082, 2014 WL 1155794, at *6 (E.D. Cal. Mar. 21, 2014) ("Here, Plaintiff received the benefit of automatic stays under the bankruptcy code for both of his bankruptcies [including his second dismissed bankruptcy]. The bankruptcy court assumed the truth of Plaintiff's schedules, which stated that he did not have any potential claims when indeed he did."); *Sharp v. Nationstar Mortgage LLC*, No. 14-CV-00831, 2014 WL 4365116, at *6 (N.D. Cal. Sept. 3, 2014) (applying judicial estoppel where plaintiff's successive bankruptcy petitions were dismissed).

**B.    Mr. Mayen Cannot State a Claim for "Violations of the FDCPA"**

Mr. Mayen accuses Shellpoint of violating the FDCPA by providing him with payment demands missing "account-level documentation substantiating the amount of

the debt as true and correct." (FAC, ¶¶ 25-26.) The claim is insufficiently pled and inapplicable to Shellpoint.

To state a claim under the FDCPA, a plaintiff must show: (1) he is a consumer; (2) the debt arises out of a transaction entered into for personal, family, or household purposes; (3) the defendant qualifies as a debt collector under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions of the FDCPA. *Freeman v. ABC Legal Servs., Inc.*, 827 F.Supp.2d 1065, 1071 (N.D. Cal. 2011).

Section 1692g(a) governs validation of debts and requires "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice." The initial communication or notice must contain: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. Mr. Mayen does not allege Shellpoint violated Section 1692g(a), and the initial notices attached to the FAC (as Exhibits A-2 and C) demonstrate compliance by both Resurgent Mortgage Servicing and Shellpoint.

Section 1692g(b) identifies the following course of action for a consumer to dispute a debt and the appropriate response from the debt collector: if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a), the debt is disputed, or the consumer requests the name and address of

the original creditor, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor.

Under Sections 1692g(a) and (b), a consumer wishing to dispute a debt must do so within thirty days of receipt of notice of debt.  As the court rightly recognized in its August 16, 2017 order, a "tardy request for verification of the debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt." *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999).

Understanding this requirement, Mr. Mayen alleges he received two initial notices: one from Resurgent "on January 7, 2014" and one from Shellpoint "on March 4, 2014."  (FAC, ¶¶ 20, 22.)  He claims he timely responded to each letter disputing the validity of the debt on January 31, 2014 and March 31, 2014, respectively.  (FAC, ¶¶ 21, 23; Exs. B and D.)  Despite what Mr. Mayen alleges, however, his own exhibits conclusively demonstrate the untimeliness of his responses.  The initial Resurgent letter, Exhibit A-2, is dated December 24, 2013.  The envelope enclosing the letter is postmarked December 26, 2013.[3]  Relying on his own exhibits, then, Mr. Mayen's January 31, 2014 dispute fell outside the thirty-day window.

The same is true for the initial notice sent by Shellpoint, which Mr. Mayen claims to have received on March 4, 2014.[4]  The letter itself, attached to the FAC as Exhibit C, is dated February 14, 2014 and was postmarked February 20, 2014.  Again, Mr. Mayen does not explain his contrary allegations and, considering his own exhibits, his March 31, 2014 dispute was untimely.  Without a timely dispute, Shellpoint was "under no obligation to verify the debt," whether or not it actually did, and Mr. Mayen cannot state a facially plausible claim Shellpoint violated the FDCPA.  (*See* Court's Order, Doc. 11, 12:17 and 13:20.)  And, importantly, to the extent the exhibits contradict Mr. Mayen's unexplained allegations, the exhibits control.  *Barnett v.*

---

[3] Mr. Mayen's original complaint alleges this letter was sent December 24, 2013. (Complaint, ¶ 20.)

[4] Mr. Mayen previously admitted receipt on February 14, 2014.  (Complaint, ¶ 22.)

*Fireman's Fund Ins. Co.*, 90 Cal.App.4th 500, 505 (2001) (When "the factual allegations conflict with the content of the exhibits to the complaint, we rely on and accept as true the contents of the exhibits and treat as surplusage the pleader's allegations as to the legal effect of the exhibits").

### C.    "Violations of the Rosenthal Act" Fails

Mr. Mayen's second claim for violations of the Rosenthal Act asks the court to refer to other conclusory paragraphs complaining Shellpoint failed to provide him with "account-level documentation."  (FAC, ¶¶ 25-26.)  As this court already determined, the RFDCPA "mimics or incorporates by reference the FDCPA's requirements … and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17).  Whether a defendant's conduct violates the RFDCPA then "turns on whether it violates the FDCPA."  *Id*.  Mr. Mayen's RFDCPA claims in his FAC are based on identical allegations as his FDCPA claims.  Based on the analysis above, Mr. Mayen's RFDCPA claims necessarily fail.

### D.    Sarah A. Mayen is a Necessary and Indispensable Party

Mr. Mayen is one of two borrowers on this loan.  (RJN, Ex. 1.)  Co-borrower Sarah A. Mayen, is not a named party and, in her absence, the court cannot hear this case.  A party to a contract generally is a necessary and indispensable party. *Martin v. City of Corning*, 25 Cal.App.3d 165, 169 (1972); *accord Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable."); *see also School Dist. of the City of Pontiac v. Sec. of the U.S. Dep't of Ed*., 584 F.3d 253 (6th Cir. 2009) ("It is hornbook law that all parties to a contract are necessary in an action challenging its validity or interpretation.").  The loan agreement at issue was plainly a contract.  *See, e.g.*, *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 478-80 (1989) (recognizing loan agreement is a contract).

Ms. Mayen is a co-borrower on the loan whose rights and obligations would be impacted by the outcome in this case and it cannot not go forward without her.

## V. CONCLUSION

For the second time, Mr. Mayen's complaint requires Shellpoint and the court to speculate on the factual bases for his claims and, as pled, does not state a plausible ground for his suit. On top of these factual deficiencies, Mr. Mayen's claims are judicially estopped due to his prior bankruptcies, and his claims cannot proceed without Sarah A. Mayen. The court should dismiss Mr. Mayen's first amended complaint with prejudice.

Dated: October 4, 2017

Respectfully submitted,

**AKERMAN LLP**

By: */s/ Parisa Jassim*
    Preston K. Ascherin
    Parisa Jassim
Attorneys for Defendant
NEW PENN FINANCIAL, LLC
dba SHELLPOINT MORTGAGE SERVICING