UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO MAYEN,<br><br>         Plaintiff,<br><br>v.<br><br>NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING,<br><br>         Defendant. | Case No.: 17-CV-50 JLS (MDD)<br><br>**ORDER: (1) GRANTING DEFENDANT'S MOTION TO DISMISS; (2) GRANTING DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; AND (3) DENYING PLAINTIFF'S MOTION TO STRIKE**<br><br>(ECF Nos. 18, 26) |

   Presently before the Court is Defendant New Penn Financial, LLC's Motion to Dismiss Plaintiff's Complaint or for a More Definite Statement, ("MTD," ECF No. 18). Also before the Court are Plaintiff Julio Mayen's Response in Opposition and Objection to, ("Opp'n," ECF No. 23), and Defendant's Reply in Support of, ("Reply," ECF No. 24), Defendant's Motion, as well as Defendant's Request for Judicial Notice in Support of Motion to Dismiss, ("RJN," ECF No. 18-3). The Court vacated the hearing on the Motion and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 25.) Additionally, Plaintiff filed a Motion to Strike Defendant's Reply, (ECF No. 26), and Defendant filed a Response in Opposition, (ECF No. 27), to Plaintiff's Motion. The Court

vacated the hearing on the Motion to Strike and took the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 28.) After considering the parties' arguments and the law, the Court **GRANTS** Defendant's Request for Judicial Notice, **GRANTS** Defendant's Motion to Dismiss, and **DENIES** Plaintiff's Motion to Strike.

## BACKGROUND

On December 27, 2004, Plaintiff Julio Mayen purchased a residential property located at 15335 Castle Peak Lane, Jamul, California 91935 (the "Property") with a $1,088,000 loan, secured by a deed of trust on the Property, from Countrywide Home Loans, Inc. (First Am. Compl. ("FAC"), ECF No. 15, ¶ 18.) Plaintiff "allegedly defaulted on the loan" on March 1, 2009. (*Id.* ¶ 19.) On January 7, 2014, Plaintiff alleges that he received a letter from Resurgent Capital Services L.P. ("Resurgent") stating that Resurgent acquired the servicing rights of Plaintiff's defaulted loan. (*Id.* ¶ 20; Ex. A-1.) In response, Plaintiff claims he "sent Resurgent a debt validation letter disputing the amount and validity of the debt" on January 31, 2014. (*Id.* ¶ 21; Ex. B.) On March 4, 2014, Plaintiff alleges he received a letter from Resurgent and Defendant Shellpoint indicating that the entities had merged and Resurgent transferred servicing rights to Defendant Shellpoint. (*Id.* ¶ 22; Ex. C.) In response, Plaintiff claims he "sent Shellpoint a 2nd Request for Debt Validation letter disputing the amount and validity of the debt" on March 31, 2014. (*Id.* ¶ 23, Ex. D.)

Plaintiff further alleges that in response to Plaintiff's letters disputing his debt, "Shellpoint has provided documents as if Plaintiff has requested a Qualified Written Request (QWR) instead of account-level documents substantiating the amount and validity of the debt." (*Id.* ¶ 24; Ex. E.) In addition, Plaintiff alleges that Defendant Shellpoint sent Plaintiff seven demands for payment without providing any "account-level documentation substantiating the amount of the debt." (*Id.* ¶ 25; Exs. F-1 to F-7.)

Plaintiff filed a complaint against Defendant on January 11, 2017, alleging causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code

section 1788, *et seq.* ("RFDCPA"). (*See generally* ECF No. 1.) On March 17, 2017, Defendant moved to dismiss Plaintiff's complaint or for a more definite statement. (ECF No. 6.) The Court granted Defendant's motion, (ECF No. 11). Plaintiff then filed his First Amended Complaint, resulting in the present motions.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions"

contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). When a plaintiff appears pro se, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson*, 295 F.3d at 895. Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). Furthermore, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdick v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

## ANALYSIS

### I. Motion to Strike

The Court addresses Plaintiff's Motion to Strike first because Plaintiff moves the Court to strike Defendant's Reply as untimely. (ECF No. 26, at 6.) Specifically, Plaintiff states that Defendant's Reply brief was filed January 5, 2018, but the brief was due January 4, 2018 according to the briefing schedule published by this Court on November 6, 2017, (*see* ECF No. 20, at 2). (ECF No. 26, at 6.) In the same order, the Court set a deadline for Plaintiff's Opposition brief for December 28, 2017. (*Id.*)

Defendant responds that a plaintiff who cannot file electronically has a duty to mail

his brief to the opposing party three days prior to the deadline for filing with the court. (ECF No. 27, at 3 (citing Civil Local Rule 7.1(e)(4)).) Defendant argues that it late-filed Reply brief was a symptom of Plaintiff's late-filed Opposition. (*Id.*)

Civil Local Rule 7.1(e)(4) requires parties who mail motions or oppositions to mail service for those motions or oppositions three days before the court deadlines. The rule also states "[t]he extension of time for service does not extend court filing deadlines." Civil Local R. 7.1(e)(4). By Plaintiff's own admission, he mailed his Opposition to Defendant on December 28, 2017, the deadline for filing with the Court. (ECF No. 26, at 7.) Thus, Plaintiff did not comply with the mail service deadline, which required Plaintiff to send his Opposition three days before the Court-imposed filing date of December 28, 2017.[1]

The intent behind Civil Local Rule 7.1(e)(3) and the Court's briefing schedule is to allow a defendant a full seven days to read and respond to a plaintiff's opposition brief. Because Plaintiff's Opposition was mailed to Defendant on December 28, 2017, there was no way for Defendant to receive its full seven days to respond. Moreover, Plaintiff's Opposition was not timely served on Defendant. The Court finds that the late filings—by both parties—constitute harmless error. Therefore, the Court **DENIES** Plaintiff's Motion to Strike, (ECF No. 26).

## II. Request for Judicial Notice

Defendant's Motion to Dismiss is accompanied by a Request for Judicial Notice. (*See generally* RJN.) Although within the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court generally may not consider matters outside of the pleadings, *see* Fed. R. Civ. P. 12(d), it is nonetheless "appropriate for the Court to take notice of 'relevant facts obtained from the public record.'" *See Papasan v. Allain*, 478 U.S. 265, 298 (1986); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012) (noting that a court may "take judicial notice of undisputed matters of public

---

[1] Nor did Defendant receive Plaintiff's Opposition electronically through the Clerk's Office. The Clerk's Office received Plaintiff's Opposition on December 28, 2017, but the Court did not accept Plaintiff's filing, *nunc pro tunc*, until January 3, 2017, (ECF No. 22).

record" and that "documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents" (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688, 689 (9th Cir. 2001))).

Defendant requests the Court take judicial notice of fourteen exhibits in support of its Motion.[2] Defendant contends that its requests support its contention that Plaintiff's claim should be barred by judicial estoppel. (*See* MTD 4–5.)[3]

Plaintiff opposes the request because, according to Plaintiff, Defendant is "trying to make this case about [Plaintiff's] alleged debt." (Opp'n 7.) Plaintiff further argues that the exhibits filed by Defendant "are irrelevant in this case for the simple reason that this case is about the conduct of Shellpoint as they attempted to collect an alleged debt" and that "[t]his is a very straight forward claim for violations of the FDCPA and the Rosenthal

---

[2] Those documents are: (1) the Deed of Trust recorded on December 30, 2004 in the Official Records of the County Recorder's Office of San Diego County, California; (2) the Assignment of Deed of Trust recorded on June 13, 2011 in the Official Records of the County Recorder's Office of San Diego County, California; (3) the Notice of Default and Election to Sell under Deed of Trust recorded on February 29, 2016 in the Official Records of the County Recorder's Office of San Diego County, California; (4) the Notice of Trustee's Sale recorded on June 27, 2016 in the Official Records of the County Recorder's Office of San Diego County, California; (5) the Electronic Docket from Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (6) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on February 21, 2013 in Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (7) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on March 22, 2013 in Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of California; (8) the Electronic Docket from Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (9) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on August 22, 2016 in Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (10) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on September 20, 2016 in Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern District of California; (11) the Electronic Docket from Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California; (12) the Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on November 28, 2016 in Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California; (13) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by Plaintiff on January 4, 2017 in Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California; (14) the Notice of Entry of Order Dismissing Case and Vacating All Automatic Stays and Injunctions issued on March 9, 2017 in Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of California. (*See generally* RJN.)

[3] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each page.

Act resulting from Shellpoint's conduct and has nothing to do with any alleged debt." (*Id.* (emphasis omitted).) Specifically, Plaintiff concedes that Defendant's exhibits one through three could be admitted to prove that they exist, but not for the truth of the contents documents themselves. (*See id.* at 8–11.) Plaintiff argues exhibit four is a "void document" and exhibits five through fourteen are not relevant to the case. (*Id.* at 11.)

In reply, Defendant argues that all the documents it submitted are "matters of public record" and courts routinely consider these types of documents without converting a motion to dismiss into a motion for summary judgment. (Reply 2 (citing, e.g., *Villavalzo v. America's Servicing Co.*, No. CV 11–4868 CAS (MANx), 2012 WL 3018059, at *1 n.1 (C.D. Cal. July 23, 2012)).) Defendant points the Court to *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256 (Ct. App. 2011), where the California Court of Appeal considered a similar argument as Plaintiff advances here. (Reply 3.)

The Court will judicially notice Defendant's exhibits for the fact of their existence. The Court does not rely on exhibits for the truth asserted within those documents. The exhibits related to Plaintiff's various bankruptcy litigation are also judicially noticeable. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). Accordingly, the Court **GRANTS** Defendant's Request for Judicial Notice, with the foregoing limitations discussed above.

### III. Motion to Dismiss

Defendant moves to dismiss Plaintiff's FDCPA and RFDCPA claims on three grounds: (1) judicial estoppel from Plaintiff's three prior bankruptcies bars Plaintiff from bringing this entire action; (2) Plaintiff fails to allege facts stating a claim under the FDCPA or RFDCPA; and (3) Plaintiff fails to include a necessary and indispensable party—co-borrower, Sarah A. Mayen. (*See generally* MTD.) The Court addresses each in turn.

#### A. Judicial Estoppel

Defendant first argues that Plaintiff's FDCPA and RFDCPA claims are barred by judicial estoppel. (*Id.* at 4.) Specifically, Plaintiff filed bankruptcy petitions and did not disclose his present claims and Defendant urges the Court to judicially estop Plaintiff's

claims in the present case based on his prior lack of disclosure. (*See id.* 4–5.) Because the Court finds that Plaintiff fails to state a claim for violation of the FDCPA or RFDCPA, it does not reach the judicial estoppel question.

### *B. FDCPA Claims*

To state a claim for a FDCPA violation a plaintiff must demonstrate: (1) she is a "consumer" under 15 U.S.C. § 1692a(3); (2) the debt arises out of a transaction entered into for personal purposes; (3) the defendant is a "debt collector" under 15 U.S.C. § 1692a(6); and (4) the defendant violated one of the provisions contained in 15 U.S.C. §§ 1692a–1692o. *Wheeler v. Premiere Credit of N. Am., LLC*, 80 F. Supp. 3d 1108, 1112 (S.D. Cal. 2014) (citing *Turner v. Cook*, 362 F.3d 1219, 1226–27 (9th Cir. 2004)). Defendant argues that Plaintiff fails to demonstrate that Defendant violated a provision of the FDCPA. Plaintiff brings claims under § 1692g(b) and § 1692e(2)(A). The Court considers each in turn.

### *1. Whether Defendant's Conduct Violated 15 U.S.C. § 1692g*

Section 1692g governs the validation of debts and requires that "within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information[4] is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice." 15

---

[4] The initial communication or notice must contain the following information:
> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 1692g(a).

U.S.C. § 1692g(a). As relevant here, the initial communication must notify the consumer that she has the right to dispute the validity of the debt within thirty days after receipt of the initial communication. *Id.* To satisfy the requirements of § 1692g(a), "the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed . . . [and it] must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). In this circuit, courts assess the sufficiency of a notice "under the 'least sophisticated debtor' standard." *Swanson*, 869 F.2d at 1225. The purpose of the standard is "'to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors." *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1062 (9th Cir. 2011) (quoting *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000)). However, the standard also "'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care.'" *Id.* (alterations in original) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008)).

Plaintiff alleges that on January 7, 2014, he received two initial disclosures from Resurgent, one notifying him that Resurgent acquired the servicing rights of his loan and one letter demanding payment. (FAC ¶ 20.) Defendant contends that Resurgent's initial disclosures demonstrate compliance with § 1692g(a) and also points out that Plaintiff does not allege a violation of § 1692g(a). (MTD 6.) The Court agrees that Resurgent's letters meet the initial disclosure requirements of § 1692g(a). Plaintiff then alleges that he sent Resurgent a "debt validation letter" on January 31, 2014. (FAC ¶ 21.) A consumer's debt verification request triggers certain debt collector duties under § 1692g(b).

Section 1692g(b) identifies the following course of action for a consumer to dispute a debt and the appropriate response from the debt collector:

If the consumer notifies the debt collector in writing within the thirty-day

9

17-CV-50 JLS (MDD)

> period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

Sections 1692g(a) and 1692g(b) both establish that a consumer wishing to dispute a debt must do so within thirty days of receipt of initial communication. Moreover, a "tardy request for verification of the debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt." *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1203 (9th Cir. 1999).

Defendant argues that Plaintiff's request for verification was tardy. (MTD 7.) In his First Amended Complaint, Plaintiff alleged he received two initial notices: one from Resurgent on January 7, 2014 and one from Defendant on March 4, 2014.[5] (*Id.* (citing FAC ¶¶ 20, 22).) Plaintiff alleges that he timely responded by mailing his requests for verification within the thirty-day window: on January 31, 2014 and March 31, 2014 respectively. (*Id.* (citing FAC ¶¶ 21, 23).) Defendant argues that the exhibits attached to Plaintiff's FAC clearly contradicts his allegations. First, the initial Resurgent letter was postmarked December 26, 2013. (*Id.* (citing Ex. A-2).) Second, Defendant's initial letter

---

[5] There are several letters referenced throughout this section. The Court attempts to clarify the order of letters as follows:
- January 7, 2014: Plaintiff received initial communication from Resurgent, consisting of two letters.
- January 31, 2014: Plaintiff sent his first debt verification request to Resurgent.
- March 4, 2014: Plaintiff received joint notice, sent by Resurgent and Defendant, that Resurgent was transferring service to Defendant.
- March 31, 2014: Plaintiff sent his second debt verification request based on the notice he received March 4, 2014 to both Resurgent and Defendant.
- May 23, 2014: Defendant responded to Plaintiff's January 31 and March 31, 2014 debt verification requests.
- After May 23, 2014: Defendant sent monthly mortgage statements requesting payment.

The question the Court seeks to answer is whether Defendant satisfied § 1692g(b) in both its March 4, 2014 and May 23, 2014 letters.

was postmarked February 20, 2014. (*Id.* (citing Ex. C).) Defendant argues that the exhibits contradict Plaintiff's allegations and the exhibits control over unexplained allegations. (*Id.* at 7–8 (citing *Barnett v. Fireman's Fund Ins. Co.*, 90 Cal. App. 4th 500, 505 (Ct. App. 2001)).) Defendant contends Plaintiff's thirty-day window would have ended January 24, 2014 and March 21, 2014, respectively. Therefore, Plaintiff's requests for verification were untimely and Defendant would not be under any obligation to verify the debt.

Plaintiff responds that the FDCPA's thirty-day window is triggered when a debt collector's notice is received. (Opp'n 18 (citing 15 U.S.C. § 1692g(a)(3)).) He argues that he alleges that he received the notices on January 7, 2014 and March 4, 2014 and that Defendant does not refute his allegations. (*Id.* at 18–19.) Plaintiff goes on to argue that the fact that there is a six-day delay in a document being postmarked creates reasonable doubt as to when the document arrived at the post office. (*Id.* at 19.)

Defendant's argument hinges on whether the postmark date definitively contradicts the date Plaintiff alleges he received the letters. According to the United States Postal Service's Handbook PO-408, "A postmark is an official Postal Service imprint applied in black ink on the address side of a stamped mailpiece. A postmark indicates the location and date the Postal Service accepted custody of a mailpiece, and it cancels affixed postage." United States Postal Service Handbook PO-408, at 1-1.3 Postmarks, https://about.usps.com/handbooks/po408/ch1_003.htm.[6] The postmark affixed to Resurgent and Defendant's letters demonstrate the date the Postal Service accepted custody of those letters. This is not conclusively the date on which Plaintiff received those letters.

The common law "mailbox rule" provides that "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee." *Mahon*, 171 F.3d at 1202 (quoting *Anderson v. United States*, 966 F.2d 487, 491 (9th Cir. 1992)). Yet, Plaintiff does not dispute receiving Defendant's letters; only the date on which he

---

[6] The Court may take judicial notice of publicly available government documents, including those on government websites. *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1033 (C.D. Cal. 2015) (collecting cases).

received them. Therefore, the Court must accept Plaintiff's factual allegations as true, including his allegations that he received the letters on January 7, 2014 and March 4, 2014. Accordingly, Plaintiff's debt verification requests were within the thirty-day window.

Plaintiff sent his first debt verification request letter on January 31, 2014. (Ex. B., at 21–23.) At this stage in the proceeding, the Court assumes that Plaintiff dispatched his verification request within the thirty-day window. According to § 1692g(b), Defendant had to cease debt collection until it verified Plaintiff's debt, as per his request. On February 14, 2014, Resurgent sent one letter entitled "Notice of Transfer of Servicing" in which Resurgent announced that it was becoming part of Defendant and assured Plaintiff that the change in debt collector would not impact his mortgage. (Ex. C, at 25.) Plaintiff alleges he did not receive this letter until March 4, 2014. Then, Plaintiff sent second debt verification letter on March 31, 2014. (Ex. D, at 30–33.) Defendant then sent a letter to Plaintiff on May 23, 2014, in response to his debt verification request.

The dispositive issue before the Court is whether Defendant's February 14, 2014 letter (received March 4, 2014) and Defendant's May 23, 2014 letter meet the verification requirements of § 1692g(b).

In his FAC, Plaintiff alleges that Defendant did not properly verify his debt, but instead "provided documents as if Plaintiff had requested a Qualified Written Request (QWR) instead of authenticated, account level documents substantiating the amount and validity of the debt." (FAC ¶ 24 (citing Ex. E).) Defendant does not take any position about the sufficiency of its February 14, 2014 letter or its May 23, 2014 letter in its moving papers.

In *Clark v. Capital Credit & Collection Services, Inc.*, the Ninth Circuit held that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." 460 F.3d 1162, 1173–74 (9th Cir. 2006) (citing *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1999)). Here, Defendant's May 23, 2014 letter not only confirmed the amount Defendant claimed it was owed—$1,436,550.39—but also included documents such as copies of the

assignment and the deed of trust.  (Ex. E, at 33–34.)  The May 23, 2014 letter clearly met the threshold articulated in *Clark*.  Therefore, Defendant's May 23, 2014 letter and all communications after May 23, 2014[7] do not violate the FDCPA because Defendant fulfilled its § 1692g(b) verification obligation.

The only unaccounted for letter is the February 14, 2014 letter sent by Resurgent and Defendant notifying Plaintiff that Resurgent was transferring service to Defendant.  (Ex. C.)  It does not appear that Defendant and Resurgent wrote the letter directly in response to Plaintiff's January 31, 2014 request for debt verification.  Yet, Defendant's response stated "[y]our loan number is 0515393708, our records indicate that as of 2/14/2014 this loan has an unpaid principal balance of $1,178,080.66, and is due for the 3/1/2009 installment."  (*Id.* at 25.)  Thus, Defendant confirmed in writing the amount demanded was the amount Defendant claimed was owed.  Because Defendant's letters met the verification requirements under the FDCPA, Plaintiff fails to state a claim under 15 U.S.C. § 1692g(b).

*2. Whether Defendant's Conduct Violated 15 U.S.C. § 1692e(2)(A)*

Plaintiff alleges violations of § 1692e(2)(A) because "Defendant has never substantiated the principle amount of this alleged debt as true and accurate" and "Defendant's correspondence regarding debt amounts due are [sic] very inconsistent and confusing."  (FAC ¶ 27.)  Plaintiff concludes "Defendant has falsely represented the character and amount of this debt."  (*Id.*)  Neither party addresses this allegation in their moving papers.

Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Section 1692e(2)(A) specifically identifies "[t]he false representation of—the character, amount,

---

[7] Defendant's statements subsequent to the May 23, 2014 verification letter were monthly statements. (*See, e.g.*, Ex. F-2, at 43.)  District courts in this circuit have found that similar monthly statements also meet the FDCPA verification requirement.  *See Rodriguez v. Discovery Bank*, No. 11cv2155 BTM (NLS), 2012 WL 1520073, at *3 (S.D. Cal. Apr. 30, 2012) (citing *Healey v. Trans Union LLC*, No. C09-956JLR, 2011 WL 1900149, at *8 (W.D. Wash. May 18, 2011)).  Thus, Defendant's subsequent monthly statements do not form the basis for a § 1692g(b) claim.

or legal status of any debt" as conduct that violates § 1692e. In this circuit, "liability under § 1692e of the FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. Determining whether conduct violates § 1692e "requires an objective analysis that takes into account whether the 'least sophisticated debtor would likely be misled by a communication.'" *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (internal quotation marks omitted) (quoting *Guerrero v. RJM Acquisitions LLC*, 499 F.3d 926, 934 (9th Cir. 2007). "The 'least sophisticated debtor' standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'" *Gonzales*, 660 F.3d at 1061 (quoting *Terran*, 109 F.3d at 1432). "The standard is 'designed to protect consumers of below average sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when those individuals are targeted by debt collectors. *Id.* (quoting *Duffy*, 215 F.3d at 874–75; and citing *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 774 (7th Cir. 2007)).

However, the least sophisticated debtor standard "preserv[es] a quotient of reasonableness and presume[es] a basic level of understanding and willingness to read with care." *Id.* (alterations in original) (quoting *Rosenau*, 539 F.3d at 221). Furthermore, the FDCPA "does not ordinarily require proof of intentional violation, and is a strict liability statute." *Id.* (citing *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 667 F.3d 939, 948 (9th Cir. 2011)).

Plaintiff's first allegation is "Defendant . . . never substantiated the principle [sic] amount of this alleged debt as true and accurate." (FAC ¶ 27.) As previously discussed, Defendant met its obligation to verify the debt upon Plaintiff's request. Section 1692e does not impose an affirmative duty on Defendant to further substantiate the debt—only to refrain from falsely misrepresenting the debt. Next, Plaintiff alleges that Defendant's correspondence is "very inconsistent and confusing" and therefore Defendant falsely represented the character and amount of the debt. (*Id.*) This statement does not provide sufficient factual allegations as to what, specifically, in Defendant's correspondence is inconsistent and confusing. Even accepting Plaintiff's allegation as true, he does not state

14

17-CV-50 JLS (MDD)

or describe what, specifically, about Defendant's correspondence is false. Put differently, the least sophisticated debtor standard requires the Court to examine whether *particular language* would deceive or mislead a reasonable debtor. *See Gonzales*, 660 F.3d at 1061. Plaintiff does not identify with any specificity the "particular language" that is inconsistent and confusing; thus, the Court cannot apply the least sophisticated debtor standard to Plaintiff's allegations.

Therefore, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's first cause of action.

### C. Whether Plaintiff States a Claim for Violation of the Rosenthal Act

Plaintiff alleges that Defendant's violations of the FDCPA also constitute violations of the RFDCPA under California Civil Code section 1788.17. (FAC ¶¶ 25–27.) As California's version of the FDCPA, the RFDCPA "mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17). Therefore, whether a debt collector's conduct "violates the [RFDCPA] turns on whether it violates the FDCPA." *Id.* Because Plaintiff's RFDCPA claims are based on the same allegations as his FDCPA claims, the analysis above, *see supra* section II.B, applies here and Plaintiff's RFDCPA claims must also fail. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITHOUT PREJUDICE** Plaintiff's second cause of action.

### D. Whether Plaintiff Failed to Include a Necessary and Indispensable Party

Finally, Defendant argues that Plaintiff's failure to join Sarah A. Mayen, a co-borrower on the mortgage loan, as an indispensable party under Federal Rule of Civil Procedure 19(a) is a sufficient basis for dismissal. (MTD 8; Reply 5.) Because Plaintiff fails to state a claim, the Court need not reach this argument.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's RJN, (ECF No. 18-3), **DENIES** Plaintiff's Motion to Strike, (ECF No. 26), and **GRANTS** Defendant's

Motion to Dismiss, (ECF No. 18).  Nonetheless, the Court will not dismiss Plaintiff's claims with prejudice at this time.  *See, e.g.*, *Polich v. Burlington N. Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment." (citing *Kelson v. City of Springfield*, 767 F.2d 651, 653 (9th Cir. 1985))).  While the Court entertains serious doubts concerning Plaintiff's ability to adequately re-plead his claims, the Court will grant him another opportunity to do so.  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint.  Plaintiff **MAY FILE** an amended complaint, if any, <u>on or before twenty-one (21) days from the date on which this Order is electronically docketed</u>.  *Failure to file within the specified time period may result in this case being dismissed with prejudice*.

**IT IS SO ORDERED**.

Dated:  May 29, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge