FILED

SEP 1 0 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Julio Mayen
15335 Castle Peak Lane
Jamul, CA  91935
ekultan@gmail.com
(619) 669-9904

# District court of the United States
# at the Southern district of California

| | |
|---|---|
| **Julio Mayen,**<br> *Plaintiff,* ***Pro Se,***<br><br>          **vs.**<br><br>NEW PENN FINANCIAL, LLC<br>dba SHELLPOINT MORTGAGE<br>SERVICING,<br>          *Defendants.* | Case No.  17-CV-50 JLS (MDD)<br><br>**THIRD AMENDED VERIFIED<br>COMPLAINT FOR DAMAGES**<br><br><br>**JURY TRIAL REQUESTED** |

## I. COMPLAINT

The United States Congress wrote the Fair Debt Collection Practice Act, (FDCPA), Exhibit <u>TAC-1</u>, to eliminate abusive debt collection practices by 'debt collectors', to insure those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent state action to protect consumers against unscrupulous debt collection abuses.

The California legislature has joined Congress in their efforts to protect consumers from unscrupulous debt collection abuses by passing the Rosenthal Fair Debt Collections Act (Rosenthal Act), California Civil Code (CCC), §1788, et seq., Exhibit <u>TAC-2</u>.

This claim for damages is brought by an individual Plaintiff against the Defendants for actual and statutory damages, costs, and attorney's fees pursuant to American Jurisprudence 2d, Fraud and Deceit §23 **Fraud action**; and §35 **Necessity of false representation; definiteness**, FDCPA § 813(a)(b)(c)(d)(e) Civil liability, and the Rosenthal Act § 1788.30(a)(b)(c)(d)(e)(f)(g) Liability of debt collector; individual action; actual and punitive damages; costs; cure of violation; venue; defenses.

Plaintiff seeks the dismissal of Defendants foreclosure proceedings in toto, monetary compensation for damages suffered at the hands of Defendants actions, and any other relief this Honorable Court may grant Plaintiff.

## II. JURISDICTION AND VENUE

This court has jurisdiction pursuant to 15 U.S.C §1692k(d); 28 U.S.C. §1331; and CCC §1788.30(f). Plaintiff resides in San Diego County, California. Defendants action derives its existence in San Diego, California.

Venue is proper in the southern district of California.

## III. PARTIES AND DEFINITIONS

I, Julio Mayen, a 'person' as defined in CCC §1788.2(g) and a 'consumer' as defined in FDCPA §803(3) Definitions, and 15 U.S.C. §1692(a)3.

Defendant New Penn Financial, LLC, dba Shellpoint Mortgage Servicing (Shellpoint), located at 75 Beattie Pl., #300, Greenville, SC 29601, is no more than a 'debt collector' according to this Honorable Court, see Exhibit <u>TAC-3</u>  , Court Order dated August 16, 2017, page 10 of 15, lines 10-11, that state: "…the Court concludes that Defendant qualifies as a debt collector under the FDCPA", but is a person, and not the "Creditor" in this matter.

**"Creditor"** means, in FDCPA §803(4) Definitions, "…any person who offers or extends credit creating a debt or to whom a debt is owed, *but* such term *does not include any person* to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another." (emphasis mine).

**"Debt collector"** means, in FDCPA §803(6) Definitions, "…any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would

indicate that a third person is collecting or attempting to collect such debts. For the

purpose of section 1692f(6) of this title, such term also includes any person who

uses any instrumentality of interstate commerce or the mails in any business the

principal purpose of which is the enforcement of security interests. The term does

not include --

(A) any officer or employee of a creditor while, in the name of the creditor,

collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom

are related by common ownership or affiliated by corporate control, if the person

acting as a debt collector does so only for persons to whom it is so related or

affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that

collecting or attempting to collect any debt is in the performance of his official

duties;

(D) any person while serving or attempting to serve legal process on any other

person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona

fide consumer credit counseling and assists consumers in the liquidation of their

debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) *concerns a debt which was not in default at the time it was obtained* by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor." (emphasis mine).

**Mortgage Servicing** (Servicer): "The responsibilities (which may be undertaken by a service company hired by the original lender) of mortgage lending, such as collecting installment payments, releasing liens, initiating foreclosure upon default, etc."   Black's Law Dictionary, 6th Edition, page 1012, copyright 1990.

## IV. BACKGROUND

Plaintiff allegedly obtained a residential home loan from Countrywide Home Loans, Inc. (Countrywide), for which a Deed of Trust (DOT), was recorded against Plaintiff's real property located at 15335 Castle Peak Lane, Jamul, CA  91935 on or about 27 December 2004.

On 1 March 2009, Plaintiff allegedly defaulted on the alleged loan.   On 7 January 2014, Plaintiff received two letters, Exhibit TAC-4.1 & TAC-4.2, from Resurgent Capital Services, L.P. (Resurgent).   The first letter was a demand for payment and the second letter stated Resurgent had acquired the servicing rights of Plaintiffs allegedly defaulted loan and demanded payment.

On 31 January 2014, Plaintiff sent Resurgent a debt validation letter, Exhibit TAC-5 within 30 days of correspondence receipt but received no response.

On 4 March 2014, Plaintiff received a letter, Exhibit TAC-6 of merger between Resurgent and Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC (Shellpoint).

On 31 March 2014, Plaintiff sent Shellpoint a second letter of Request For Debt Validation (RFDV) disputing the amount, and validity of the debt, the "debt collector" Shellpoint claims it was owed, cloaking itself in the vail of "Servicer" of the alleged note, Exhibit TAC-7 which is a fraudulent misrepresentation, within 30 days of correspondence receipt.

In response, Shellpoint merely provided false and misleading Qualified Written Request (QWR) documentation, Exhibit TAC-9 instead of the requested authenticated, account-level documents verifying the amount, validity of the debt, and the true "Creditor's" name and address.

# V. FACTUAL ALLEGATIONS

For the past 12 months prior to the filing of this suit, Defendant sent seven (7) demand letters for payment without providing Plaintiff his requested account-level documentation, dishonoring Plaintiff's requests to this day.  Defendant continues to violate FDCPA § 809(a)(1)(2)(3)(4)(5)(b)(c)(d)(e) Validation of debts, 15 U.S.C. §1692g(b) seven (7) times, and Rosenthal Act and violated CCC §1788.17, Compliance with federal provisions, seven (7) times as part of Defendant's fraudulent scheme.

During this law suit proceedings, Defendant has violated the above cited laws two (2) additional times for a total of nine (9) times without providing Plaintiff with RFDV as expressly requested. Plaintiff continues to suffer Defendant's intimidation, coercion and duress tactics, which are illegal and shows Defendant's willfulness to disregard both federal and state statutes for self-enrichment by continuing this fraudulent scheme.

Defendant's corrupt conduct and multiple violations of federal and state laws is causing, and has caused, Plaintiff the following damages:

a. Considerable personal expenses directly relating to the failure of Plaintiff's business with the right for further documentation to be submitted to the Court;

b.  Personal expenses related to seeking a remedy to these proceedings with the right for further documentation to be submitted to the Court;

c.  Substantially diminished credit score and credit reputation with the right for further documentation to be submitted to the Court;

d.  Plaintiff's ability to obtain credit or new employment has been impeded due to these proceedings.

## VI. COUNT

## FDCPA, CCC and Fraud Violations

Plaintiff re-alleges each allegation stated above to include Defendant sending Plaintiff fraudulent documents stating that Defendant is the "Servicer", Exhibit TAC-8.1, TAC-8.2, TAC 8.3 & TAC 8.4, instead of Defendant's actual identity, which this Honorable Court has determined is no more than a 'debt collector', see Exhibit TAC-3, page 10 of 15, lines 10-11, which states: "...the Court concludes that Defendant qualifies as a debt collector under the FDCPA".   Defendant's honesty and integrity are now called into question, and their motive for vailing themselves in a position of authority the Defendant's had no legal right to do, other than to justify their self-enrichment scheme and fraudulent deceptive practice.

Defendants furthered the fraud by knowingly withholding Plaintiff's requested RFDV information showing who the "Creditor" really is.   Today, Defendant cannot provide Plaintiff, nor this Honorable Court, with RFDV documentation showing the "Creditor" and amount owed that Plaintiff requested.

Plaintiff claims that Defendant is committing fraud against Plaintiff, for their actions meeting the threshold requirements for Fraud and Deceit as stipulated in American Jurisprudence 2d, §23 **Fraud action**, which states: "*The five traditional elements of fraud, each of which must be established by evidence that is not equally consistent with either honesty or deceit include: a false representation; in reference to a material fact; made with knowledge of its falsity; with the intent to deceive; and on which an action is taken in justifiable reliance upon the representation.*" (emphasis mine).

Each of the elements above Defendant has committed against Plaintiff.

 Defendant refuses to this day to provide the Plaintiff with the RFDV expressly requested.   Defendant only provides Plaintiff with QWR documents that state in them Defendant is the "Servicer", Exhibit TAC-9, of the note which is *a false representation*. See, *Charpentier v. Los Angeles Rams Football Co., Inc.,* 75 Cal. App. 4th 301, 89 Cal. Rptr. 2d 115 (4th Dist. 1999), review denied, (Jan. 25, 2000).

Defendant went back four and a half (4 ½) years and masqueraded as the "Servicer" on all of Plaintiff's account paperwork, all the while knowing he was merely a "debt collector" with no legal right or power to file a foreclosure case against Plaintiff.

The *material fact* is, Defendant knew it was only a "debt collector" as stipulated in FDCPA §803(6) Definitions and 15 U.S.C. 1692a(6), the entire time and fought to keep itself vailed in the false cloak of being the "Servicer" during these proceedings, that is until the Honorable Court settled the issue by stipulating in Exhibit TAC-3 , page 10 of 15, lines 10-11, stating: "...the Court concludes that Defendant qualifies as a debt collector under the FDCPA."

With Defendant's professional experience in the mortgage servicing business, Defendant knows what the definitions of "Creditor", "Servicer", and "Debt Collector" are in the FDCPA, CCC and Black's Law Dictionary 6th Edition. Defendant had no power or authority as a "debt collector" to file foreclosure paperwork against Plaintiff.   Defendant continues the fraud and charade perpetrated against Plaintiff for Defendants self-enrichment for Defendant cannot tell Plaintiff who the real "Creditor" is in this matter, nor who Defendant would send the mortgage payment to, for Defendant has yet to honor my RFDV request.

Defendant, _knowing it is only a "Debt Collector"_, and not the "Servicer" of the alleged mortgage loan, refused to acknowledge it to Plaintiff in any of its correspondence with Plaintiff prior to the Court Order and continues to do so, Exhibit TAC-8.1, TAC-8.2, TAC-8.3 & TAC-8.4.  Although the Honorable Court stipulated in the Court Order that the Defendant was a "Debt Collector"; Defendant continues to hide behind the false vail of "Servicer" on Plaintiff's mortgage note and/ or DOT.

Defendant's _intent to deceive_ is shown in its continued false portrayal of itself as being the "Servicer" of Plaintiff's mortgage note, and using that fraudulent vail to file fraudulent foreclosure paperwork against Plaintiff.   Defendant even defrauded the state office where Defendant knowingly filed fraudulent paperwork with the state, knowing it was only a "Debt Collector".

Defendant's fraudulent scheme of availing itself as the "Servicer" to foreclose on Plaintiff _justified its action by relying upon the fraudulent representations_ it provided state offices in its fraudulent filing as the "Servicer" and all the correspondence with the Plaintiff claiming to be the "Servicer" when it knew in fact they were only a "Debt Collector", and a violation of the FDCPA §803(6). Defendant continued the "Servicer" faint in court even after the Honorable Judge

1
2
3
4

## VIII. PRAYER

5
6

Plaintiff humbly requests this Honorable Court grant the following:

7
8

1. All foreclosure proceedings be quashed and dismissed with prejudice.

9
10

2. Plaintiff be award actual damages pursuant to FDCPA §813(1); 15 U.S.C.

11

1692k(1) in the amount of $2,000,000.00.

12
13

3. Plaintiff be award additional damages pursuant to FDCPA §813(2); 15

14

U.S.C. 1692k(2) in the amount of $2,500.00 per incident.

15
16
17

Respectfully submitted this 10th day of September 2018.

18
19
20

Julio Mayen, Plaintiff, Pro Se
21
15335 Castle Peak Lane
Jamul, CA  91935
22
619-669-9904
23
ekultan@gmail.com

24
25
26
27
28

1

**Proof of Service**

2

3   I, Julio Mayen, certify that I have served CMRRR a copy of:

4       1 – **Plaintiff's Third Amended Complaint, with Exhibits, against Defendant**

5   **New Penn Financial, LLC, dba Shellpoint Mortgage Servicing (Shellpoint)**, on

6   September 10, 2018 by First Class US Mail to:

7

8

| | |
|---|---|
| 9 AKERMAN LLP<br>PRESTON K. ASCHERIN (SBN 260361)<br>Email: preston.ascherin@akerman.com<br>PARISA JASSIM (SBN 273915)<br>Email: parisa.jassim@akerman.com<br>601 West Fifth Street, Suite 300<br>Los Angeles, California 90071<br>Telephone: (213) 688-9500<br>Facsimile: (213) 627-6342 | Attorneys for Defendant<br>New Penn Financial, LLC, dba<br>Shellpoint Mortgage Servicing<br>(Shellpoint) |

15

16

17                     _Julio Mayen_

18   Julio Mayen, Plaintiff, Pro Se
     15335 Castle Peak Lane
19   Jamul, CA  91935
     619-669-9904
20   ekultan@gmail.com

21

22

23

24

25

26

27

28

# **Exhibit TAC-1**

# Fair Debt Collection Practices Act

## FAIR DEBT COLLECTION PRACTICES ACT

### As amended by Public Law 111-203, title X, 124 Stat. 2092 (2010)

As a public service, the staff of the Federal Trade Commission (FTC) has prepared the following complete text of the Fair Debt Collection Practices Act

§§ 1692-1692p.

Please note that the format of the text differs in minor ways from the U.S. Code and West's U.S. Code Annotated. For example, this version uses FDCPA section numbers in the headings. In addition, the relevant U.S. Code citation is included with each section heading. Although the staff has made every effort to transcribe the statutory material accurately, this compendium is intended as a convenience for the public and not a substitute for the text in the U.S. Code.

**Table of Contents**

§801. Short title
§802. Congressional findings and declaration of purpose
§803. Definitions
§804. Acquisition of location information
§805. Communication in connection with debt collection
§806. Harassment or abuse
§807. False or misleading representations
§808. Unfair practices
§809. Validation of debts
§810. Multiple debts
§811. Legal actions by debt collectors
§812. Furnishing certain deceptive forms
§813. Civil liability
§814. Administrative enforcement
§815. Reports to Congress by the Bureau; views of other Federal agencies
§816. Relation to State laws
§817. Exemption for State regulation
§818. Exception for certain bad check enforcement programs operated by private entities
§819. Effective date

15 USC 1601 note

## § 801. Short Title

This subchapter may be cited as the "Fair Debt Collection Practices Act."

15 USC 1692

## § 802. Congressional findings and declarations of purpose

**(a) Abusive practices**

There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

**(b) Inadequacy of laws**

Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

**(c) Available non-abusive collection methods**

Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

**(d) Interstate commerce**

Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

**(e) Purposes**

It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 USC 1692a

# § 803.  Definitions

As used in this subchapter --

(1) The term "Bureau" means the Bureau of Consumer Financial Protection.

(2) The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

(3) The term "consumer" means any natural person obligated or allegedly obligated to pay any debt.

(4) The term "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another.

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any

debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include --

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(7) The term "location information" means a consumer's place of abode and his telephone number at such place, or his place of employment.

(8) The term "State" means any State, territory, or possession of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any political subdivision of any of the foregoing.

15 USC 1692b

## § 804. Acquisition of location information

Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall --

(1) identify himself, state that he is confirming or correcting location information concerning the consumer, and, only if expressly requested, identify his employer;

(2) not state that such consumer owes any debt;

(3) not communicate with any such person more than once unless requested to do so by such person or unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information;

(4) not communicate by post card;

(5) not use any language or symbol on any envelope or in the contents of any communication effected by the mails or telegram that indicates that the debt collector is in the debt collection business or that the communication relates to the collection of a debt; and

(6) after the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to communication from the debt collector.

15 USC 1692c

## § 805. Communication in connection with debt collection
### (a) Communication with the consumer generally
Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --

(1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; or

(3) at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication.

### (b) Communication with third parties
Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the

consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**(c) Ceasing communication**
If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except --

(1) to advise the consumer that the debt collector's further efforts are being terminated;

(2) to notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3) where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

**(d) "Consumer" defined**
For the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

15 USC 1692d

## § 806.  Harassment or abuse

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3)ᵢ of this title.

(4) The advertisement for sale of any debt to coerce payment of the debt.

(5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.

15 USC 1692e

## § 807.  False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of --

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to --

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this subchapter.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 1681a(f) of this title.

15 USC 1692f

## § 808.  Unfair practices

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5) Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if --

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

(7) Communicating with a consumer regarding a debt by post card.

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

15 USC 1692g

## § 809.  Validation of debts
### (a) Notice of debt; contents
Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing --

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

**(b) Disputed debts**
If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**(c) Admission of liability**
The failure of a consumer to dispute the validity of a debt under this section may not be construed by any court as an admission of liability by the consumer.

**(d) Legal pleadings**
A communication in the form of a formal pleading in a civil action shall not be treated as an initial communication for purposes of subsection (a).

**(e) Notice provisions**
The sending or delivery of any form or notice which does not relate to the collection of a debt and is expressly required by title 26, title V of Gramm-Leach-Bliley Act [15 U.S.C. 6801 et seq.], or any provision of Federal or State law relating to notice of data security breach or privacy, or any regulation prescribed under any such provision of law, shall not be treated as an initial communication in connection with debt collection for purposes of this section.

15 USC 1692h

# § 810. Multiple debts
If any consumer owes multiple debts and makes any single payment to any debt collector with respect to such debts, such debt collector may not apply such payment to any debt which is disputed by the consumer and, where applicable, shall apply such payment in accordance with the consumer's directions.

15 USC 1692i

# § 811. Legal actions by debt collectors
**(a) Venue**
Any debt collector who brings any legal action on a debt against any consumer shall --

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located; or

(2) in the case of an action not described in paragraph (1), bring such action only in the judicial district or similar legal entity --

(A) in which such consumer signed the contract sued upon; or

(B) in which such consumer resides at the commencement of the action.

**(b) Authorization of actions**
Nothing in this subchapter shall be construed to authorize the bringing of legal actions by debt collectors.

15 USC 1692j

## § 812. Furnishing certain deceptive forms

(a) It is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

(b) Any person who violates this section shall be liable to the same extent and in the same manner as a debt collector is liable under section 1692k of this title for failure to comply with a provision of this subchapter.

15 USC 1692k

## § 813. Civil liability

**(a) Amount of damages**
Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of --

(1) any actual damage sustained by such person as a result of such failure;

(2) (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

(B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector; and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

**(b) Factors considered by court**
In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors --

(1) in any individual action under subsection (a)(2)(A) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional; or

(2) in any class action under subsection (a)(2)(B) of this section, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

**(c) Intent**
A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

**(d) Jurisdiction**
An action to enforce any liability created by this subchapter may be brought in any appropriate United States district court without regard to the amount in controversy, or in any other court of competent jurisdiction, within one year from the date on which the violation occurs.

**(e) Advisory opinions of Bureau**
No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the Bureau, notwithstanding that after such act or omission has occurred, such opinion is amended, rescinded, or determined by judicial or other authority to be invalid for any reason.

15 USC 1692l

# § 814.  Administrative enforcement
**(a) Federal Trade Commission**
The Federal Trade Commission shall be authorized to enforce compliance with this subchapter, except to the extent that enforcement of the requirements imposed under this subchapter is specifically committed to another Government agency under any of paragraphs (1) through (5) of subsection (b), subject to subtitle B of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5511 et seq.]. For purpose of the exercise by the Federal Trade Commission of its functions and powers under the Federal Trade Commission Act (15 U.S.C. 41 et seq.), a violation of this subchapter shall be deemed an unfair or deceptive act or practice in violation of that Act. All of the functions and powers of the Federal Trade Commission under the Federal Trade Commission Act are available to the Federal Trade Commission to enforce compliance by any person with this subchapter, irrespective of whether that person is engaged in commerce or meets any other jurisdictional tests under the Federal Trade Commission Act, including the power to enforce the provisions of this subchapter, in the same manner as if the violation had been a violation of a Federal Trade Commission trade regulation rule.

**(b) Applicable provisions of law**

Subject to subtitle B of the Consumer Financial Protection Act of 2010, compliance with any requirements imposed under this subchapter shall be enforced under--

(1) section 8 of the Federal Deposit Insurance Act [12 U.S.C. 1818], by the appropriate Federal banking agency, as defined in section 3(q) of the Federal Deposit Insurance Act (12 U.S.C. 1813(q)), with respect to--

(A) national banks, Federal savings associations, and Federal branches and Federal agencies of foreign banks;

(B) member banks of the Federal Reserve System (other than national banks), branches and agencies of foreign banks (other than Federal branches, Federal agencies, and insured State branches of foreign banks), commercial lending companies owned or controlled by foreign banks, and organizations operating under section 25 or 25A of the Federal Reserve Act [12 U.S.C. 601 et seq., 611 et seq.]; and

(C) banks and State savings associations insured by the Federal Deposit Insurance Corporation (other than members of the Federal Reserve System), and insured State branches of foreign banks;

(2) the Federal Credit Union Act [12 U.S.C. 1751 et seq.], by the Administrator of the National Credit Union Administration with respect to any Federal credit union;

(3) subtitle IV of title 49, by the Secretary of Transportation, with respect to all carriers subject to the jurisdiction of the Surface Transportation Board;

(4) part A of subtitle VII of title 49, by the Secretary of Transportation with respect to any air carrier or any foreign air carrier subject to that part;

(5) the Packers and Stockyards Act, 1921 [7 U.S.C. 181 et seq.] (except as provided in section 406 of that Act [7 U.S.C. 226, 227]), by the Secretary of Agriculture with respect to any activities subject to that Act; and

(6) subtitle E of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5561 et seq.], by the Bureau, with respect to any person subject to this subchapter. The terms used in paragraph (1) that are not defined in this subchapter or otherwise defined in section 3(s) of the Federal Deposit Insurance Act (12 U.S.C. 1813(s)) shall have the meaning given to them in section 1(b) of the International Banking Act of 1978 (12 U.S.C. 3101).

**(c) Agency powers**

For the purpose of the exercise by any agency referred to in subsection (b) of this section of its powers under any Act referred to in that subsection, a violation of any requirement imposed under this subchapter shall be deemed to be a violation of a requirement imposed under that Act. In addition to its powers under any provision of law specifically referred to in subsection (b) of this section, each of the agencies referred to in that subsection may exercise, for the purpose of

enforcing compliance with any requirement imposed under this subchapter any other authority conferred on it by law, except as provided in subsection (d) of this section.

**(d) Rules and regulations**
Except as provided in section 1029(a) of the Consumer Financial Protection Act of 2010 [12 U.S.C. 5519(a)], the Bureau may prescribe rules with respect to the collection of debts by debt collectors, as defined in this subchapter.

15 USC 1692m

## § 815.  Reports to Congress by the Bureau; views of other Federal agencies

(a) Not later than one year after the effective date of this subchapter and at one-year intervals thereafter, the Bureau shall make reports to the Congress concerning the administration of its functions under this subchapter, including such recommendations as the Bureau deems necessary or appropriate. In addition, each report of the Bureau shall include its assessment of the extent to which compliance with this subchapter is being achieved and a summary of the enforcement actions taken by the Bureau under section 1692*l* of this title.

(b) In the exercise of its functions under this subchapter, the Bureau may obtain upon request the views of any other Federal agency which exercises enforcement functions under section 1692*l* of this title.

15 USC 1692n

## § 816.  Relation to State laws

This subchapter does not annul, alter, or affect, or exempt any person subject to the provisions of this subchapter from complying with the laws of any State with respect to debt collection practices, except to the extent that those laws are inconsistent with any provision of this subchapter, and then only to the extent of the inconsistency. For purposes of this section, a State law is not inconsistent with this subchapter if the protection such law affords any consumer is greater than the protection provided by this subchapter.

15 USC 1692o

## § 817.  Exemption for State regulation

The Bureau shall by regulation exempt from the requirements of this subchapter any class of debt collection practices within any State if the Bureau determines that under the law of that State that class of debt collection practices is subject to requirements substantially similar to those imposed by this subchapter, and that there is adequate provision for enforcement.

## § 818.  Exception for certain bad check enforcement programs operated by private entities

**(a) In general**
**(1) Treatment of certain private entities**

(III) if the alleged offender notifies the private entity or the district attorney in writing, not later than 30 days after being contacted for the first time pursuant to clause (iv), that there is a dispute pursuant to this subsection, before further restitution efforts are pursued, the district attorney or an employee of the district attorney authorized to make such a determination makes a determination that there is probable cause to believe that a crime has been committed; and

(vi) charges only fees in connection with services under the contract that have been authorized by the contract with the State or district attorney.

**(b) Certain checks excluded**
A check is described in this subsection if the check involves, or is subsequently found to involve-

(1) a postdated check presented in connection with a payday loan, or other similar transaction, where the payee of the check knew that the issuer had insufficient funds at the time the check was made, drawn, or delivered;

(2) a stop payment order where the issuer acted in good faith and with reasonable cause in stopping payment on the check;

(3) a check dishonored because of an adjustment to the issuer's account by the financial institution holding such account without providing notice to the person at the time the check was made, drawn, or delivered;

(4) a check for partial payment of a debt where the payee had previously accepted partial payment for such debt;

(5) a check issued by a person who was not competent, or was not of legal age, to enter into a legal contractual obligation at the time the check was made, drawn, or delivered; or

(6) a check issued to pay an obligation arising from a transaction that was illegal in the jurisdiction of the State or district attorney at the time the check was made, drawn, or delivered.

**(c) Definitions**
For purposes of this section, the following definitions shall apply:

**(1) State or district attorney**
The term "State or district attorney" means the chief elected or appointed prosecuting attorney in a district, county (as defined in section 2 of title 1), municipality, or comparable jurisdiction, including State attorneys general who act as chief elected or appointed prosecuting attorneys in a district, county (as so defined), municipality or comparable jurisdiction, who may be referred to by a variety of titles such as district attorneys, prosecuting attorneys, commonwealth's attorneys, solicitors, county attorneys, and state's attorneys, and who are responsible for the prosecution of State crimes and violations of jurisdiction-specific local ordinances.

**(2) Check**

The term "check" has the same meaning as in section 5002(6) of title 12.

**(3) Bad check violation**
The term "bad check violation" means a violation of the applicable State criminal law relating to the writing of dishonored checks.

15 USC 1692 note

# § 819. Effective date
This title takes effect upon the expiration of six months after the date of its enactment, but section 809 shall apply only with respect to debts for which the initial attempt to collect occurs after such effective date. (September 20, 1977)

# **Exhibit TAC-2**

# California Fair Debt Collection Practices Act- Rosenthal

### § 1788. Short title
This title may be cited as the California Rosenthal Fair Debt Collection Practices Act.

### § 1788.1. Legislative findings
(a) The Legislature makes the following findings:

(1) The banking and credit system and grantors of credit to consumers are dependent upon the collection of just and owing debts. Unfair or deceptive collection practices undermine the public confidence which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

(2) There is need to ensure that debt collectors and debtors exercise their responsibilities to one another with fairness, honesty and due regard for the rights of the other.

(b) It is the purpose of this title to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts and to require debtors to act fairly in entering into and honoring such debts, as specified in this title.

## Rosenthal Fair Debt Collection Practices Act § 1788.2. Definitions

(a) Definitions and rules of construction set forth in this section are applicable for the purpose of this title.

(b) The term "debt collection" means any act or practice in connection with the collection of consumer debts.

(c) The term "debt collector" means any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection. The term includes any person who composes and sells, or offers to compose and sell, forms, letters, and other collection media used or intended to be used for debt collection, but does not include an attorney or counselor at law.

(d) The term "debt" means money, property or their equivalent which is due or owing or alleged to be due or owing from a natural person to another person.

(e) The term "consumer credit transaction" means a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person primarily for personal, family, or household purposes.

(f) The terms "consumer debt" and "consumer credit" mean money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction.

(g) The term "person" means a natural person, partnership, corporation, limited liability company, trust, estate, cooperative, association or other similar entity.

(h) Except as provided in Section 1788.18, the term "debtor" means a natural person from whom a debt collector seeks to collect a consumer debt which is due and owing or alleged to be due and owing from such person.

(i) The term "creditor" means a person who extends consumer credit to a debtor.

(j) The term "consumer credit report" means any written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's creditworthiness, credit standing, credit capacity, character, general reputation, personal characteristics or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility

for (1) credit or insurance to be used primarily for person, [FN1] family, or household purposes, or (2) employment purposes, or (3) other purposes authorized under any applicable federal or state law or regulation. The term does not include (a) any report containing information solely as to transactions or experiences between the consumer and the person making the report; (b) any authorization or approval of a specific extension of credit directly or indirectly by the issuer of a credit card or similar device; or (c) any report in which a person who has been requested by a third party to make a specific extension of credit directly or indirectly to a consumer conveys his or her decision with respect to that request, if the third party advises the consumer of the name and address of the person to whom the request was made and such person makes the disclosures to the consumer required under any applicable federal or state law or regulation.

(k) The term "consumer reporting agency" means any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages, in whole or in part, in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer credit reports to third parties, and which uses any means or facility for the purpose of preparing or furnishing consumer credit reports.

# Rosenthal Fair Debt Collection Practices Act § 1788.3. Credit union; information to employer who is an employee, officer, etc. of credit union

Nothing contained in this title shall be construed to prohibit a credit union chartered under Division 5 (commencing with Section 14000) of the Financial Code or under the Federal Credit Union Act (Chapter 14 (commencing with Section 1751) of Title 12 of the United States Code) from providing information to an employer when the employer is ordinarily and necessarily entitled to receive such information because he is an employee, officer, committee member, or agent of such credit union.

# Rosenthal Fair Debt Collection Practices Act § 1788.10. Threats; unlawful conduct

No debt collector shall collect or attempt to collect a consumer debt by means of the following conduct:

(a) The use, or threat of use, of physical force or violence or any criminal means to cause harm to the person, or the reputation, or the property of any person;

(b) The threat that the failure to pay a consumer debt will result in an accusation that the debtor has committed a crime where such accusation, if made, would be false;

(c) The communication of, or threat to communicate to any person the fact that a debtor has engaged in conduct, other than the failure to pay a consumer debt, which the debt collector knows or has reason to believe will defame the debtor;

(d) The threat to the debtor to sell or assign to another person the obligation of the debtor to pay a consumer debt, with an accompanying false representation that the result of such sale or assignment would be that the debtor would lose any defense to the consumer debt;

(e) The threat to any person that nonpayment of the consumer debt may result in the arrest of the debtor or the seizure, garnishment, attachment or sale of any property or the garnishment or attachment of wages of the debtor, unless such action is in fact contemplated by the debt collector and permitted by the law; or

(f) The threat to take any action against the debtor which is prohibited by this title.

# Rosenthal Fair Debt Collection Practices Act § 1788.11. Obscene or profane language; use of telephones; unlawful practices

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Using obscene or profane language;

(b) Placing telephone calls without disclosure of the caller's identity, provided that an employee of a licensed collection agency may identify himself by using his registered alias name as long as he correctly identifies the agency he represents;

(c) Causing expense to any person for long distance telephone calls, telegram fees or charges for other similar communications, by misrepresenting to such person the purpose of such telephone call, telegram or similar communication;

(d) Causing a telephone to ring repeatedly or continuously to annoy the person called; or

(e) Communicating, by telephone or in person, with the debtor with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances.

# Rosenthal Fair Debt Collection Practices Act § 1788.12. Communications with third parties; unlawful practices

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Communicating with the debtor's employer regarding the debtor's consumer debt unless such a communication is necessary to the collection of the debt, or unless the debtor or his attorney has consented in writing to such communication. A communication is necessary to the collection of the debt only if it is made for the purposes of verifying the debtor's employment, locating the debtor, or effecting garnishment, after judgment, of the debtor's wages, or in the case of a medical debt for the purpose of discovering the existence of medical insurance. Any such communication, other than a communication in the case of a medical debt by a health care provider or its agent for the purpose of discovering the existence of medical insurance, shall be in writing unless such written communication receives no response within 15 days and shall be made only as many times as is necessary to the collection of the debt. Communications to a debtor's employer regarding a debt shall not contain language that would be improper if the communication were made to the debtor. One communication solely for the purpose of verifying the debtor's employment may be oral without prior written contact.

(b) Communicating information regarding a consumer debt to any member of the debtor's family, other than the debtor's spouse or the parents or guardians of the debtor who is either a minor or who resides in the same household with such parent or guardian, prior to obtaining a judgment against the debtor, except where the purpose of the communication is to locate the debtor, or where the debtor or his attorney has consented in writing to such communication;

(c) Communicating to any person any list of debtors which discloses the nature or existence of a consumer debt, commonly known as "deadbeat lists", or advertising any consumer debt for sale, by naming the debtor; or

(d) Communicating with the debtor by means of a written communication that displays or conveys any information about the consumer debt or the debtor other than the name, address and telephone number of the debtor and the debt collector and which is intended both to be seen by any other person and also to embarrass the debtor.

(e) Notwithstanding the foregoing provisions of this section, the disclosure, publication or communication by a debt collector of information relating to a consumer debt or the debtor to a consumer reporting agency or to any other person reasonably believed to have a legitimate business need for such information shall not be deemed to violate this title.

# **Rosenthal** Fair Debt Collection Practices Act § 1788.13. Misrepresentations in communications; unlawful practices

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Any communication with the debtor other than in the name either of the debt collector or the person on whose behalf the debt collector is acting;

(b) Any false representation that any person is an attorney or counselor at law;

(c) Any communication with a debtor in the name of an attorney or counselor at law or upon stationery or like written instruments bearing the name of the attorney or counselor at law, unless such communication is by an attorney or counselor at law or shall have been approved or authorized by such attorney or counselor at law;

(d) The representation that any debt collector is vouched for, bonded by, affiliated with, or is an instrumentality, agent or official of any federal, state or local government or any agency of federal, state or local government, unless the collector is actually employed by the particular governmental agency in question and is acting on behalf of such agency in the debt collection matter;

(e) The false representation that the consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, finance charges, or other charges if, in fact, such fees or charges may not legally be added to the existing obligation;

(f) The false representation that information concerning a debtor's failure or alleged failure to pay a consumer debt has been or is about to be referred to a consumer reporting agency;

(g) The false representation that a debt collector is a consumer reporting agency;

(h) The false representation that collection letters, notices or other printed forms are being sent by or on behalf of a claim, credit, audit or legal department;

(i) The false representation of the true nature of the business or services being rendered by the debt collector;

(j) The false representation that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made;

(k) The false representation that a consumer debt has been, is about to be, or will be sold, assigned, or referred to a debt collector for collection; or

(l) Any communication by a licensed collection agency to a debtor demanding money unless the claim is actually assigned to the collection agency.

CREDIT(S)
(Added by Stats.1977, c. 907, p. 2771, § 1. Amended by Stats.1980, c. 1126, p. 3626, § 7.)
HISTORICAL AND STATUTORY NOTES
1998 Main Volume
The 1980 amendment deleted former subd. (e); and relettered former subds. (f) to (m) as subds. (e) to (l). Former subd. (e) read:
"The use of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by a court or agency of any federal, state or local government;".

# Rosenthal Fair Debt Collection Practices Act § 1788.14. Affirmation from bankrupt; collection of collector's fee and expenses from debtor; communication with debtor instead of debtor's attorney; unlawful practices

No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:

(a) Obtaining an affirmation from a debtor who has been adjudicated a bankrupt, of a consumer debt which has been discharged in such bankruptcy, without clearly and conspicuously disclosing to the debtor, in writing, at the time such affirmation is sought, the fact that the debtor is not legally obligated to make such affirmation;

(b) Collecting or attempting to collect from the debtor the whole or any part of the debt collector's fee or charge for services rendered, or other expense incurred by the debt collector in the collection of the consumer debt, except as permitted by law; or

(c) Initiating communications, other than statements of account, with the debtor with regard to the consumer debt, when the debt collector has been previously notified in writing by the debtor's attorney that the debtor is represented by such attorney with respect to the consumer debt and such notice includes the attorney's name and address and a request by such attorney that all communications regarding the consumer debt be addressed to such attorney, unless the attorney fails to answer correspondence, return telephone calls, or discuss the obligation in question. This subdivision shall not apply where prior approval has been obtained from the debtor's attorney, or where the communication is a response in the ordinary course of business to a debtor's inquiry.

# Rosenthal Fair Debt Collection Practices Act § 1788.15. Judicial proceedings where service of process defective; venue

(a) No debt collector shall collect or attempt to collect a consumer debt by means of judicial proceedings when the debt collector knows that service of process, where essential to jurisdiction over the debtor or his property, has not been legally effected.

(b) No debt collector shall collect or attempt to collect a consumer debt, other than one reduced to judgment, by means of judicial proceedings in a county other than the county in which the debtor has incurred the consumer debt or the county in which the debtor resides at the time such proceedings are instituted, or resided at the time the debt was incurred.

# Rosenthal Fair Debt Collection Practices Act § 1788.16. Communications simulating legal or judicial process or governmental authorization; unlawful practice in consumer debt collection; misdemeanor; punishment

It is unlawful, with respect to attempted collection of a consumer debt, for a debt collector, creditor, or an attorney, to send a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued, or approved by a governmental agency or attorney when it is not. Any violation of the provisions of this section is a misdemeanor punishable by imprisonment in the

county jail not exceeding six months, or by a fine not exceeding two thousand five hundred dollars ($2,500) or by both.

# Rosenthal Fair Debt Collection Practices Act § 1788.17. Compliance with federal provisions

Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code. However, subsection (11) of Section 1692e and Section 1692g shall not apply to any person specified in paragraphs (A) and (B) of subsection (6) of Section 1692a of Title 15 of the United States Code or that person's principal. The references to federal codes in this section refer to those codes as they read January 1, 2001.

# Rosenthal Fair Debt Collection Practices Act § 1788.18. Debtor as an alleged victim of identity theft; sworn statement; inferences and presumptions; duties after collection terminated

(a) Upon receipt from a debtor of all of the following, a debt collector shall cease collection activities until completion of the review provided in subdivision (d):

(1) A copy of a police report filed by the debtor alleging that the debtor is the victim of an identity theft crime, including, but not limited to, a violation of Section 530.5 of the Penal Code, for the specific debt being collected by the debt collector.

(2) The debtor's written statement that the debtor claims to be the victim of identity theft with respect to the specific debt being collected by the debt collector.

(b) The written statement described in paragraph (2) of subdivision (a) shall consist of any of the following:

(1) A Federal Trade Commission's Affidavit of Identity Theft.

(2) A written statement that contains the content of the Identity Theft Victim's Fraudulent Account Information Request offered to the public by the California Office of Privacy Protection.

(3) A written statement that certifies that the representations are true, correct, and contain no material omissions of fact to the best knowledge and belief of the person submitting the certification. A person submitting the certification who declares as true any material matter pursuant to this subdivision that he or she knows to be false is guilty of a misdemeanor. The statement shall contain or be accompanied by the following, to the extent that an item listed below is relevant to the debtor's allegation of identity theft with respect to the debt in question:

(A) A statement that the debtor is a victim of identity theft.

(B) A copy of the debtor's driver's license or identification card, as issued by the state.

(C) Any other identification document that supports the statement of identity theft.

(D) Specific facts supporting the claim of identity theft, if available.

(E) Any explanation showing that the debtor did not incur the debt.

(F) Any available correspondence disputing the debt after transaction information has been provided to the debtor.

(G) Documentation of the residence of the debtor at the time of the alleged debt. This may include copies of bills and statements, such as utility bills, tax statements, or other statements from businesses sent to the debtor, showing that the debtor lived at another residence at the time the debt was incurred.

(H) A telephone number for contacting the debtor concerning any additional information or questions, or direction that further communications to the debtor be in writing only, with the mailing address specified in the statement.

(I) To the extent the debtor has information concerning who may have incurred the debt, the identification of any person whom the debtor believes is responsible.

(J) An express statement that the debtor did not authorize the use of the debtor's name or personal information for incurring the debt.

(K) The certification required pursuant to this paragraph shall be sufficient if it is in substantially the following form:

"I certify the representations made are true, correct, and contain no material omissions of fact.

_____   _____ "

(Date and Place) (Signature)

(c) If a debtor notifies a debt collector orally that he or she is a victim of identity theft, the debt collector shall notify the debtor, orally or in writing, that the debtor's claim must be in writing. If a debtor notifies a debt collector in writing that he or she is a victim of identity theft, but omits information required pursuant to subdivision (a) or, if applicable, the certification required pursuant to paragraph (3) of subdivision (b), if the debt collector does not cease collection activities, the debt collector shall provide written notice to the debtor of the additional information that is required, or the certification required pursuant to paragraph (3) of subdivision (b), as applicable, or send the debtor a copy of the Federal Trade Commission's Affidavit of Identity Theft form.

(d) Upon receipt of the complete statement and information described in subdivision (a), the debt collector shall review and consider all of the information provided by the debtor and other information available to the debt collector in its file or from the creditor. The debt collector may recommence debt collection activities only upon making a good faith determination that the information does not establish that the debtor is not responsible for the specific debt in question. The debt collector's determination shall be made in a manner consistent with the provisions of subsection (1) of Section 1692 of Title 15 of the United States Code, as incorporated by Section 1788.17 of this code. The debt collector shall notify the debtor in writing of that determination and the basis for that determination before proceeding with any further collection activities. The debt collector's determination shall be based on all of the information provided by the debtor and other information available to the debt collector in its file or from the creditor.

(e) No inference or presumption that the debt is valid or invalid, or that the debtor is liable or not liable for the debt, shall arise if the debt collector decides after the review described in subdivision (d) to cease or recommence the debt collection activities. The exercise or nonexercise of rights under this section is not a waiver of any other right or defense of the debtor or debt collector.

(f) The statement and supporting documents that comply with subdivision (a) may also satisfy, to the extent those documents meet the requirements of, the notice requirement of paragraph (5) of subdivision (c) of Section 1798.93.

(g) A debt collector who ceases collection activities under this section and does not recommence those collection activities shall do all of the following:

(1) If the debt collector has furnished adverse information to a consumer credit reporting agency, notify the agency to delete that information.

(2) Notify the creditor that debt collection activities have been terminated based upon the debtor's claim of identity theft.

(h) A debt collector who has possession of documents that the debtor is entitled to request from a creditor pursuant to Section 530.8 of the Penal Code is authorized to provide those documents to the debtor.

(i) Notwithstanding subdivision (h) of Section 1788.2, for the purposes of this section, "debtor" means a natural person, firm, association, organization, partnership, business trust, company, corporation, or limited liability company from which a debt collector seeks to collect a debt that is due and owing or alleged to be due and owing from the person or entity. The remedies provided by this title shall apply equally to violations of this section.

# Rosenthal Fair Debt Collection Practices Act § 1788.20. Request or application for credit; inability or lack of intention to pay obligation; falsity of or concealment of information

In connection with any request or application for consumer credit, no person shall:

(a) Request or apply for such credit at a time when such person knows there is no reasonable probability of such person's being able, or such person then lacks the intention, to pay the obligation created thereby in accordance with the terms and conditions of the credit extension; or

(b) Knowingly submit false or inaccurate information or willfully conceal adverse information bearing upon such person's credit worthiness, credit standing, or credit capacity.

# Rosenthal Fair Debt Collection Practices Act § 1788.21. Notice of change in name, address or employment; disclosure by creditor of debtor's responsibility

(a) In connection with any consumer credit existing or requested to be extended to a person, such person shall within a reasonable time notify the creditor or prospective creditor of any change in such person's name, address, or employment.

(b) Each responsibility set forth in subdivision (a) shall apply only if and after the creditor clearly and conspicuously in writing discloses such responsibility to such person.

# Rosenthal Fair Debt Collection Practices Act § 1788.22. Credit extended under an account; duties of debtor disclosure by creditor of debtor's responsibility

(a) In connection with any consumer credit extended to a person under an account:

(1) No such person shall attempt to consummate any consumer credit transaction thereunder knowing that credit privileges under the account have been terminated or suspended.

(2) Each such person shall notify the creditor by telephone, telegraph, letter, or any other reasonable means that an unauthorized use of the account has occurred or may occur as the result of loss or theft of a credit card, or other instrument identifying the account, within a reasonable time after such person's discovery thereof, and shall reasonably assist the creditor in determining the facts and circumstances relating to any unauthorized use of the account.

(b) Each responsibility set forth in subdivision (a) shall apply only if and after the creditor clearly and conspicuously in writing discloses such responsibility to such person.

# **Rosenthal** Fair Debt Collection Practices Act § 1788.30. Liability of debt collector; individual action; actual and punitive damages; costs; cure of violation; venue; defenses

(a) Any debt collector who violates this title with respect to any debtor shall be liable to that debtor only in an individual action, and his liability therein to that debtor shall be in an amount equal to the sum of any actual damages sustained by the debtor as a result of the violation.

(b) Any debt collector who willfully and knowingly violates this title with respect to any debtor shall, in addition to actual damages sustained by the debtor as a result of the violation, also be liable to the debtor only in an individual action, and his additional liability therein to that debtor shall be for a penalty in such amount as the court may allow, which shall not be less than one hundred dollars ($100) nor greater than one thousand dollars ($1,000).

(c) In the case of any action to enforce any liability under this title, the prevailing party shall be entitled to costs of the action. Reasonable attorney's fees, which shall be based on time necessarily expended to enforce the liability, shall be awarded to a prevailing debtor; reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith.

(d) A debt collector shall have no civil liability under this title if, within 15 days either after discovering a violation which is able to be cured, or after the receipt of a written notice of such violation, the debt collector notifies the debtor of the violation, and makes whatever adjustments or corrections are necessary to cure the violation with respect to the debtor.

(e) A debt collector shall have no civil liability to which such debt collector might otherwise be subject for a violation of this title, if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation.

(f) Any action under this section may be brought in any appropriate court of competent jurisdiction in an individual capacity only, within one year from the date of the occurrence of the violation.

(g) Any intentional violation of the provisions of this title by the debtor may be raised as a defense by the debt collector, if such violation is pertinent or relevant to any claim or action brought against the debt collector by or on behalf of the debtor.

# Exhibit TAC-3

1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

11 | JULIO MAYEN,                                  Case No.: 17-CV-50 JLS (MDD)

12 |                                Plaintiff,     **ORDER: (1) GRANTING**
                                                   **DEFENDANT'S MOTION TO**
13 | v.                                            **DISMISS; AND**
                                                   **(2) GRANTING IN PART AND**
14 | NEW PENN FINANCIAL, LLC dba                   **DENYING IN PART DEFENDANT'S**
     SHELLPOINT MORTGAGE                           **REQUEST FOR JUDICIAL NOTICE**
15 | SERVICING,
16 |                                Defendants.    (ECF Nos. 6, 6-2)

17

18

19

20         Presently before the Court is Defendant New Penn Financial, LLC's Motion to

21 Dismiss Plaintiff's Complaint or for a More Definite Statement, ("MTD," ECF No. 6-1).

22 Also before the Court are Plaintiff Julio Mayen's Response in Opposition and Objection

23 to, ("Opp'n," ECF No. 7), and Defendant's Reply in Support of, ("Reply," ECF No. 8),

24 Defendant's MTD, as well as Defendants' Request for Judicial Notice in Support of Motion

25 to Dismiss, ("RJN," ECF No. 9-2). The Court vacated the hearing on the motion and took

26 the matter under submission pursuant to Civil Local Rule 7.1(d)(1). (ECF No. 9.) After

27 considering the parties' arguments and the law, the Court **GRANTS IN PART** and

28 **DENIES IN PART** Defendant's RJN and **GRANTS** Defendant's MTD.

# BACKGROUND

On December 27, 2004, Plaintiff Julio Mayen purchased the residential property located at 15335 Castle Peak Lane, Jamul, CA 91935 (the "Property") with a $1,088,000 loan, secured by a deed of trust on the Property, from Countrywide Home Loans, Inc. (Compl. ¶ 18, ECF No. 1.) Plaintiff "allegedly defaulted on the loan" on March 1, 2009. (*Id.* ¶ 19.) On December 24, 2013, Plaintiff alleges that Resurgent Capital Services L.P. ("Resurgent") "sent Plaintiff a letter stating they have acquired the servicing rights of Plaintiffs [sic] defaulted loan." (*Id.* ¶ 20.) In response, Plaintiff claims he "sent Resurgent a debt validation letter disputing the amount and validity of the debt" on January 31, 2014. (*Id.* ¶ 21.) Shortly thereafter, Plaintiff alleges he received "a notice from Resurgent and Shellpoint transferring servicing rights to Shellpoint" on February 14, 2014, (*id.* ¶ 22), and in response, Plaintiff claims he "sent Shellpoint a debt validation letter disputing the amount and validity of the debt" on March 31, 2014, (*id.* ¶ 23).

Plaintiff further alleges that in response to Plaintiff's letters disputing his debt, "Shellpoint has provided documents as if Plaintiff has requested a Qualified Written Request (QWR) instead of account-level documents substantiating the amount and validity of the debt," and that "[t]o this date, Defendant has never validated or verified the alleged debt." (*Id.* ¶ 24.) In addition, Plaintiff alleges that "Defendant, for the past 12 months, has sent Plaintiff six demands for payment without providing any account-level documentation substantiating the amount of the debt." (*Id.* ¶ 25.) Finally, Plaintiff alleges that "Defendant's correspondence regarding debt amounts due are very inconsistent and confusing." (*Id.* ¶ 26.)

Plaintiff filed a complaint against Defendant on January 11, 2017, alleging causes of action under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, *et seq.* ("RFDCPA"). (*See generally* Compl.) Plaintiff brings three claims against Defendant based on these allegations: (1) Defendant's continued collection activity of a disputed debt violates FDCPA Section 1692g(b); (2) Defendant's false representation

2

1    of the character and amount of Plaintiff's debt violates FDCPA Section 1692e(2)A; and

2    (3) Defendant's violations of the FDCPA constitute violations of the RFDCPA. (*See*

3    *generally id.*) Plaintiff seeks statutory and actual damages, attorney's fees, costs, and

4    injunctive relief. (*Id.* ¶¶ 29, 31.) On March 17, 2017, Defendant moved to dismiss

5    Plaintiff's Complaint or for a more definite statement. (ECF No. 6.)

6                                          **LEGAL STANDARD**

7           Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the

8    defense that the complaint "fail[s] to state a claim upon which relief can be granted,"

9    generally referred to as a motion to dismiss. The Court evaluates whether a complaint states

10   a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure

11   8(a), which requires a "short and plain statement of the claim showing that the pleader is

12   entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it

13   [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me

14   accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.

15   Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide

16   the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and

17   a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S.

18   at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice

19   "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S.

20   at 677 (citing *Twombly*, 550 U.S. at 557).

21          In order to survive a motion to dismiss, "a complaint must contain sufficient factual

22   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting

23   *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible

24   when the facts pled "allow the court to draw the reasonable inference that the defendant is

25   liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at

26   556). That is not to say that the claim must be probable, but there must be "more than a

27   sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with'

28   a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*,

3

1   550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained
2   in the complaint. *Id.* This review requires context-specific analysis involving the Court's
3   "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-
4   pleaded facts do not permit the court to infer more than the mere possibility of misconduct,
5   the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"
6   *Id.*

7        Because this case comes before the Court on a motion to dismiss, the Court must
8   accept as true all material allegations in the complaint, and must construe the complaint
9   and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. *See*
10   *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). When a plaintiff appears pro se, the
11   court must be careful to construe the pleadings liberally and to afford the plaintiff any
12   benefit of the doubt. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Thompson*, 295 F.3d
13   at 895. Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to
14   amend unless it determines that no modified contention "consistent with the challenged
15   pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655,
16   658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d
17   1393, 1401 (9th Cir. 1986)). Furthermore, "before dismissing a pro se complaint the district
18   court must provide the litigant with notice of the deficiencies in his complaint in order to
19   ensure that the litigant uses the opportunity to amend effectively." *Ferdick v. Bonzelet*, 963
20   F.2d 1258, 1261 (9th Cir. 1992).

21                                   **ANALYSIS**
22   **I.    Request for Judicial Notice**
23        Defendant's Motion to Dismiss is accompanied by a Request for Judicial Notice.
24   (*See generally* RJN.) Although within the context of a motion to dismiss under Federal
25   Rule of Civil Procedure 12(b)(6), a Court generally may not consider matters outside of
26   the pleadings, *see* Fed. R. Civ. P. 12(d), it is nonetheless "appropriate for the Court to take
27   notice of 'relevant facts obtained from the public record . . . .' " *See Papasan*, 478 U.S. at
28   298; *see also Harris v. Cty. of Orange*, 682 F.3d 1126, 1132–33 (9th Cir. 2012) (noting

                                         4

1  that a court may "take judicial notice of undisputed matters of public record" and that
2  "documents not attached to a complaint may be considered if no party questions their
3  authenticity and the complaint relies on those documents" (citing *Lee v. City of L.A.*, 250
4  F.3d 668, 688, 689 (9th Cir. 2001))).

5      Defendant moves the Court to take judicial notice of fourteen exhibits in support of
6  its motion: (1) the Deed of Trust recorded on December 30, 2004 in the Official Records
7  of the County Recorder's Office of San Diego County, California; (2) the Assignment of
8  Deed of Trust recorded on June 13, 2011 in the Official Records of the County Recorder's
9  Office of San Diego County, California; (3) the Notice of Default and Election to Sell under
10 Deed of Trust recorded on February 29, 2016 in the Official Records of the County
11 Recorder's Office of San Diego County, California; (4) the Notice of Trustee's Sale
12 recorded on June 27, 2016 in the Official Records of the County Recorder's Office of San
13 Diego County, California; (5) the Electronic Docket from Case No. 13-01660-LT13,
14 United States Bankruptcy Court for the Southern District of California; (6) the Voluntary
15 Petition for Individuals Filings for Bankruptcy filed by Plaintiff on February 21, 2013 in
16 Case No. 13-01660-LT13, United States Bankruptcy Court for the Southern District of
17 California; (7) the Balance of Schedules, Statements, and/or Chapter 13 Plan filed by
18 Plaintiff on March 22, 2013 in Case No. 13-01660-LT13, United States Bankruptcy Court
19 for the Southern District of California; (8) the Electronic Docket from Case No. 16-05104-
20 LT13, United States Bankruptcy Court for the Southern District of California; (9) the
21 Voluntary Petition for Individuals Filings for Bankruptcy filed by Plaintiff on August 22,
22 2016 in Case No. 16-05104-LT13, United States Bankruptcy Court for the Southern
23 District of California; (10) the Balance of Schedules, Statements, and/or Chapter 13 Plan
24 filed by Plaintiff on September 20, 2016 in Case No. 16-05104-LT13, United States
25 Bankruptcy Court for the Southern District of California; (11) the Electronic Docket from
26 Case No. 16-07181-LT13, United States Bankruptcy Court for the Southern District of
27 California; (12) the Voluntary Petition for Individuals Filings for Bankruptcy filed by
28 Plaintiff on November 28, 2016 in Case No. 16-07181-LT13, United States Bankruptcy

5

1    Court for the Southern District of California; (13) the Balance of Schedules, Statements,

2    and/or Chapter 13 Plan filed by Plaintiff on January 4, 2017 in Case No. 16-07181-LT13,

3    United States Bankruptcy Court for the Southern District of California; and (14) the Notice

4    of Entry of Order Dismissing Case and Vacating All Automatic Stays and Injunctions

5    issued on March 9, 2017 in Case No. 16-07181-LT13, United States Bankruptcy Court for

6    the Southern District of California. (*See generally* RJN.)

7         Plaintiff opposes all documents filed by Defendant for "trying to make this case

8    about [Plaintiff's] alleged debt." (Opp'n 6.[1]) Plaintiff further argues that the exhibits filed

9    by Defendant "are irrelevant in this case for the simple reason that this case is about the

10   ***conduct*** of Shellpoint as they attempted to collect an alleged debt" and that "[t]his is a very

11   straight forward claim for violations of the FDCPA and the Rosenthal Act resulting from

12   Shellpoint's conduct and has nothing to do with any alleged debt." (*Id.* (emphasis in

13   original).) However, Plaintiff does not question the authenticity of Defendant's Exhibits 1

14   and 3[2] and the documents are objectively verifiable. *See* Fed. R. Evid. 201(b).  Given the

15   foregoing, and because Defendant's argument that Plaintiff's failure to allege facts

16   supporting claims under the FDCPA and RFDCPA has the potential to dispose of all of

17   Plaintiff's causes of action, the Court find Exhibits 1 and 3 are validly judicially noticed.

18        Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's

19   RJN.

20   **II.    Motion to Dismiss**

21        Defendant moves to dismiss Plaintiff's FDCPA and RFDCPA claims on multiple

22   grounds: (1) judicial estoppel from Plaintiff's three prior bankruptcies bars Plaintiff from

23   bringing this entire action; (2) Plaintiff fails to allege facts supporting claims under the

24   FDCPA or RFDCPA; and (3) Plaintiff fails to include a necessary and indispensable

25   _____

26   [1] Pin citations to docketed material refer to the CM/ECF numbers electronically stamped at the top of each
     page.
27

28   [2] Because the Court does not need to consider Exhibits 2 or 4–14 to rule on Defendant's MTD, *infra*
     Sections II.A–B, the Court does not grant judicial notice to Exhibits 2 or 4–14.

1    party—co-borrower, Sarah A. Mayen. (*See generally* Defendant's Memorandum of Points

2    and Authorities to Its Motion to Dismiss or for a More Definite Statement ("MTD"), ECF

3    No. 6-1.) Alternatively, Defendant requests that Plaintiff provide a more definite statement.

4    (*Id.*) However, before the Court can determine whether judicial estoppel bars this entire

5    action, the Court must first determine whether Plaintiff's allegations support a cause of

6    action under the FDCPA or RFDCPA. If Plaintiff is unable to allege sufficient facts

7    supporting the plausibility of his claims that Defendant violated the FDCPA or RFDCPA,

8    then Plaintiff never had a claim to disclose during Plaintiff's bankruptcy proceedings.

9              *A. Whether Plaintiff Failed to State a Claim for Violation of the FDCPA*

10             Defendant argues that it does not qualify as a debt collector under the FDCPA

11   because Plaintiff "has not alleged Shellpoint began servicing his loan after he had already

12   defaulted" and "[a]s the complaint currently stands, it is altogether unclear what the status

13   of the loan was at the time of service transfer to Shellpoint." (MTD 4–5.) Defendant further

14   argues that Plaintiff's claim "fails because his loan obligation serviced by Shellpoint is not

15   a 'consumer debt' for FDCPA purposes" and even if Plaintiff's mortgage loan did qualify

16   as a consumer debt under the FDCPA, "the complaint does not contain a single specific

17   fact connecting Shellpoint's conduct to any FDCPA prohibition." (*Id.* at 5.) In response,

18   Plaintiff argues that Defendant qualifies as a debt collector under the FDCPA because "the

19   alleged default date of the alleged loan was March 1, 2009 which was at least four and a

20   half years prior to" Plaintiff receiving the February 14, 2014 "notice from

21   Resurgent/Shellpoint transferring servicing rights to Shellpoint." (Opp'n 12.) And

22   therefore, Plaintiff argues, Defendant's failure to respond to Plaintiff's March 31, 2014

23   "debt [v]alidation letter disputing the amount and validity of the debt" and Defendant's

24   "six different demands for payment without providing any account-level documentation

25   substantiating the amount of the alleged debt" constitute "continued collection activity of

26   a disputed debt making this lawsuit ripe and proper for this claim." (*Id.* at 13.)

27             Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt

28   collectors, to insure that those debt collectors who refrain from using abusive debt

1    collection practices are not competitively disadvantaged, and to promote consistent State

2    action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The

3    FDCPA "regulates the conduct of debt collectors, imposing affirmative obligations and

4    broadly prohibiting abusive practices." *Gonzales v. Arrow Financial Servs., LLC*, 660 F.3d

5    1055, 1060–61 (9th Cir. 2011). To state a claim under the FDCPA, a plaintiff must show:

6    (1) that he is a consumer; (2) that the debt arises out of a transaction entered into for

7    personal, family, or household purposes; (3) that the defendant qualifies as a debt collector

8    under 15 U.S.C. § 1692a(6); and (4) that the defendant violated one of the provisions of

9    the FDCPA. *Freeman v. ABC Legal Servs., Inc.*, 827 F. Supp. 2d 1065, 1071 (N.D. Cal.

10   2011). Because Plaintiff's debt originates from his obligation to pay for property he

11   purchased for personal use, only the third and fourth prongs are at issue here.

12              *(1)    Whether Defendant Qualifies as a Debt Collector*

13          Under the FDCPA, "[t]he term 'debt collector' means any person who . . . [is] in any

14   business the principal purpose of which is the collection of any debts, or who regularly

15   collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be

16   owed or due another." 15 U.S.C. § 1692a(6). Section 1692a(6)(F)(iii) of the FDCPA

17   exempts—among other entities—"a mortgage servicing company, or any assignee of the

18   debt, so long as the debt was not in default at the time it was assigned." *Nool v. HomeQ*

19   *Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry v. Stewart Title*

20   *Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also De Dios v. Int'l Realty & Invs.*, 641

21   F.3d 1071, 1075 n.3 (9th Cir. 2011) ("[D]ebt collector does not include those 'mortgage

22   service companies and others who service outstanding debts for others, so long as the debts

23   were not in default when taken for servicing . . . .' ") (summarizing and quoting S. Rep.

24   No. 95–382, at 3–4 (1977), *reprinted in* 1977 U.S.C.C.C.A.N. 1695, 1698); *id.*

25   ("[E]xemption in § 1692a(6)(F)(iii) was intended to apply to mortgage companies and

26   other parties 'whose business is servicing *current* accounts . . . .' ") (summarizing and

27   quoting Fed. Trade Comm'n, Staff Commentary on the Fair Debt Collection Practices Act

28   § 803, 53 Fed. Reg. 50,097, 50,103 (Dec. 13, 1988) (emphasis in original)). Therefore, to

1    determine the threshold issue of whether Defendant, a mortgage servicing company,
2    qualifies as a debt collector, the Court must first address whether Plaintiff's debt was in
3    default at the time it was assigned to Defendant.

4          Because the FDCPA does not define "in default," "courts interpreting Section
5    1692a(6)(F)(iii) look to any underlying contracts and applicable law governing the debt at
6    issue." *De Dios*, 641 F.3d at 1074; *cf. id.* at 1075 n.3 (noting further that the FDCPA's
7    "legislative history is consistent with construing 'in default' to mean a debt that is at least
8    delinquent, and sometimes more than overdue."). Here, the recorded Deed of Trust to
9    Plaintiff's property that Defendant filed as Exhibit 1 states the following:

10         Borrower shall be in default if any action or proceeding, whether civil or
11         criminal, is begun that, in Lender's judgment, could result in forfeiture of the
           Property or other material impairment of Lender's interest in the Property or
12         rights under this Security Instrument. Borrower can cure such a default and,
13         if acceleration has occurred, reinstate as provided in Section 19, by causing
           the action or proceeding to be dismissed with a ruling that, in Lender's
14         judgment, precludes forfeiture of the Property or other material impairment of
15         Lender's interest in the Property or rights under this Security Instrument. The
           proceeds of any award or claim for damages that are attributable to the
16         impairment of Lender's interest in the Property are hereby assigned and shall
17         be paid to Lender.

18   (MTD Ex. 1, ECF No. 6-3, at 11.) However, the recorded Notice of Default and Election
19   to Sell Under Deed of Trust filed by Defendant as Exhibit 3 identifies Plaintiff's debt as
20   delinquent and overdue since March 1, 2009. (MTD Ex. 3, ECF No. 6-3, at 73 ("A breach
21   of, and default in, the obligations for which such Deed of Trust is security has occurred in
22   that payment has not been made of the following: The monthly installment which became
23   due on 3/1/2009, along with late charges, and all subsequent monthly installments.").)

24         Defendant's arguments that Plaintiff never alleged the loan was in default are
25   unavailing. Plaintiff alleges in the Complaint that he "allegedly defaulted on the loan" on
26   March 1, 2009, and that on February 14, 2014, he "received a notice from Resurgent and
27   Shellpoint transferring servicing rights to Shellpoint." (Compl. ¶¶ 18, 22.) Plaintiff further
28   alleges that "Shellpoint acquired the servicing rights of Plaintiff's consumer debt over four

1   and a half years after default . . . ." (*Id.* ¶ 16; *see also id.* ¶ 3 (noting that Plaintiff's claim
2   is brought "as a result of Defendant's conduct in the collection of an alleged consumer debt
3   in default for over four and a half years prior to being assigned to Defendant for
4   collection").) In response to Plaintiff's allegations, Defendant neither disputes that the
5   mortgage loan was in default, nor cites to any evidence to support that argument in its MTD
6   or Reply. The Court must accept as true all material allegations in the complaint, and must
7   construe the complaint and all reasonable inferences drawn therefrom in the light most
8   favorable to Plaintiff. Given that payments on the loan were overdue and delinquent for
9   over four and a half years, the Court finds that Plaintiff sufficiently alleges facts plausibly
10  showing that the debt was in default at the time it was assigned to Defendant. Accordingly,
11  the Court concludes that Defendant qualifies as a debt collector under the FDCPA.

12                    (2)    *Whether Defendant's Conduct Violated 15 U.S.C. § 1692g*

13          Section 1692g governs the validation of debts and requires that "within five days
14  after the initial communication with a consumer in connection with the collection of any
15  debt, a debt collector shall, unless the following information is contained in the initial
16  communication or the consumer has paid the debt, send the consumer a written notice."
17  § 1692g(a). The initial communication or notice must contain the following information:

18          (1) the amount of the debt; (2) the name of the creditor to whom the debt is
19          owed; (3) a statement that unless the consumer, within thirty days after receipt
            of the notice, disputes the validity of the debt, or any portion thereof, the debt
20          will be assumed to be valid by the debt collector; (4) a statement that if the
21          consumer notifies the debt collector in writing within the thirty-day period
            that the debt, or any portion thereof, is disputed, the debt collector will obtain
22          verification of the debt or a copy of a judgement against the consumer and a
            copy of such verification or judgment will be mailed to the consumer by the
23          debt collector; and (5) a statement that, upon the consumer's written request
24          within the thirty-day period, the debt collector will provide the consumer with
            the name and address of the original creditor, if different from the current
25          creditor.
26
27  *Id.* To satisfy the requirements of § 1692g(a), "the notice Congress required must be
28  conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently

1  prominent to be noticed . . . [and it] must not be overshadowed or contradicted by other

2  messages or notices appearing in the initial communication from the collection agency."

3  *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir. 1997) (quoting *Swanson v. S. Or. Credit*

4  *Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988)). In this circuit, courts assess the

5  sufficiency of a notice "under the 'least sophisticated debtor' standard." *Swanson*, 869 F.2d

6  at 1225. The purpose of the standard is " 'to protect consumers of below average

7  sophistication or intelligence,' or those who are 'uninformed or naïve,' particularly when

8  those individuals are targeted by debt collectors." *Gonzales*, 660 F.3d at 1062 (quoting

9  *Duffy v. Landberg*, 215 F.3d 871, 874–75 (8th Cir. 2000)). However, the standard also

10  " 'preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding

11  and willingness to read with care.' " *Id.* (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218,

12  221 (3d Cir. 2008)).

13      Section 1692g(b) identifies the following course of action for a consumer to dispute

14  a debt and the appropriate response from the debt collector:

15      If the consumer notifies the debt collector in writing within the thirty-day
16      period described in subsection (a) that the debt, or any portion thereof, is
        disputed, or that the consumer requests the name and address of the original
17      creditor, the debt collector shall cease collection of the debt, or any disputed
18      portion thereof, until the debt collector obtains verification of the debt or a
        copy of a judgment, or the name and address of the original creditor, and a
19      copy of such verification or judgment, or name and address of the original
20      creditor, is mailed to the consumer by the debt collector.

21  Section 1692g was added to the FDCPA "specifically to ensure that debt collectors gave

22  consumers adequate information concerning their legal rights." *Swanson*, 869 F.2d at 1225.

23  Thus identification of the sender of the notice is central to whether a notice is deficient

24  because § 1692g(a) requires the entity seeking collection of any debt to send an initial

25  communication or notice with the requisite information identified above. Moreover, any

26  determination on the sufficiency of a defendant's notice of debt requires reviewing the

27  information contained in the notice and the manner in which it is presented. However, §§

28  1692g(a) and 1692g(b) also require that a consumer wishing to dispute a debt must do so

1    within thirty days of receipt of notice of debt, and a "tardy request for verification of the
2    debt [does] not trigger any obligation on the part of the [debt collector] to verify the debt."
3    *Mahon v. Credit Bureau, Inc.*, 171 F.3d 1197, 1202 (9th Cir. 1999).

4          Plaintiff alleges that on February 14, 2014, he "received a notice from Resurgent and
5    Shellpoint transferring servicing rights to Shellpoint." (Compl. ¶ 22.) Because the notice
6    was not an exhibit to the Complaint, the Court is unable to ascertain from Plaintiff's
7    allegations which debt collector, Resurgent or Shellpoint, sent the notice. Furthermore, the
8    Court cannot ascertain from Plaintiff's allegations what information the notice contained,
9    aside from identifying the transfer of servicing rights from Resurgent to Shellpoint.
10   Consequently, the Court must find that Plaintiff's allegations do not plausibly state a claim
11   that Defendant's notice was deficient under § 1692g(a).

12         To be sure, allegations that Defendant violated § 1692g(a) are not necessary for
13   Plaintiff's claim that Defendant separately violated § 1692g(b). However, Plaintiff alleges
14   that he sent Defendant "a debt validation letter disputing the amount and validity of the
15   debt" on March 31, 2014, (*id.* ¶ 23), i.e., forty-five days after the notice sent from
16   Resurgent/Shellpoint. Based on Plaintiff's own allegations, his debt validation letter was
17   untimely and Defendant was under no obligation to verify the debt. Therefore the Court
18   must find that Plaintiff fails to state a facially plausible claim that Defendant violated
19   § 1692g(b) of the FDCPA. Accordingly, the Court **GRANTS** this portion of Defendant's
20   MTD.

21              *(3)    Whether Defendant's Conduct Violated 15 U.S.C. § 1692e(2)A*

22         Plaintiff claims that Defendant violated § 1692e(2)A for the following reasons: (a)
23   "Defendant has never substantiated the principle amount of this alleged debt as true and
24   accurate;" (b) "Defendant's correspondence regarding debt amounts due are [sic] very
25   inconsistent and confusing;" and (c) "Defendant has falsely represented the character and
26   amount of this debt." (Compl. ¶ 26.) In response, Defendant argues that "the complaint
27   does not contain a single specific fact connecting Shellpoint's conduct to any FDCPA
28   prohibition." (MTD 5.)

1    Under § 1692e, "[a] debt collector may not use any false, deceptive, or misleading
2    representation or means in connection with the collection of any debt." Section 1692e(2)A
3    specifically identifies "[t]he false representation of—the character, amount, or legal status
4    of any debt" as conduct that violates § 1692e. In this circuit, "liability under § 1692e of the
5    FDCPA is an issue of law." *Gonzales*, 660 F.3d at 1061. Determining whether conduct
6    violates § 1692e "requires an objective analysis that takes into account whether the 'least
7    sophisticated debtor would likely be misled by a communication.' " *Donohue v. Quick*
8    *Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) (quoting *Guerrero v. RJM Acquisitions*
9    *LLC*, 499 F.3d 926, 934 (9th Cir. 2007) (internal quotation marks omitted)). Furthermore,
10   the FDCPA "does not ordinarily require proof of intentional violation, and is a strict
11   liability statute." *Gonzales*, 660 F.3d 1055 (citing *McCollough v. Johnson, Rodenburg &*
12   *Lauinger, LLC*, 667 F.3d 939, 948 (9th Cir. 2011)).

13        Ultimately, Plaintiff's claim that Defendant violated § 1692e(2)A rests on
14   Defendant's alleged failure to substantiate the amount of Plaintiff's debt. However, as the
15   *Mahon* court instructed, a "tardy request for verification of the debt [does] not trigger any
16   obligation on the part of the [debt collector] to verify the debt." 171 F.3d at 1202 ("If no
17   written demand is made, 'the collector may assume the debt to be valid.' ") (quoting *Avila*
18   *v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996)). Again, based on Plaintiff's own allegations
19   and absent any allegations that Defendant's notice was deficient, Plaintiff's debt validation
20   letter was untimely and Defendant was under no obligation to verify the debt. Therefore,
21   the Court must find the debt amount to be valid, and that Plaintiff fails to state a facially
22   plausible claim that Defendant violated § 1692e(2)A of the FDCPA. Accordingly, the
23   Court **GRANTS** this portion of Defendant's MTD.

24        ***B. Whether Plaintiff Failed to State a Claim for Violation of the Rosenthal Act***

25        Plaintiff alleges that Defendant's violations of the FDCPA also constitute violations
26   of the RFDCPA under California Civil Code section 1788.17. (Compl. ¶¶ 25–26.) As
27   California's version of the FDCPA, the RFDCPA "mimics or incorporates by reference the
28   FDCPA's requirements . . . and makes available the FDCPA's remedies for violations."

1   *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code

2   § 1788.17). Therefore, whether a debt collector's conduct "violates the [RFDCPA] turns

3   on whether it violates the FDCPA." *Id.* Because Plaintiff's RFDCPA claims are based on

4   the same allegations as his FDCPA claims, the analysis above, *supra* Section II.A.3, applies

5   here and Plaintiff's RFDCPA claims must also fail. Accordingly, the Court **GRANTS** this

6   portion of Defendants' MTD.

7          *C.   Whether Judicial Estoppel Bars Plaintiff's Claims*

8          Defendant argues that Plaintiff's claims are judicially estopped for failure to disclose

9   them in his three prior bankruptcies. (MTD 3.) In response, Plaintiff argues that "[t]he

10  alleged bankruptcies have been withdrawn by plaintiff and as a result have no bearing on

11  the claims of the defendants making their claims moot as a result." (Opp'n 7.) Plaintiff

12  further argues that he has always maintained the same position in each of his three

13  bankruptcy cases, i.e., "that the alleged debt is and has been disputed" and that Defendant

14  has "never validat[ed] or verif[ied] the alleged debt." (*Id.* at 7–8.) However, because the

15  Court above determined that Plaintiff's causes of action should be dismissed, the Court

16  does not reach this argument.

17         *D.   Whether Plaintiff Failed to Include a Necessary and Indispensable Party*

18         Finally, Defendant argues that Plaintiff's failure to join Sarah A. Mayen, a co-

19  borrower on the mortgage loan, as an indispensable party under Fed. R. Civ. P. 19(a) is a

20  sufficient basis for dismissal. (MTD 7; Reply 4.) Again, because the Court above

21  determined that Plaintiff's causes of action should be dismissed, the Court does not reach

22  this argument.

23                              **CONCLUSION**

24         For the reasons stated above, the Court **GRANTS IN PART** and **DENIES IN**

25  **PART** Defendant's RJN, (ECF No. 6-1), and **GRANTS** Defendant's MTD on all causes

26  of action, (ECF No. 6). Nonetheless, the Court will not yet dismiss Plaintiff's claims with

27  prejudice. *E.g.*, *Polich v. Burlington N. Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)

28  ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review,

1  that the complaint could not be saved by any amendment." (citing *Kelson v. City of*
2  *Springfield*, 767 F.2d 651, 653 (9th Cir. 1985))). Accordingly, the Court **DISMISSES**
3  **WITHOUT PREJUDICE** Plaintiff's Complaint and **GRANTS** Plaintiff leave to file an
4  amended Complaint, if any, <u>on or before fourteen days from the date on which this Order</u>
5  <u>is electronically docketed</u>.

6       **IT IS SO ORDERED.**

7  Dated: August 16, 2017

8                                                            Hon. Janis L. Sammartino
9                                                            United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

17-CV-50 JLS (MDD)

# Exhibit TAC-4.1



**MONTHLY STATEMENT**



| | |
|---|---|
| **LOAN NUMBER** | 0515393708 |
| **STATEMENT DATE** | 12/19/2013 |
| **PAYMENT DUE DATE** | 3/1/2009 |
| **Total Payment(s) Due** | $326,307.17 |

**For Customer Service inquiries, or pay-by-phone, please contact us at 866-316-4706.**
Fax: 866-467-1137 • E-Mail: loanservicing@resurgent.com

| Unpaid Late Charge | Unpaid NSF Fees | Other Unpaid Fees/Charges | Credit(s) | TOTAL DUE |
|---|---|---|---|---|
| $0.00 | $0.00 | $0.00 | $0.00 | **$326,307.17** |

| TRANSACTION DESCRIPTION | TRANSACTION DATE | PRINCIPAL | INTEREST | ESCROW | LATE CHARGES | TRANSACTION AMOUNT |
|---|---|---|---|---|---|---|
| | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

**YEAR TO DATE SUMMARY**

Principal Balance as of 12/19/2013:
$1,178,080.66

Interest Paid Year to Date:
$0.00

Late Charges Paid Year to Date:
$0.00

Escrow Balance:
$-86,143.31

**Interest Rate:**
2.625%

**PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

**IMPORTANT MESSAGES**

Welcome to Resurgent Mortgage Servicing, a division of Resurgent Capital Services L.P.. As mentioned in prior correspondence your loan recently transferred to Resurgent for servicing. We look forward to a mutually beneficial relationship. Please contact our office at 866-316-4706 so we can discuss your account, answer any questions you might have, and set up payment arrangements if necessary.

This is an attempt to collect a debt. Any information obtained will be used for that purpose. This is a communication from a debt collector. If this debt has been discharged in a bankruptcy without a valid reaffirmation, Resurgent is not attempting to collect the debt from you as to your personal liability. Please disregard any contrary provisions contained in this letter. We are solely seeking to protect our rights in the collateral associated with your discharged obligation.

For budget advice and credit counseling assistance please call the Resurgent National Credit Counseling Agency locator line at (800) 340-2371.

Please contact our office if you do not wish to receive monthly statements.

Amounts paid in excess of your payment amount will first be used to satisfy any delinquency. If there are no past due amounts then excess funds paid will be posted to your principal balance. As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.

---

DETACH AND RETURN WITH YOUR PAYMENT. PLEASE WRITE YOUR LOAN NUMBER ON YOUR CHECK OR MONEY ORDER

**PAYMENT COUPON**

 P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



| | |
|---|---|
| Loan Number: | 0515393708 |
| Monthly Principal & Interest: | $4,673.39 |
| Monthly Escrow: | $857.24 |
| Monthly Payment Amount: | $5,530.63 |
| TOTAL Amount Due: | $326,307.17 |
| Amount Due if Paid on or After 1/17/2014: | $326,540.84 |

S-SFRECS20  L-STMT001  A-0515393708 R-17
P3737200201556 - 279809319 I03112

JULIO MAYEN
SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL CA 91935-2238

Send Payment To:

RESURGENT MORTGAGE SERVICING
P.O. BOX 19006
GREENVILLE, SC 29602-9006

In the near future Resurgent will be able to send you your monthly bill and other important communications by e-mail -- get organized and go green!

E-mail _____ @ _____

Be assured that no personal or account information will be transferred directly through e-mail.

**Payment Amount : $** _____

004460101P0400

**Exhibit A-1**

Electronic notifications will be sent to the email address you have provided as your email address. If your email address changes, you are responsible for informing us of that change. Changes to your email will apply to all of your notifications.

You understand and agree that your notifications may be delayed or prevented by a variety of factors. We do our best to provide alerts in a timely manner with accurate information. We neither guarantee the delivery nor the accuracy of the contents of any alert. You also agree that we shall not be liable for any delays, failure to deliver, or misdirected delivery of any alert; for any errors in the content of an alert; or for any actions taken or not taken by you or any third party in reliance of an alert.

Because notifications are not encrypted, we will never include your passcode or full account number. However, notifications may include your name and some information about your accounts. Depending upon which notifications are sent, information such as the last four digits of your loan number, your payment amount or the due date for your payment may be included. Anyone with access to your email will be able to view the contents of these alerts.

# **Exhibit TAC-4.2**

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED

**RESURGENT**
*Mortgage Servicing*
*A Division of Resurgent Capital Services L.P.*

**Mon - Thurs:** 8:00AM-10:00PM
**Fri:** 8:00AM-10:00PM
**Sat:** 8:00AM-3:00PM

**Phone Number:** 800-365-7107
**Fax:** 866-467-1137
**e-Mail:** loanservicing@resurgent.com

S-SFRECS20  L-10-M A-0515393708 R-1
P37D7L00201141 - 280539588 l03422
JULIO MAYEN
SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL CA 91935-2238

Loan Number: **0515393708**

December 24, 2013

RE: 15335 Castle Peak Lane, Jamul, CA 91935

Dear Valued Customer:

We are pleased to advise you that effective 12/19/2013 Bank of America, N.A. has placed your account with Resurgent Mortgage Servicing, a division of Resurgent Capital Services L.P. ("Resurgent") for servicing. To ensure a smooth transfer, please review the following information.

On and after 12/19/2013, your loan payments should be made payable to Resurgent. Your previous servicer will cease to accept any payments it receives after 12/19/2013 and will forward them to Resurgent. If you have any questions of your previous servicer, you may call their Customer Service Department.

Please feel free to call Resurgent if you have any questions concerning your loan or need additional information. You may contact  Resurgent at 800-365-7107. Our Customer Service hours are from 8:00am to 6:00pm Eastern Time.

As of the date of this letter, the principal balance is $1,178,080.66. Should you desire to pay off the account in full, you should contact us at 800-365-7107 to determine the payoff balance as interest, payments, credits, fees and/or other permissible charges can continue to cause your account balance to vary from day to day.

Payments should be mailed to:                     Correspondence should be mailed to:

Resurgent Mortgage Servicing                      Resurgent Mortgage Servicing
P.O. Box 19006                                    P.O. Box 10826
Greenville, SC 29602-9006                         Greenville, SC 29603-0826

The assignment, sale, or transfer of the servicing of your loan does not affect any term of the loan instruments other than terms directly related to the servicing of your loan.

You should also be aware of the following information, which is set forth in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA)(12 U.S.C.2605):

During the 60 day period following the effective date of the transfer of the loan servicing, a loan payment received by your previous servicer before its due date may not be treated by Resurgent as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C.2605) gives you certain rights. If you send a qualified written request to your loan servicer concerning the servicing of your loan, your servicer must provide you with written acknowledgement within 5 business days of receipt of your request. A qualified written request is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.

If you want to send a qualified written request regarding the servicing of your loan, it must be sent to P.O. Box 208 Greenville, SC 29602-0208.

No later than 60 business days after receiving your request, your servicer must make any appropriate adjustments to your account and must provide you with written clarification regarding any dispute.  During this 60 business day period, your servicer may not provide information to a consumer rating agency concerning any overdue payment related to such period or qualified written request.  However, this does not prevent the servicer from initiating foreclosure if proper grounds exist under the mortgage documents.

A business day is a day on which the offices of the business entity are open to the public for conducting substantially all of its business functions.

Resurgent will not continue to collect, deduct for, or remit any amounts that your previous servicer was collecting for optional credit health, or life insurance. If you desire to maintain these coverages you will need to contact your local insurance agent to establish there types of optional insurance services.

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

024680102S0400

**Exhibit A-2**

Case 3:17-cv-00050-JLS-MDD   Document 15   Filed 09/20/17   PageID.336   Page 7 of 89

We are conviced that your diligence in honoring your financial obligation will result in a mutually beneficial and long, pleasant association.

We may report information about your account to the credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 800-365-7107.

Sincerely,

Resurgent Mortgage Servicing
800-365-7107

**Please read the following important notices as they may affect your rights.**

Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt was discharged in a bankruptcy without a valid reaffirmation, please understand that Resurgent is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's right in the associated collateral. Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

California Residents: As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

A menos que usted nos notifique dentro de los 30 días después de recibir este aviso que usted cuestiona la validez de esta deuda, o cualquier porción de la misma, asumiremos que esta deuda es válida. Si usted nos notifica por escrito dentro de los 30 días después de recibir este aviso que cuestiona la validez de esta deuda, o cualquier porción de la misma, obtendremos la verificación de la deuda u obtendremos la copia de la sentencia y le enviaremos la copia de dicha sentencia o verificación. Si nos lo pide por escrito, dentro de los 30 días después de recibir este aviso, le facilitaremos el nombre y la dirección del acreedor original, si no coincide con el acreedor actual.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Resurgent no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

"Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación."

"El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov"

## PRIVACY NOTICE



This Privacy Notice is being provided on behalf of each of the following related companies (collectively, the "Sherman Companies"). It describes the general policy of the Sherman Companies regarding the personal information of customers and former customers.

| | | |
|---|---|---|
| Resurgent Capital Services L.P. | LVNV Funding, LLC | Ashley Funding Services LLC |
| Sherman Acquisition L.L.C. | PYOD LLC | SFG REO, LLC |
| Resurgent Capital Services PR LLC | Anson Street LLC | |

**Information We May Collect.** The Sherman Companies may collect the following personal information: (1) information that we receive from your account file at the time we purchase or begin to service your account, such as your name, address, social security number, and assets; (2) information that you may give us through discussion with you, or that we may obtain through your transactions with us, such as your income and payment history; (3) information that we receive from consumer reporting agencies, such as your creditworthiness and credit history, and (4) information that we obtain from other third party information providers, such as public records and databases that contain publicly available data about you, such as bankruptcy and mortgage filings. All of the personal information that we collect is referred to in this notice as "collected information".

**Confidentiality and Security of Collected Information.** At the Sherman Companies, we restrict access to collected information about you to individuals who need to know such collected information in order to perform certain services in connection with your account. We maintain physical safeguards (like restricted access), electronic safeguards (like encryption and password protection), and procedural safeguards (such as authentication procedures) to protect collected information about you.

**Sharing Collected Information with Affiliates** From time to time, the Sherman Companies may share collected information about customers and former customers with each other in connection with administering and collecting accounts to the extent permitted under the Fair Debt Collection Practices Act or applicable state law.

**Sharing Collected Information with Third Parties** The Sherman Companies do not share collected information about customers or former customers with third parties, except as permitted in connection with administering and collecting accounts under the Fair Debt Collections Practices Act and applicable state law.

024600202C0000

# Exhibit TAC-5

Resurgent Request for Validation
(Continued)

January 31, 2014
Page 2 of 3

The following are specific concerns that I would like to express, have addressed and answered regarding the content of the foregoing documents especially since I have never heard of ("Resurgent") and I have no contract, agreement or trust with ("Resurgent").

1) I do not recognize the account # as any I have ever had
2) I do not recognize the amount in the "Total Payment(s) Due" box
3) Please provide a complete accounting and itemized breakdown of what constitutes this Total Due
4) There are no Transaction Descriptions in the appropriate box; please explain in detail
5) There are no transaction dates; please explain in detail
6) There are no transaction amounts; Please explain in detail
7) What is the escrow balance? Please explain in detail
    a) How was it calculated? Please give full accounting and explain in detail
    b) What exactly does it consist of? Please give full accounting and explain in detail
8) In the "Important Messages" box on the monthly statement it refers to:
    a) "prior correspondence"; to what is it referring? No prior correspondence was received.
    b) "...your loan recently **transferred** to Resurgent for **Servicing**.";
        i. Define "transferred" and "servicing" specifically
9) I do not have an account with ("Resurgent") and I have never had a relationship with ("Resurgent") or Bank of America N.A.
10) Are you stating that Bank of America N.A. is the alleged current creditor?
11) Please identify with proof who the alleged original creditor and who the alleged current creditor is, if different from the original and provide their contact information as required by the FDCPA.

None of the documents are signed by an individual taking liability for them which make them highly suspicious as fraudulent since anyone could have produced them in this digital day and age then put them in the mail. I do not trust this scenario and there is nothing here that obligates me to perform. So unless you can show me a valid contract, agreement or trust as proof that I have to perform, I don't have to deal with you. At this time I request that your offices provide me with competent evidence that I have any legal obligation to pay you. Please provide me with the following:

1) What the money you say I owe is for;
2) Explain and show me how you calculated what you say I owe;
3) Provide me with copies of any and all papers that show I agreed to pay what you say I owe;
4) Provide a verification or copy of any judgment if applicable;
5) Identify the original creditor;
6) Identify the current creditor if different than the original creditor;
7) Prove the Statute of Limitations has not expired on this account
8) Show me that you are licensed to collect in my state
9) Provide me with your license numbers and Registered Agent

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureau's (Equifax, Experian or TransUnion) this action might constitute violations under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you for the following:

- Violation of the Fair Credit Reporting Act

Resurgent Request for Validation                                                    January 31, 2014
(Continued)                                                                           Page 3 of 3

- • Violation of the Fair Debt Collection Practices Act
- • Defamation of Character

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit. This includes any listing any information to a credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is no provided proof that it is.

If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

Best Regards,

Julio Mayen

# **Exhibit TAC-6**

P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



**RESURGENT**
*Mortgage Servicing*
*A Division of Resurgent Capital Services LP*



**Shellpoint**
Mortgage Servicing





<u>Loan Number</u>
0515393708

ᴵᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢᵢ
S-SFREC520 L-CST-SMS A-0515393708 R-6
P3C0AC00708230 - 297357310 I16480
JULIO MAYEN
SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL CA 91935-2238

<u>Property Address</u>
15335 Castle Peak Lane
Jamul, CA 91935

<u>Owner of your Loan</u>
BANK OF NEW YORK AS TRUSTEE FOR
CWMBS 2005-07

2/14/2014

## Notice of Transfer of Servicing

Dear Valued Customer:

Effective March 1, 2014, Resurgent Mortgage Servicing will become part of Shellpoint Mortgage Servicing*, a division of New Penn Financial, LLC.  This means the servicing of your mortgage loan is being transferred to Shellpoint Mortgage Servicing.  This change does not affect any term or condition of the mortgage instruments, other than the terms directly related to the servicing of your loan.

**This change does not impact your mortgage.** There will be little or no impact to you as a result of this transfer.  The phone number and mailing addresses you use to contact Resurgent will be the same with Shellpoint.  Your loan number will remain the same as will the address you use for payments or correspondence.  However, Shellpoint will collect your payments going forward.  Shellpoint will start accepting payments received from you on 3/1/2014. If you have any questions about your mortgage loan or this transfer, our contact information is listed below.

- Customer Care Department Phone: (800) 365-7107
- Fax:  (866) 467-1137
- Email: loanservicing@shellpointmtg.com
- Website:  www.shellpointmtg.com
- Hours of Operation:   Monday - Friday / 8am - 10pm EST
                        Saturday / 8am - 3pm EST

<u>SEND WRITTEN INQUIRIES TO</u>
Shellpoint Mortgage Servicing
P.O. Box 10826
Greenville, SC 29603-0826

<u>SEND PAYMENTS TO</u>
Shellpoint Mortgage Servicing
P.O. Box 19006
Greenville, SC 29602-9006

Under Federal law, during the 60-day period following the effective date of the transfer of the loan servicing, a payment received by your old servicer on or before its due date may not be treated by the new servicer as late, and a late fee may not be imposed upon you.

**Key points to remember**
- Your loan number is 0515393708, our records indicate that as of 2/14/2014 this loan has an unpaid principal balance of $1,178,080.66, and is due for the 3/1/2009 installment
- If you use online bill pay, please be sure to update your bill pay service with Shellpoint's name and mailing address
- If you are on ACH Draft (autopay) that information will transfer to Shellpoint
- This servicing transfer only affects this loan, it does not affect your other loans you may have with Resurgent

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número (800) 365-7107.

*Best Regards,*

*Resurgent Mortgage Servicing and Shellpoint Mortgage Servicing*

## SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.

P I000001 A-0515393708 355260101J0400

**Exhibit C**

Case 3:17-cv-00050-JLS-MDD  Document 34  Filed 09/10/18  PageID.841  Page 68 of 91
Case 3:17-cv-00050-JLS-MDD  Document 15  Filed 09/20/17  PageID.345  Page 26 of 89

Notice of Servicing Transfer - Page 2

**Please read the following important notices as they may affect your rights.**

Unless you notify us within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will assume this debt is valid. If you notify us in writing within 30 days after receiving this notice that you dispute the validity of this debt, or any portion of it, we will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of us in writing, within 30 days after receiving this notice, we will provide you with the name and address of the original creditor, if different from the current creditor.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt was discharged in a bankruptcy without a valid reaffirmation, please understand that Resurgent is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's right in the associated collateral. Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

California Residents: As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

A menos que usted nos notifique dentro de los 30 días después de recibir este aviso que usted cuestiona la validez de esta deuda, o cualquier porción de la misma, asumiremos que esta deuda es válida. Si usted nos notifica por escrito dentro de los 30 días después de recibir este aviso que cuestiona la validez de esta deuda, o cualquier porción de la misma, obtendremos la verificación de la deuda u obtendremos la copia de la sentencia y le enviaremos la copia de dicha sentencia o verificación. Si nos lo pide por escrito, dentro de los 30 días después de recibir este aviso, le facilitaremos el nombre y la dirección del acreedor original, si no coincide con el acreedor actual.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Resurgent no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

"Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación."

"El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov"

# Exhibit TAC-7

March 31, 2014

Julio Mayen
15335 Castle Peak Lane
Jamul, CA  91935

**RESURGENT MORTGAGE SERVICING / SHELLPOINT MORTGAGE SERVICING**
*(A Division of New Penn Financial, LLC.)*
P.O. Box 10826
Greenville, SC  29603-0826

**USPS Certified Mail No.** 7011 1570 0000 1465 0785

RE:     **ALLEGED ACCT: 0515393708**

<u>**THIS IS A 2nd REQUEST FOR VALIDATION**</u>

Dear Sir or Madam,

On or about March 4, 2014 I received a Notice of Transfer of Servicing dated February 14, 2014 stating that the servicing of the above mentioned un-validated alleged account would be getting transferred to Shellpoint Mortgage Servicing, a division of New Penn Financial, LLC.   This notice also states that ("Resurgent") and / or ("Shellpoint") are attempting to collect a debt.  On January 31, 2014 I responded to the following documents sent by Resurgent Mortgage Servicing by submitting a debt validation request letter disputing this alleged account.

1) Monthly Statement dated 12-19-2013 stating that ("Resurgent") **is attempting to collect a debt.**
2) Letter of transfer dated 12-24-2013 stating that ("Resurgent") **is attempting to collect a debt.**

To date I have not received a response to my request for validation.  Instead I received the Notice of Transfer of Servicing mentioned above to which I am responding in the same manner, disputing the account specifically and completely.

This letter is to affirmatively notice you that I dispute the alleged debt in its entirety and your claim is being disputed.  I have no contract, agreement or trust with ("Resurgent") or ("Shellpoint").  Please note that this is NOT a Qualified Written Request but rather a request for validation pursuant to the **Fair Debt Collection Practices Act.**

Please be advised that I am not requesting "verification" that you have my mailing address.

I am requesting a **"validation"** that is, competent evidence that I have some contractual obligation to pay you ("Resurgent" or "Shellpoint") or your alleged client.

**Exhibit D**

Resurgent/ Shellpoint Request for Validation
(Continued)

March 31, 2014
Page 2 of 3

Further I am requesting "verification of agency" wherein your firm, practice, or collection agency is in the direct employ of the alleged creditor. Verification of direct agency requires substantiation by the Principal, not the agent.

You should also be aware that sending unsubstantiated demands for payment through the United States Mail System might constitute mail fraud under federal and state law.

Your failure to satisfy this request within the requirements of the **Fair Debt Collection Practices Act** will be construed as your absolute waiver of any and all claims against me, and your tacit agreement to compensate me for costs and attorney's fees should any arise.

The following are specific concerns that I would like to express, have addressed and answered regarding the content of the foregoing documents especially since I have never heard of ("Resurgent") or ("Shellpoint") and I have no contract, agreement or trust with ("Resurgent") or ("Shellpoint").

1) I do not recognize the account # and is not one I have ever had
2) I do not recognize the amount listed as one I have ever had
   a) How was it calculated? Please give full accounting and explain in detail
   b) What exactly does it consist of? Please give full accounting and explain in detail
3) Please provide a complete accounting and itemized breakdown of what constitutes this Total Due
4) There are no transaction descriptions; please explain in detail
5) There are no transaction dates; please explain in detail
6) There are no itemized transaction amounts; Please explain in detail
   a) How was it calculated? Please give full accounting and explain in detail
   b) What exactly does it consist of? Please give full accounting and explain in detail
7) Define "transferred" and "servicing" specifically and in detail
8) I do not have an account with ("Resurgent") or ("Shellpoint") and I have never had a relationship with ("Resurgent") or ("Shellpoint") or Bank of America N.A.
9) Are you stating that Bank of America N.A. is the alleged current creditor?
10) Is ("Resurgent") or ("Shellpoint") affiliated with Bank of America, N.A. in any way?
11) Please identify with proof who the alleged original creditor and who the alleged current creditor is if different from the original and provide their contact information as required by the FDCPA.

None of the documents are signed by an individual taking liability for them which make them highly suspicious as fraudulent since anyone could have produced them in this digital day and age then put them in the mail. I do not trust this scenario and there is nothing here that obligates me to perform. So unless you can show me a valid contract, agreement or trust as proof that I have to perform, I don't have to deal with you. At this time I request that your offices provide me with competent evidence that I have any legal obligation to pay you. Please provide me with the following:

1) What the money you say I owe is for;
2) Explain and show me how you calculated what you say I owe;
3) Provide me with copies of any and all papers that show I agreed to pay what you say I owe;
4) Provide a verification or copy of any judgment if applicable;
5) Identify the original creditor;
6) Identify the current creditor if different than the original creditor;
7) Prove the Statute of Limitations has not expired on this account

Resurgent/ Shellpoint Request for Validation                                      March 31, 2014
(Continued)                                                                       Page 3 of 3

8) Show me that you are licensed to collect in my state, California
9) Provide me with your license numbers and Registered Agent

At this time I will also inform you that if your offices have reported invalidated information to any of the 3 major Credit Bureau's (Equifax, Experian or TransUnion) this action might constitute violations under both Federal and State Laws. Due to this fact, if any negative mark is found on any of my credit reports by your company or the company that you represent I will not hesitate in bringing legal action against you for the following:

- Violation of the Fair Credit Reporting Act
- Violation of the Fair Debt Collection Practices Act
- Defamation of Character

If your offices are able to provide the proper documentation as requested in the following Declaration, I will require at least 30 days to investigate this information and during such time all collection activity must cease and desist.

Also during this validation period, if any action is taken which could be considered detrimental to any of my credit reports, I will consult with my legal counsel for suit. This includes any negative listing of any information to a credit reporting repository that could be inaccurate or invalidated or verifying an account as accurate when in fact there is no provided proof that it is.

If your offices fail to respond to this validation request within 30 days from the date of your receipt, all references to this account must be deleted and completely removed from my credit file and a copy of such deletion request shall be sent to me immediately.

I would also like to request, in writing, that no telephone contact be made by your offices to my home or to my place of employment. If your offices attempt telephone communication with me, including but not limited to computer generated calls and calls or correspondence sent to or with any third parties, it will be considered harassment and I will have no choice but to file suit. All future communications with me MUST be done in writing and sent to the address noted in this letter by USPS.

Best Regards,


Julio Mayen

# **<u>Exhibit TAC-8.1</u>**



# Shellpoint
## Mortgage Servicing

55 Beattie Place, Suite 110
Greenville, SC 29601

Toll Free Phone 1-866-316-4706
Toll Free Fax 1-866-467-1137

*Hours of Operation*
Monday-Friday 8:00AM-10:00PM
Saturday 8:00AM-3:00PM

May 23, 2014

Julio Mayen
Sarah Mayen
15335 Castle Peak Lane
Jamul, CA 91935

RE:   Current Owner: Bank of New York as Trustee for CWMBS 2005-07
      Loan Number: xxxx2584
      Reference Number: 0515393708

Dear Mr. & Mrs. Mayen:

This letter is in response to your correspondence dated January 31, 2014, and March 31, 2014, regarding the above referenced loan. The Bank of New York as Trustee for CWMBS 2005-07 ("BONY") is the owner of the loan ending in 2584. Resurgent Capital Services, L.P., ("Resurgent") was the servicer of the BONY loan beginning December 19, 2013. Effective March 1, 2014, Shellpoint Mortgage Servicing ("Shellpoint") acquired substantially all of Resurgent's mortgage servicing assets. As of the date of this communication, the balance owed is $1,436,550.39, which includes interest, fees, and debits. Because interest, payments, credits, fees, and/or other permissible charges can continue to cause the loan balance to vary from day to day, you should contact us at 866-316-4706 to determine the exact balance. Please review the following loan information:

1. The current owner of this loan is BONY and their address is:
   101 Barclay St. 4W
   New York, NY 10286
   888-999-0615

2. This loan originated with Countrywide Home Loans, Inc. on December 27, 2004, for an Adjustable Rate Mortgage.
3. The original loan was for $1,088,000.00, at an initial interest rate of 1.000% and an initial monthly payment of $3,499.44.
4. The interest rate and monthly payment amount you pay may change in accordance with Sections 2 & 3 of the Note.
5. Payments are to be made on the first day of each month, beginning February 1, 2005, plus any remaining amount due on the maturity date of January 1, 2035.

**Exhibit E**

6.  No payments have been received on this loan since Resurgent began servicing it in December of 2013.
7.  The loan is past due and has been since March 1, 2009.

Enclosed are copies of the Assignment, Uniform Residential Loan Application, Adjustable Rate Note, Deed of Trust, Truth in Lending Disclosure Statement, Good Faith Estimate, Notices of Servicing Transfer, and the complete loan transaction history from the date of the loan, to the date of this letter.

If we do not receive additional information from you within 30 days of the date this letter is received, then we will assume this dispute is resolved.  If you have any further questions, comments or concerns, please contact Customer Service at 866-316-4706.

Sincerely,

A.Maia
Shellpoint Mortgage Servicing

This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If this debt has been discharged in a bankruptcy without a valid reaffirmation, please understand that Shellpoint is not attempting to collect the debt from you personally, but is rather seeking to protect the creditor's rights in the associated collateral.  Please disregard any contrary provisions contained in this letter and interpret this communication accordingly.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.  They may not harass you by using threats of violence or arrest or by using obscene language.  Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work.  For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si esta deuda no fue liberada en una quiebra sin una reafirmación válida, entienda que Shellpoint no busca cobrar la deuda de usted personalmente, sino que busca proteger los derechos del acreedor en la garantía asociada. Haga caso omiso de las disposiciones contradictorias que se encuentran en esta carta e interprete esta comunicación en consecuencia.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov.

# **Exhibit TAC-8.2**

## Shellpoint
### Mortgage Servicing

75 Beattie Place, Suite 300
Greenville, SC 29601

Phone Number: (866) 825-2066
Fax: (866) 467-1187
e-Mail: loanservicing@shellpointmtg.com

Hours of Operation (EST)
Monday - Friday: 8 a.m.-10 p.m.
Saturday: 8 a.m.-3 p.m.

August 12, 2016

Julio Mayen
Sarah Mayen
15335 Castle Peak Lane
Jamul, CA 91935

**Certified Article Number**

**9414 7266 9904 2061 2293 95**

**SENDERS RECORD**

Re:  Case #:        544712
     Reference #:   0515393708
     Account #:     xxxx2584
     Property:      15335 Castle Peak Lane
                    Jamul, CA 91935

Dear Mr. Mayen:

We received your inquiry regarding the above referenced mortgage loan, and we have provided the requested information below.

The Bank of New York Mellon FKA The Bank of New York as trustee for CWMBS 2005-07 is currently the owner of the account number ending in 2584. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on the behalf of the owner referenced above on or about March 1, 2014. As of the date of this response, the unpaid principal balance is $1,178,080.66. Note that interest, payments, credits, and other allowable charges may cause the loan's balance to vary daily; therefore, you should contact Shellpoint at (866) 316-4706 to determine the exact balance.

Shellpoint recently addressed the issues and concerns listed in your complaint via the Consumer Financial Protection Bureau. Please refer to our enclosed letter dated July 28, 2016 and its enclosures.

Should you have further questions, you may contact Shellpoint's Escalations Department at (888) 536-9761 Monday through Friday between the hours of 8:00 a.m. to 5:00 p.m. (EST). You may also reach us via email at escalations@shellpointmtg.com.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número (800) 365-7107.

Sincerely,

Escalation Department
Shellpoint Mortgage Servicing

Enclosure:    Letter dated July 28, 2016

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.   Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no  podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar  Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov.

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource  y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

# Exhibit TAC-8.3



P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

Phone Number: 866-316-4706
Fax: 866-467-1137
www.shellpointmtg.com



S-SFRECS20  L-150  R-117
P6B9YU00200064 - 503206235 I00128
JULIO MAYEN
SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL CA 91935-2238

11/17/2016

**RE:**   **Loan Number: 0515393708**
**Borrowers: Julio Mayen and Sarah Mayen**

Dear Julio Mayen and Sarah Mayen:

This letter is in response to your recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2005-07, the owner of your loan. Their contact information is:

Address: 101 Barclay St., 8W  New York NY 10286

We are working to gather the requested information and will forward it to you as soon as possible.

If you have any additional questions or concerns, please contact our Customer Service department at 866-316-4706.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

**Customer Service**
**Shellpoint Mortgage Servicing**

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P6B9YU00200064 I000128  A-0515393708 000730101T0400

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

<u>California</u>
As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

<u>California</u>
Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

# **Exhibit TAC-8.4**

P.O. BOX 51850
LIVONIA MI 48151-5850
RETURN SERVICE REQUESTED



**Shellpoint**
Mortgage Servicing

Phone Number: 866-316-4706
Fax: 866-467-1137
 www.shellpointmtg.com
Mon - Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM



S-SFRECS20  L-150  R-117
P8RR9K00200335 - 554298197 I01338
JULIO MAYEN
SARAH MAYEN
15335 CASTLE PEAK LN
JAMUL CA 91935-2238

08/13/2018

RE:  Loan Number: 0515393708
       Borrowers: Julio Mayen and Sarah Mayen

Dear Julio Mayen and Sarah Mayen:

This letter is in response to your recent inquiry regarding the above-referenced account serviced by Shellpoint Mortgage Servicing on behalf of  BANK OF NY as trustee for CWMBS 2005-07, the owner of your loan. Their contact information is:

          Address: 101 Barclay St., 8W  New York NY 10286

We are working to gather the requested information and will forward it to you as soon as possible.

If you have any additional questions or concerns, please contact our Customer Service department at 866-316-4706.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

**Customer Service**
**Shellpoint Mortgage Servicing**

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001  A-0515393708 001710102J0400

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector. 

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource (800-342-9647) and the United States Armed Forces Legal Assistance or other similar agencies. For more information, please visit the Military OneSource website www.militaryonesource.mil/.

**Notice of Error or Information Request Address:** You have certain rights under Federal law related to resolving errors in the servicing of your loan and requesting information about your loan. If you want to request information about your loan or if you believe an error has occurred in the servicing of your loan and would like to submit an Error Resolution or Informational Request, please write to us at the following address: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

The following is a Spanish translation of the information provided above.

---

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

Esto es un intento de cobrar una deuda y cualquier información obtenida se utilizará para ello. Esta comunicación es de un cobrador de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una descarga de bancarrota de la deuda: tenga en cuenta que este aviso es para informarle de la situación de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud de Sección 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

**Atención Miembros del Servicio Militar y Dependientes:** Ley de Amparo Civil para miembros del servicio militar y ciertas leyes estatales proporcionan protecciones importantes para usted, incluyendo protecciones de tasas de interés y prohibiendo la ejecución hipotecaria bajo la mayoría de las circunstancias durante y doce meses después del miembro del servicio militar u otro servicio. Asesoramiento para militares con cobertura está disponible de Military OneSource (800-342-9647) y la Asistencia Legal de las Fuerzas Armadas de Estados Unidos o de otras agencias similares. Para más información por favor visite el sitio web de Military OneSource www.militaryonesource.mil/.

**Aviso de Error o la Dirección de Petición de Información** Usted tiene ciertos derechos en virtud de la ley federal relacionados con la resolución de errores en el servicio de su préstamo y la solicitud de información sobre su préstamo. Si desea solicitar información sobre su préstamo o si usted cree que un error ha ocurrido en el servicio de su préstamo y desea presentar una resolución de errores o solicitud de información, por favor escríbanos a la siguiente dirección: Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

The following is a Chinese translation of the information provided above.

**请阅读以下重要通知，因为它们可能会影响您的权利。**

这是试图进行收债的一种尝试，所获取的任何信息均会用于收债目的。此信函由收债人发出。

如果您是破产客户，或是获得本债务破产免责的客户：请注意，本通知旨在告知您抵押贷款的状态。本通知不构成对此文件的任何接受者，即根据适用的破产法而获得此类债务的免责之人，或可能遭受《美国破产法典》第362章节的自动冻结之人的付款要求或个人责任通知。但是，此通知可能会执行针对抵押财产的留置权，该权利尚未被您的破产所免除。

**各服役人员及其家属，请注意：**联邦《服役人员民事救助法案》及某些州法律会为您提供重要保护，包括在服役人员服役期或其他服务期之内以及十二个月之后在多数情况下的利率保护和禁止丧失抵押品赎回权。Military OneSource (800-342-9647) 和美国武装部队法律援助部门 (United States Armed Forces Legal Assistance) 或其他类似机构会为接受医疗服务的服役人员提供咨询服务。如需更多信息，请访问 Military OneSource 网站：**www.militaryonesource.mil/。**

**错误或信息请求通知致函** 根据联邦法律，您拥有某些关于解决您的贷款还本付息业务中的错误以及索取有关贷款信息的权利。如果想索取有关您贷款的信息，或者是您认为您的贷款还本付息业务中出现错误，而想要提交"错误决议"或"信息请求"，请写信给我们，地址如下：Shellpoint Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826

If you prefer to receive communication in a language other than English, Spanish, or Chinese, please contact us at 866-316-4706 to speak with a translator in your preferred language about the servicing of your loan or a document you received.

California
As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

P6RR9K00200335 I001340 S-SFRECS20   L-150 A-0515393708

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

<u>California</u>
Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación.

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov

# Exhibit TAC-9

New Penn Financial, LLC/ Shellpoint Mortgage Servicing
Notice of Demand to Cease and Desist
*(Continued)*

August 18, 2016
Page **37** of **93**



**Shellpoint**
Mortgage Servicing

55 Beattie Place, Suite 110
Greenville, SC 29601

Toll Free Phone 1-800-365-7107
Toll Free Fax 1-866-517-8525

*Hours of Operation*
Monday-Friday 8:00AM-10:00PM
Saturday 8:00AM-3:00PM

July 28, 2016

Julio Mayen
Sarah Mayen
15335 Castle Peak Lane
Jamul, CA 91935

RE:     Case #160715-000040
        Reference Number: 0515393708

Dear Mr. and Mrs. Mayen:

This letter is in response to the Consumer Financial Protection Bureau ("CFPB") complaint submitted July 15, 2016, regarding the above referenced loan. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on March 1, 2014.

Please note, Shellpoint takes its customer service and consumer protection obligations very seriously and has significant staff dedicated to its compliance related functions in order to identify, resolve, and permanently correct operational deficiencies and improve upon customer concerns.

Our records indicate you have submitted to this office a notice demanding that we cease communication with you. Thus, this letter is for the limited purpose of responding to your dispute and notifying you of the results of our investigation.

Per the complaint, you advise you have requested a validation of debt several times; however, Shellpoint has not responded to each request. You also state the foreclosure action is not valid based on your allegation The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07 is not the Holder of the Note. Additionally, you have requested a cease and desist be placed on the loan.

Please be advised, Shellpoint has determined some of your inquiries do not fall within the scope of a Qualified Written Request because they are related to the origination of the loan or the trust. Shellpoint is required to respond to inquiries relating to the servicing of the loan. We are not required to respond to inquiries related to origination, underwriting, subsequent sale or securitization, or determination to sell, assign, or transfer the servicing of the mortgage loan.

In keeping with our goal to achieve the highest level of customer satisfaction, please review the following loan information:

DE07292016E

1. The current owner of this loan is The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07 ("BONY") and their address is:

   101 Barclay St. 8W
   New York, NY 10286
   412-234-5000

2. This loan originated with Countrywide Home Loans, Inc. on December 27, 2004, for an Adjustable Rate Note.

3. The original loan was for $1,088,000.00 at an initial interest rate of 1.000% with initial payments of $3,499.44. The interest rate and payment may change, as described in Sections 2 and 3 of the Note.

4. Payments are to be made on the 1st day of each month, beginning February 1, 2005, plus any remaining amount due on the maturity date of January 1, 2035.

5. No payments have been made since the loan was transferred to Shellpoint in March 2014.

6. The loan is past due and has been since March 1, 2009.

Shellpoint has determined that your dispute does not provide any specific details regarding servicing errors or any specific information on which we can form the basis for further investigation. Based on present investigation of your dispute, Shellpoint is not able to determine that any error has occurred.

You have the right to request documentation supporting our determination that no error has occurred. Enclosed is a copy of the Assignment, Adjustable Rate Note, Mortgage, Notice of Servicing Transfer, and the Loan Transaction history.

If you believe there are significant errors in the servicing of this loan, pleased provide specific details regarding any errors you believe have occurred, along with any supporting documentation you may have, and Shellpoint will gladly assist. Our address to forward your correspondence is:

Shellpoint Mortgage Servicing
Disputes Department
P.O. Box 10826
Greenville, SC 29603
OR
Fax: 866-467-1137

With regard to your concerns that you were not contacted to be advised of the available loss mitigation options, Shellpoint respectfully disagrees. In addition to a letter to you dated May 4, 2016, Shellpoint also issued you the enclosed solicitations inviting you to apply for the available loss mitigation options. Shellpoint has yet to receive any of the required documentation. If you wish to be evaluated for the available loss mitigation options, please provide the documentation requested in the enclosed solicitations as soon as possible to Shellpoint's Loss Mitigation Department via facsimile at (866) 467-1187 or via email to lossmitigation@shellpointmtg.com. Upon the receipt of the required documentation, Shellpoint will assess your eligibility for the available loss mitigation options and notify you of the outcome in writing.

As you know, the subject property has been referred to an attorney to commence foreclosure proceedings, and time is of the essence as a sale has been scheduled for the subject property to

DE07292016E

New Penn Financial, LLC/ Shellpoint Mortgage Servicing
Notice of Demand to Cease and Desist
*(Continued)*

August 18, 2016
Page 39 of 93

occur on August 22, 2016. If you have any questions regarding the documentation that we require and/or the loss mitigation process, please contact the loan's assigned loss mitigation representative, Christian Perez, via telephone at (866) 825-2174, extension 7527. You may also contact Shellpoint's Loss Mitigation Department via telephone at (866) 825-2174.

I hope this addresses the concerns you expressed in your complaint. If you have any further questions, comments, or concerns, please feel free to contact me directly at 864-312-4850.

Sincerely,

Kara Watt
Compliance Department
Shellpoint Mortgage Servicing

Enclosures

This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

The following is a Spanish translation of the information previously provided:

Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

DE07292016E

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

DE07292016E