**FILED**

Nov 26 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY ___s/ judep___ DEPUTY

NUNC PRO TUNC
11/20/2018

1  Julio Mayen
   15335 Castle Peak Lane
2  Jamul, CA  91935
   ekultan@gmail.com
3  (619) 669-9904
4
5
6
7
8           **District Court of the United States**
9           **at the Southern District of California**
10

| | |
|---|---|
| **Julio Mayen,** <br> *Plaintiff, **Pro Se.*** <br><br> **vs.** <br><br> **New Penn Financial, LLC** <br> **dba Shellpoint Mortgage Servicing,** <br><br> *Defendants* | Case No.  3:17-CV-0050-JLS-MDD <br> Hon. Janis L. Sammartino <br><br> **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT TO PLAINTIFF'S THIRD AMENDED COMPLAINT** [1] <br><br> Hearing Date: <br> Date:   December 6, 2018 <br> Time:  1:30 p.m. <br> Courtroom: 4D <br><br> Complaint filed:    January 11, 2017 <br> FAC filed:          September 20, 2017 <br> SAC filed:          No <br> TAC filed:          September 10, 2018 <br> Trial Date:         None yet <br><br> **JURY TRIAL REQUESTED** |

---

[1] Defendant erroneously labeled their latest filing as a Motion to Dismiss Plaintiff's SECOND Amended Complaint.  Clearly Defendant did not read the Honorable Court's Order to Show Cause (Doc. 33: 10-12).

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT TO PLAINTIFF'S THIRD AMENDED COMPLAINT**

## I.   INTRODUCTION

Plaintiff, Mr. Julio Mayen, consumer, **pro se**, insists that Defendant, Shellpoint Mortgage Servicing, a debt collector, did not provided this Honorable Court, or Plaintiff, with the true and genuine name of the alleged owner/ creditor in this instant matter before this Court, in violation of FDCPA § 803, 806, 807, 808, 809, 812, 813; 15 USC § 1692a, 1692d, 1692e, 1692f, 1692g, 1962j and 1692k. The alleged owner/creditor sited in Defendant's documentation provided to the Honorable Court, and Plaintiff, is an erroneous owner/creditor, The Bank of New York, Exhibit TAC/ OPP-A, Defendant's letter dated 07/19/2016, which also violated California Commercial Code (CCC) § 3301 - "**Person entitled to enforce**" an instrument; and, Uniform Commercial Code (UCC) §3-301(i)(ii)(iii) – "**Person Entitled to Enforce Instrument**." Defendant has never presented any authoritative documentation that they received an authentic/ legal endorsement from the legitimate alleged owner/ creditor of the instrument assigning Defendant the full rights as a servicer despite Plaintiff's many requests.

A non-holder in possession of an instrument includes a person that acquired rights of a holder by subrogation or under UCC § 3-203(a) – **Transfer of Instrument; Rights Acquired by Transfer**, which Defendant never received by subrogation because the alleged creditor is still unknown to Defendant, this Honorable Court, and Plaintiff.

Despite Plaintiff's efforts, Plaintiff could not contact the *alleged* owner/creditor that Defendant continues to claim owns Plaintiff's alleged loan,

"The Bank of New York", because The Bank of New York ceased to exist as a business on July 1, 2007, see Exhibit TAC/OPP-D.   Plaintiff contacted Defendant again and asked them to clarify who it was that owns Plaintiffs' alleged home loan, Plaintiff acquired Defendant's response letter dated July 28, 2016, Exhibit TAC/OPP-B, *(This letter was never received by the Plaintiff. It was found as a response to Plaintiff's complaint filed with the Consumer Financial Protection Bureau).*   page two (2), paragraph one (1), item 1, "The current owner of this loan is The Bank of New York Mellon, FKA, The Bank of New York, as trustee…".   The above Bank expressly rejected being the owner of the loan, Exhibit TAC/OPP-E1, E2 & E3, which Defendant is trying to persuade this Honorable Court, and Plaintiff, that The Bank of New York Mellon is the owner of the loan, see Exhibit TAC/OPP-A, letter dated 7-19-2016 paragraph one (1) and Exhibit TAC/OPP-C, letter dated May 4, 2016 paragraph two (2).

*Alleged* owner/creditor, The Bank of New York Mellon, FKA, The Bank of New York, expressly states in Exhibit TAC/OPP-E1, E2 & E3, that they "***are not***" the owner/creditor in this instant matter.

Defendant cannot provide definitive proof who the true and genuine alleged creditor of Plaintiff's Note is despite many requests from the Plaintiff. Defendant (as a debt collector), received Plaintiff's paperwork knowing that the statute of limitations of four (4) years on a debt had run and had expired yet is still attempting to fraudulently collect.

Defendant fraudulently availed itself as Plaintiff's "servicer" knowing it is only a, "debt collector" in all its correspondences with Plaintiff, continuing its criminal enterprise (CCE) to defraud Plaintiff of his property in violation of the IV Amendment of the U.S. Constitution: "*The right of the people to be secure in their persons, **houses**, papers, and effects, against unreasonable searches*

*and seizures, **shall <u>not</u>** be violated,...*" (emphasis mine).   Defendant did not acquire 100% of all rights and entitlements the Note comes with, specifically, rights to enforce payment of the alleged Note and the right to foreclose on the alleged Note; only the owner/ creditor can do that, which Defendant cannot expressly state who the alleged creditor is to this day and the Defendant does not fit the role.

Right to enforce a Note requires strict compliance with the UCC in order to achieve the protective policies under the UCC. See, for example:

- *Adams v Madison Realty & Development, Inc.*, 853 F.2d 163 (3rd Cir. 1988): *This decision notes that strict compliance with the UCC protects each intended owner of the Note as it gets passed about.*

- *Cogswell v. Citifinancial Mortgage*, 624 F.3d 395 (US Cir.7th 2010): Ruling against the foreclosure machine, the court raised the concern that the machine's failure to prove compliance with the UCC requirements created a reasonable concern about whether the *"[N]ote was actually held by another who would be entitled to enforce it against the property owners."*

- *Bank of America v. Miller*, 2011-Ohio-1403 (OH Ct.App.2d 2011): *"[I]t becomes essential to establish that the person who demands payment of a negotiable [N]ote, or to whom payment is made, is the duly qualified holder, Otherwise, the obligor is exposed to the risk of double payment, or at least to the expense of litigation incurred to prevent duplicative satisfaction of the instrument. These risks provide makers with a recognizable interest in demanding proof of the chain of title."*

Defendant attempts through duress, coercion, and intimidation, to get Plaintiff to pay a Note Plaintiff does not owe Defendant. Defendant has started foreclosure proceedings which they have no authority to do, in violation of book 17A American Jurisprudence 2d (Am Jur 2d), CONTRACTS § 218 **Duress, coercion, or intimidation**, that states:

"*Duress is the condition where one is induced by a wrongful act or threat of another to make a contract under circumstances which deprive one of the exercise of his or her free will. Freedom of will is essential to the validity of an agreement.*" See *Vasapolli v. Rostoff*, 39 F.3d 27, (1st Cir. 1994); *Resolution Trust Corp. v. Kennelly*, 57 F.3d 819 (9th Cir. 1995).

Defendant violated UCC § 3-502(a) **Presentment**, "*means a demand made by or on behalf of a person entitled to enforce an instrument*"; 15 U.S.C. 1692e, and § 807(5)(10) **False or misleading representations**, and CCC § 1788.2(b)(c) **Misrepresentations in communication**, which Defendant is neither the servicer or creditor, nor entitled to enforce the alleged Note or foreclose on Plaintiff.

Defendant violated Fair Debt Collection Practices Act (FDCPA), § 809(**a**)(2); and 15 U.S.C. §1692g, "(2) *the name of the creditor to whom the debt is owed*;" by providing false expressions to this Honorable Court, and Plaintiff, see Exhibits TAC/OPP-D & E1, E2 and E3 as to who the true creditor is. The true and genuine owner/creditor is still unknown to Plaintiff, and deducing from Defendant expressions, Defendant does not know either. The truth concerning the ***alleged*** default status of Plaintiff's mortgage can only be answered by the true creditor, which is not the Defendant. Only the true creditor or a legally assigned servicer, can start foreclosure proceedings, ***not a debt collector***.

Defendant is trying its best to fraudulently collect on a debt by falsely claiming it is Plaintiff's servicer, which this Honorable Court has ruled it is not, while Defendant falsely stated time and time again in all their correspondence to Plaintiff, that Defendant is the servicer of Plaintiff's alleged loan. Again, a fraudulent statement made knowingly and willfully for self-enrichment reasons, for the presentment received from Defendant, ***was not*** an assignment from the alleged owner/creditor of Plaintiffs' alleged Note. Being an alleged

"professional mortgage servicing company," Defendant knew exactly the species of expression it had received and its limitations, but chose to ignore those limitations.

Defendant threatened Plaintiff with and initiated foreclosure proceedings if Plaintiff did not make payments to Defendant, in violation of Am Jur 2d, CONTRACTS § 220 **Threats** – "A threat is improper if:

(1) *what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property*;

(2) *what is threatened is the use of civil process and the threat is made in bad faith*;

(4) *the threat is a breach of duty of good faith and fair dealing under a contract with the recipient.*

*A threat is also improper if the resulting exchange is not on fair terms, and (2) the effectiveness of the threat in inducing the manifestation of assent is significantly increased by prior unfair dealing by the party making the threat, or (3) what is threatened is otherwise a use of power for illegitimate ends.*

*For duress to exist, not only must a threat be improper, but it must leave the aggrieved party without any reasonable alternative other than to assent to the contract. The essential question is whether the threat has left the individual bereft of the quality of mind essential to the making of a contract. A threat is improper for purposes of establishing contractual duress if:*

(1) *what is threatened is a crime or a tort, or the threat itself would be a crime or a tort if it resulted in obtaining property*;

(3) *what is threatened is the use of civil process and the threat is made in bad faith*;

(4) *the threat is a breach of duty of good faith and fair dealing under a contract with the recipient. (*emphasis mine). <u>See</u>, *Centech Group, Inc. v. Getronicswang Co., LLC.*, 32 Fed. Appx, 673 (4th Cir. 2002); *Rissman v. Rissman*, 213 F.3d 381 (7th Cir. 2000); and *Vail/Arrowhead, Inc. v. District Court for the Fifth Judicial Dist., Eagle County*, 954 P.2d 608 (Colo. 1998).

Plaintiff does not owe Defendant anything, for it was never assigned servicer duties by the true alleged owner/creditor because Defendant cannot tell this Honorable Court, or Plaintiff, who the true alleged owner/creditor is.

Upon information and belief, Plaintiff feels Defendant is doing these fraudulent, unethical, abusive, deceptive, and unfair debt collection practices for self-enrichment in defiance of the statutes cited above, FDCPA of Congress, California FDCPA, UCC laws, and Am Jur 2d American Law and cases, which safe guards U.S. homeowners from corrupt debt collection practices such as what is being perpetrated against Plaintiff.

Defendant is <u>NOT</u> Plaintiffs' mortgage servicer or creditor. Defendant has never been Plaintiffs' mortgage servicer or creditor, and can never be Plaintiff's mortgage servicer because Defendant received Plaintiff's ***supposed*** debt collection paperwork after the "collection of a debt" time limit of four years, statute of limitations, had run over four and a half years.  Defendant must have known being a "professional mortgage servicing company." By law, Defendant cannot be assigned the duties of mortgage servicer if the alleged Note is in ***supposed*** default prior to Defendant receiving it, and Defendant has no power or authority to foreclose on Plaintiff's property.

Even knowing what the FDCPA says concerning what a debt collector can do, and the documentation it must provide an ***alleged*** debtor, Defendant, knowingly and willfully, without regard for Federal or State Code, UCC law, Am Jur 2d American Law, and case law, violated all the above for self-enrichment.

Defendant is in violation of FDCPA § 809(a)(2); and 15 U.S.C. § 1692g where, Exhibit TAC/OPP-C, letter dated 4 May 2016,  states on the front page in paragraph two (2), Sentence two (2), that "Shellpoint Mortgaging Servicing("Shellpoint") began _servicing_ the loan on the behalf of the _owner_ referenced above on or about March 1, 2014.", that being, "The Bank of New York Mellon, Formally Known As (FKA), The Bank of New York, as trustee for CWMBS 2005-007, currently the _owner_ of the account ending in 2584, which is absolutely FALSE, see Exhibit TAC/OPP-E-1, E-2 & E-3, The Bank of New York Mellon's email(s) to Plaintiff dated September 29, 2014, July 18, 2016 and October 4, 2018, absolutely contradicts Defendants' assertion that the above Bank _owns_ Plaintiff's alleged mortgage loan.

Additionally, Defendant was not conspicuous in expressly identifying itself in Exhibits TAC/OPP-A & C, as a "debt collector", in violation of 15 U.S.C. § 1692j, and FDCPA § 812(a)(b) **Furnishing certain deceptive forms**, by "_creat[ing] the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating._" (emphasis mine).

Defendant, in bad faith, Exhibits TAC/OPP-A & C, knowingly and willfully fails to expressly identify Defendant's true professional title, "debt collector", in the letters Defendant sent to Plaintiff.  Instead, Defendant veiled itself as Plaintiff's "mortgage servicer," numerous times in violation of § 1692j, and FDCPA § 812(a)(b) **Furnishing certain deceptive forms**; 15 U.S.C. § 1692k, and FDCPA § 813(a)(1)(2)(3)(b)(1)(d) **Civil liability**; and Chapter 47, FRAUD AND FALSE STATEMENTS, 18 U.S.C. **§ 1001**(a)(1)(2)(3)(b)(c)(1), **Statements or entries generally**; and **§ 1018 Official certificates or writings**.

Which states:

## 18 U.S.C.   Chapter 47 – FRAUD  AND  FALSE  STATEMENTS  § 1001.

**Statements or entries generally:**

(a) "*Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully-*

   *(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;*

   *(2) makes any materially false, fictitious, or fraudulent statement or representation; or*

   *(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry; shall be fined under this title or imprisoned not more than 5 years, or both.*

   *(b) Subsection (a) does not apply to a party to a judicial proceeding, to that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.*
   *(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to-*

   *(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or…"*

## And; 18 U.S.C. § 1018. Official certificates or writings-:

"*Whoever, being a public officer or other person authorized by any law of the United States to make or give a certificate or other writing, knowingly makes and delivers as true such a certificate or writing, containing any statement which he knows to be false, in a case where the punishment thereof is not*

*elsewhere expressly provided by law, shall be fined under this title or imprisoned not more than one year, or both."*

Additionally, Exhibit TAC/OPP-C, page two (2), approximately the middle of the page, the Defendant finally expresses in the first sentence of the paragraph that "This communication is from a debt collector" in the same font and color as the rest of the letter.

Neither a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size are found in Exhibit TAC/OPP-A & C stating this letter is from a debt collector, see FDCPA § 807, 15 U.S.C. 1692e(4)(5), FDCPA § 812, 15 U.S.C. 1692j(a)(b) and U.C.C. § 1-201(10).  In Exhibit TAC/OPP-B, the "debt collector" statement was buried on page three (3), while the first two pages are dedicated to persuading Plaintiff that Defendant "is indeed" the *alleged* "assigned servicer" by the *supposed* owner of the loan, even though on page two (2), item 5, it states: "...the loan was transferred to Shellpoint in March 2014.", and yet, two (2) paragraphs down it states on line two (2) that: "Enclosed is a copy of the Assignment..."  So which is it, Transferred or Assigned?  The first title makes you nothing more than a "debt collector", and the second title allegedly makes you the "owners' servicer" who can proceed with foreclosure proceedings, which a "debt collector" cannot, for it lacks the power and authority to foreclose according to the Note and Deed of Trust which only the "servicer" can do.

Defendant violated 15 U.S.C. § 1692i; and FDCPA § 811(**a**)(1) states:

(**a**) "**Venue:** Any debt collector who brings any legal action on a debt against any consumer shall-

(1) in the case of an action to enforce an interest in real property securing the consumer's obligation, bring such action only in a judicial district or similar legal entity in which such real property is located;..."

Defendant has brought legal action on a debt to enforce an interest in real property but did not secure the consumer's obligation, for Defendant has stated in Exhibit TAC/OPP-B that the mortgage loan was "transferred." Defendant has never expressed that it secured consumer's obligation.

Therefore, these abominable foreclosure proceedings are fraudulent and were done knowingly and willfully for self-enrichment by Defendant.

Defendant fraudulently veiled itself as the "servicer" in all its correspondences with Plaintiff in violation of U.C.C. § 1-201(10) which states:

""*Conspicuous*", *with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court.*

*Conspicuous terms include the following:*

*(A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding test of the same or lesser size; and*

*(B) Language in the body of a record or display in larger type that the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language."*

On the issue of Plaintiff's prior bankruptcies, Plaintiff withdrew all three of his bankruptcies prior to any judicial review, and they have no bearing on this Complaint.

Plaintiff did provide enough facts supporting Plaintiff's claims under FDCPA as noted above, and reiterated them for Defendant's benefit.

Plaintiff has used the proper verbiage in his Complaints filed that include all parties involved in this Complaint.

## II.   STATEMENT OF FACTS

### A.   The Loan and Deed of Trust

The Deed of Trust Exhibit TAC/OPP-F, outlines on page 13-14, paragraph 22, who can commence foreclosure proceedings, and a debt collector is not a party authorized to commence foreclosure proceedings. Defendant is neither the owner of the loan, nor the "assigned" servicer of the Plaintiffs' mortgage loan, and therefore, has no power or authority to commence any kind or type of foreclosure proceedings against Plaintiff.

### B.   Plaintiff Bankruptcy Filings

Plaintiff withdrew all three of the bankruptcy filings filed prior to any judicial review or ruling, and have no bearing on the complaint Plaintiff is bringing against Defendant in this case.

## III.   LEGAL STANDARDS

Book 37, American Jurisprudence 2d, (Am Jur 2d), FRAUD AND DECEIT § **45-Generally**, copyright 2001, states:

> "*A fraud may be perpetrated by false pretenses or by any trick, device, artifice, scheme calculated to injure another. The common characteristic of cases involving fraudulent devices or false pretenses is the deprivation of another of a right, money, or property by artful and deceptive words and acts which, when the facts are known, were more or less obviously*

*said or done with intent to defraud."* (emphasis mine).   See, *In re Felber's Estate,* 193 Or. 231, 238 P.2d 203, 31 A.L.R.2d 231 (1951); *U.S. v. Norton,* 108 F.3d 133 (8th Cir. 1997); *Ralson v. Silo,* 114 A.D. 358, 99 N.Y.S. 934 (3d Dep't 1906); *Hill v. Chamberlain,* 64 A.D. 609, 71 N.Y.S. 639 (4th Dep't 1901), aff'd, 170 N.Y. 595, 63 N.E. 1117 (1902), which is what Defendant has done.

And, Am Jur 2d, FRAUD AND DECEIT **§ 47- False identification or impersonation; forgery,** states:

   *"Fraud may be predicated on a false introduction or identification. Forgery is a method of impersonating an owner of funds and is therefore a species of fraud. One who represents himself to be another, the owner of certain property, and who feigns to dispose of such property, commits a gross fraud. Also, one who aids another's impersonation by identifying the person as the person he or she claims to be is also guilty of fraud."* See, *Union Co. v. Cobb,* 73 Ohio L. Abs. 155, 136 N.E.2d 429 (Ct. App. 10th Dist. Franklin County 1955); *Raser v. Moomaw,* 78 Wash. 653, 139 P. 622 (1914), which Defendant has done.

Also, Defendant violated: Am Jur 2d, FRAUD AND DECEIT **§ 49- Enticement into jurisdiction,** that states:

   *"If a person is induced by artifice, fraud, or misrepresentation to come within the jurisdiction of a court for the purpose of obtaining service of process, not only will the service be set aside on motion, but also an action of damages may be maintained for the deceit."* See, *Sweet v. Kimball,* 166 Mass. 332, 44 N.E. 243 (1896); *Cook v. Brown,* 125 Mass. 503, 1878 WL 11004 (1878); *Phelps v. Goddard,* 1 Tyl. 60, 1801 WL 480 (1801); *Townsend v. Smith,* 47 Wis. 623, 3 N.W. 439 (1879), which the Plaintiff will do.

Defendant violated the preceding in every action it took to attempt to defraud Plaintiff of his legal property using fraudulent presentments, duress, coercion, and intimidation.   The California FDCPA § 1788.13(i)(l) states:

"*No debt collector shall collect or attempt to collect a consumer debt by means of the following practices:*

*(i) The false representation of the true nature of the business or services being rendered by the debt collector; and*

*(l) Any communication by a licensed collection agency to a debtor demanding money unless the claim is "actually assigned" to the collection agency."*

Defendant, in their, "**Defendant's Memorandum Of Points And Authorities To Its Motion To Dismiss Or For A More Definite Statement As To Plaintiff's Second Amended Complaint**", (Doc. 35-1, on page 6 of 8, lines 15-20), where Defendant dismissively taunts Plaintiff by stating; "*Nowhere did the court find Shellpoint is not also Mr. Mayen's loan servicer; nor is there authority to support a debt collector cannot also be a mortgage servicer.*" (emphasis mine).

Defendant's tenor suggests Defendant cares less what his title is, just that Defendant will, by any means available, seize Plaintiff's property for self-enrichment.  Plaintiff's Complaint is, Defendant is not Plaintiff's loan servicer or creditor and has no power and authority to foreclose on Plaintiff.  Defendant is just a debt collector with a complete disregard of the rule of law.  Defendant's actions conform to:

Am Jur 2d, FRAUD AND DECEIT § **120-Reckless disregard of falsity**:

*"False statements that are made recklessly, without knowing or caring whether they are true or false, will support an action of fraud or deceit. Accordingly, the scienter or intent to deceive requirement, for purposes of a fraud claim, can be satisfied by a showing of recklessness. A representation is "reckless" if it is made without any knowledge of the truth, or if the person making the representation knows that he or she does not have sufficient information or a basis to support it, or if the maker realizes that he or she does not know whether or not the statement is true. Other courts have applied standards so that statements made "in reckless disregard to the truth" or "in conscious indifference to its truth" or that it is "recklessly made with the intent of deceiving the opposite party" are fraudulent. A defendant is liable in a tort action of fraud or deceit only if the defendant knows that a representation false or is recklessly indifferent is the sense that the defendant knows that he or she lacks knowledge as to its truth or falsity."* <u>See</u>, *Ausley v. Bishop*, 133 N.C. App. 210, 515 S.E.2d 72 (1999); *Lord v. Souder*, 748 A.2d 393 (Del. 2000); *BCCI Holdings (Luxembourg) Societe Anonyme v. Khalil*, 56 F. Supp. 2d, 14 (D.D.C.1999), aff's in part, rev'd in part and remanded on other grounds, 214 F.3d 168 (D.C. Cir. 2000), cert. denied, 121 S. Ct. 382, 148 L. Ed. 2d 295 (U.S. 2000) (applying District of Columbia law); *VF Corp. v. Wrexham Aviation Corp.*, 350 Md. 693, 715 A.2d 188 (1998).

# IV.   <u>ARGUMENT</u>

## A.   Judicial Estoppel Bars this Entire Case

It is Plaintiff's mistake for not stating unforeseen future claims in his three prior bankruptcy proceedings, Plaintiff pleads legal ignorance. Plaintiff is neither an attorney, lawyer, or law firm, nor can Plaintiff afford any of the proceedings, nor any counselor fees.  Plaintiff is trying his very best to conform to the Honorable Court's rules and federal regulation. I assure the Honorable Court my oversight of leaving this claim out of the bankruptcies was purely unintentional. Defendant accuses Plaintiff of *"playing fast and loose"* with the court, which is utter rubbish.  Plaintiff struggles to put a proper complaint together, much less *"play fast and loose"* with this or any Honorable Court, how absurd!

## B.    No Claim for "FDCPA, CCC and Fraud Violations"

Plaintiff made the Defendant's FDCPA violations very plain in Plaintiff's TAC, but in the light of justice and good faith, Plaintiff has delineated in detail with amazing clarity and conciseness Defendant's illegal, deceptive, and fraudulent collection practices, that, not only undermined Plaintiff's confidence, but the public confidence in the mortgage loan industry which is essential to the continued functioning of the banking and credit system and sound extensions of credit to consumers.

## C.    Sarah Mayen is a Necessary and Indispensable Party

Consumers, Mr. and Mrs. Mayen, have been stated in all Plaintiff's complaints including Plaintiff's TAC, and this Motion to Dismiss which makes Defendant's complaint a moot point.

# V.   **CONCLUSION**

Plaintiff for the third time has proffered, along with this Opposition to Defendant's Motion to dismiss Plaintiff's TAC, (Docs. 35 and 35-1), what Plaintiff feels is a competent response to Defendant's feeble and weak contentions. That Defendant knowingly and willfully and without the True alleged Creditor's permission or consent, through fraudulent presentments and schemes, attempt to deny Plaintiff's right to verify the True Alleged Creditor in this matter, by bullying Defendant's way through these processes.  The truth is, Defendant has, and continues to violate, all the above cited Federal, State, U.C.C. laws, Am Jur 2d American Laws as presented through fraudulent misrepresentation and fraudulent presentments as Exhibited throughout this complaint.

# VI.   **PRAYER**

Plaintiff humbly requests this Honorable Court grant the following:

1.   Dismiss, with prejudice, Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint filing, (Docs. 35 and 35-1),

2.   Rule in favor of Plaintiff's TAC, (Doc. 34),

3.   Order Defendant to cease and desist the fraudulent collection and foreclosure proceedings against Plaintiff with prejudice.

4.   Order Defendant's to rescind and expunge the Notice of Default, Substitution of Trustee and Notice of Trustee sales from the record at the San Diego County Recorder's Office immediately.

5.   Award Plaintiff actual damages pursuant to FDCPA §813(1); 15 U.S.C. 1692k(1) in the amount of $2,000,000.00 per incident.

6.   Award Plaintiff additional damages pursuant to FDCPA §813(2); 15 U.S.C. 1692k(2) in the amount of $2,500.00 per incident.

7.   Award Plaintiff any and all incidentals that this court is able to and grant in this matter.

Respectfully submitted this 20th day of November 2018

By: _Julio Mayen_

Julio Mayen, Plaintiff, Pro Se
15385 Castle Peak Lane
Jamul, CA  91935
619-669-9904
ekultan@gmail.com

1

## **VERIFICATION**

2

3 The undersigned, for himself declares:

4

5     I am the Plaintiff in the above-entitled action. I have read the forgoing

6 complaint and know the contents thereof. With respect to the causes of action

7 alleged by me, the same is true by my own knowledge, except as to those

8 matters which are therein stated on information and belief, and, as to those

9 matters, I believe them to be true.

10

11     I declare under penalty of perjury under the laws of the United State of
America, that the forgoing is true and correct.

12

13 Date: <u>November 20, 2018</u>

14

15                 By: _Julio Mayen_____
                    Julio Mayen

16

17

18

19

20

21

22

23

24

25

26

27

28

1
**<u>Proof of Service</u>**

2

3   I certify that I have served a copy of:

4   **1 – Plaintiff's Opposition to Defendant's Motion to Dismiss or for a More**

5   **Definite Statement to Plaintiff's Third Amended Complaint, with Exhibits,**

6   **against Defendant New Penn Financial, LLC, dba Shellpoint Mortgage**

7   **Servicing (Shellpoint),** on

8   November 20, 2018 by (OVERNIGHT DELIVERY) via Federal Express:

9

10

| | |
|---|---|
| AKERMAN LLP<br>PRESTON K. ASCHERIN (SBN 260361)<br>Email: preston.ascherin@akerman.com<br>PARISA JASSIM (SBN 273915)<br>Email: parisa.jassim@akerman.com<br>601 West Fifth Street, Suite 300<br>Los Angeles, California 90071<br>Telephone: (213) 688-9500<br>Facsimile: (213) 627-6342 | Attorneys for Defendant<br>New Penn Financial, LLC, dba<br>Shellpoint Mortgage Servicing<br>(Shellpoint) |

11

12

13

14

15

16

17

18

19

20   Julie Mayen
15335 Castle Peak Lane
21   Jamul, CA  91935
ekultan@gmail.com
22

23

24

25

26

27

28

# Exhibit TAC/OPP-A



P.O. BOX 1410
TROY, MI 48099-1410
RETURN SERVICE REQUESTED



Mon – Thurs: 8:00AM-10:00PM
Fri: 8:00AM-10:00PM
Sat: 8:00AM-3:00PM

**Phone Number: 866-316-4706**
**Fax: 866-467-1137**
**www.shellpointmtg.com**

հիորկլՍԱԽւՍՈւ||ԱւԽ|.|.|.|ԱԱ||Աւ|ԱԱկ||ԱԱ||ԱԱ|
S-SFRECS20 L-151 R-117
P5W2DF00300731 - 673884692 l01462
**JULIO MAYEN**
**SARAH MAYEN**
**15335 CASTLE PEAK LN**
**JAMUL CA 91935-2238**

| Loan Number: | 0515393708 |
|---|---|
| Principal Balance: | $1,178,080.66 |
| Property: | 15335 Castle Peak Lane Jamul, CA 91935 |

07/19/2016

RE: Loan Number: 0515393708

Dear Julio Mayen and Sarah Mayen:

We are in receipt of your recent complaint regarding the above-referenced account serviced by Shellpoint Mortgage Servicing, on behalf of BANK OF NEW YORK AS TRUSTEE FOR CWMBS 2005-07, the owner of your loan. Their address is 101 Barclay St., 8W  New York NY 10286

We are working to gather the requested information and will respond within the allotted timeframe.

If we can be of any further assistance, please contact our Customer Service department at 866-316-4706.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número 866-316-4706.

Customer Service Department
Shellpoint Mortgage Servicing

**SEE REVERSE SIDE OR ATTACHED FOR AN IMPORTANT STATEMENT OF YOUR RIGHTS.**

P I000001 A-0515393708 000260101J0400

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

California Residents: As required by law, you are hereby notified that a negative credit bureau report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill your credit obligation.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service. Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ninguno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

"Como es requerido por la ley usted esta siendo notificado por este medio que un reporte de crédito negativo afectando su reporte de crédito puede ser remitido a una agencia de reporte de créditos, si usted no puede satisfacer los términos de su obligación."

"El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov"

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio. Hay consejería para los uniformados disponible de Military OneSource y de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

# Exhibit TAC/OPP-B



**Shellpoint**
Mortgage Servicing

55 Beattie Place, Suite 110
Greenville, SC 29601

Toll Free Phone 1-800-365-7107
Toll Free Fax 1-866-517-8525

*Hours of Operation*
Monday-Friday 8:00AM-10:00PM
Saturday 8:00AM-3:00PM

July 28, 2016

Julio Mayen
Sarah Mayen
15335 Castle Peak Lane
Jamul, CA 91935

RE:    Case # 160715-000040
       Reference Number: 0515393708

Dear Mr. and Mrs. Mayen:

This letter is in response to the Consumer Financial Protection Bureau ("CFPB") complaint submitted July 15, 2016, regarding the above referenced loan. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on March 1, 2014.

Please note, Shellpoint takes its customer service and consumer protection obligations very seriously and has significant staff dedicated to its compliance related functions in order to identify, resolve, and permanently correct operational deficiencies and improve upon customer concerns.

Our records indicate you have submitted to this office a notice demanding that we cease communication with you. Thus, this letter is for the limited purpose of responding to your dispute and notifying you of the results of our investigation.

Per the complaint, you advise you have requested a validation of debt several times; however, Shellpoint has not responded to each request. You also state the foreclosure action is not valid based on your allegation The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07 is not the Holder of the Note. Additionally, you have requested a cease and desist be placed on the loan.

Please be advised, Shellpoint has determined some of your inquiries do not fall within the scope of a Qualified Written Request because they are related to the origination of the loan or the trust. Shellpoint is required to respond to inquiries relating to the servicing of the loan. We are not required to respond to inquiries related to origination, underwriting, subsequent sale or securitization; or determination to sell, assign, or transfer the servicing of the mortgage loan.

In keeping with our goal to achieve the highest level of customer satisfaction, please review the following loan information:

DE07292016E



1.  The current owner of this loan is The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of CWMBS, Inc., CHL Mortgage Pass-Through Trust 2005-07, Mortgage Pass-Through Certificates, Series 2005-07 ("BONY") and their address is:

    101 Barclay St. 8W
    New York, NY 10286
    412-234-5000

2.  This loan originated with Countrywide Home Loans, Inc. on December 27, 2004, for an Adjustable Rate Note.

3.  The original loan was for $1,088,000.00 at an initial interest rate of 1.000% with initial payments of $3,499.44. The interest rate and payment may change, as described in Sections 2 and 3 of the Note.

4.  Payments are to be made on the 1st day of each month, beginning February 1, 2005, plus any remaining amount due on the maturity date of January 1, 2035.

5.  No payments have been made since the loan was transferred to Shellpoint in March 2014.

6.  The loan is past due and has been since March 1, 2009.

Shellpoint has determined that your dispute does not provide any specific details regarding servicing errors or any specific information on which we can form the basis for further investigation. Based on present investigation of your dispute, Shellpoint is not able to determine that any error has occurred.

You have the right to request documentation supporting our determination that no error has occurred. Enclosed is a copy of the Assignment, Adjustable Rate Note, Mortgage, Notice of Servicing Transfer, and the Loan Transaction history.

If you believe there are significant errors in the servicing of this loan, pleased provide specific details regarding any errors you believe have occurred, along with any supporting documentation you may have, and Shellpoint will gladly assist. Our address to forward your correspondence is:

Shellpoint Mortgage Servicing
Disputes Department
P.O. Box 10826
Greenville, SC 29603
OR
Fax: 866-467-1137

With regard to your concerns that you were not contacted to be advised of the available loss mitigation options, Shellpoint respectfully disagrees. In addition to a letter to you dated May 4, 2016, Shellpoint also issued you the enclosed solicitations inviting you to apply for the available loss mitigation options. Shellpoint has yet to receive any of the required documentation. If you wish to be evaluated for the available loss mitigation options, please provide the documentation requested in the enclosed solicitations as soon as possible to Shellpoint's Loss Mitigation Department via facsimile at (866) 467-1187 or via email to lossmitigation@shellpointmtg.com. Upon the receipt of the required documentation, Shellpoint will assess your eligibility for the available loss mitigation options and notify you of the outcome in writing.

As you know, the subject property has been referred to an attorney to commence foreclosure proceedings, and time is of the essence as a sale has been scheduled for the subject property to

DE07292016E

occur on August 22, 2016. If you have any questions regarding the documentation that we require and/or the loss mitigation process, please contact the loan's assigned loss mitigation representative, Christian Perez, via telephone at (866) 825-2174, extension 7527. You may also contact Shellpoint's Loss Mitigation Department via telephone at (866) 825-2174.

I hope this addresses the concerns you expressed in your complaint. If you have any further questions, comments, or concerns, please feel free to contact me directly at 864-312-4850.

Sincerely,

Kara Watt
Compliance Department
Shellpoint Mortgage Servicing

Enclosures

---

This communication is sent to you by Shellpoint Mortgage Servicing, a professional debt collector.

**Please read the following important notices as they may affect your rights.**

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

The state Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt. Collectors may contact another person to confirm your location or enforce a judgment. For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftc.gov.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

The following is a Spanish translation of the information previously provided:

**Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.**

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

DE07292016E

El acto estatal de Rosenthal Fair Debt Collection Practices, y el acto federal de Fair Debt Collection Practices requieren que, a menos de circunstancias inusuales, los cobradores no podrán contactarlo antes de las 8 a.m. o después de las 9 p.m. Ellos no lo podrán acosar usando amenazas violentas o arrestarlo o usar un lenguaje ofensivo. Los cobradores no podrán usar declaraciones falsas o engañosas o llamarlo a su trabajo si ellos saben o tienen razón para saber que usted no puede recibir llamadas personales en su trabajo. En general, cobradores no le podrán decir a otra persona, aparte de su abogado o su esposa, acerca de su deuda. Los cobradores se podrán comunicar con otras personas para poder comunicarse con usted, y para entablar un juicio. Para más información sobre las actividades de colección de deuda, usted puede contactar Federal Trade Commission al 1-877-FTC-HELP o www.ftc.gov.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

DE07292016E

# Exhibit TAC/OPP-C

**Shellpoint**
Mortgage Servicing

75 Beattie Place, Suite 300
Greenville, SC 29601

Phone Number: (866) 825-2066
Fax: (866) 467-1187
e-Mail: loanservicing@shellpointmtg.com

Hours of Operation (EST)
Monday - Friday: 8 a.m.-10 p.m.
Saturday: 8 a.m.-3 p.m.

May 4, 2016

Julio Mayen
Sarah Mayen
15335 Castle Peak Lane
Jamul CA, 91935

Re:    Case #:           452956
       Reference #:      515393708
       Account #:        xxxx2584
       Property:         15335 Castle Peak Lane
                         Jamul CA, 91935

Dear Julio and Sarah Mayen:

We received your inquiry regarding the above referenced mortgage loan, and we have provided the requested information below.

 The Bank of New York Mellon FKA The Bank of New York as trustee for CWMBS 2005-07 is currently the owner of the account number ending in 2584. Shellpoint Mortgage Servicing ("Shellpoint") began servicing the loan on the behalf of the owner referenced above on or about March 1, 2014. As of the date of this response, the unpaid principal balance is $1,178,080.66. Note that interest, payments, credits, and other allowable charges may cause the loan's balance to vary daily; therefore, you should contact Shellpoint at (866) 316-4706 to determine the exact balance.

As of the date on this letter, this loan is due for the March 1, 2009 through May 1, 2016 mortgage payments and has a total balance due in the amount of $660,650.07. As a result of this past due balance, this loan was referred to an attorney to initiate foreclosure proceedings. At this time, there has been a sale date scheduled on May 31, 2016. Shellpoint maintains that the foreclosure proceedings, including filing of the notice of default, was completed in accordance with all state and federal laws as well as within the terms of the loan note.

Shellpoint remains committed to offering our borrowers who are experiencing a financial difficulty, workout options such as a loan modification to assist them with their mortgages. To be reviewed for these workout options and for the foreclosure sale to be postponed, we must have complete package of your documented income and financials. To begin the evaluation process, please provide the following documents to our Loss Mitigation Dept.

- **Uniform Borrower Assistance Form (enclosed)**
- **IRS Form 4506-T (enclosed)**
    - For assistance with completing this form, please refer to the enclosed document entitled "How to Complete IRS Form 4506-T"
- **Dodd-Frank Certification Form**
- **Statement from the homeowners association reflecting your monthly/annual dues (if applicable)**
- **Proof of income (where applicable)**
    - Most recent month's paystubs (wage earner)
    - Year-to-date or most recent quarterly Profit and Loss Statement (self-employed)
    - Award Letter for benefits (Social Security, disability, retirement, alimony etc.)
    - Lease Agreement (rental income)
- **Two (2) most recent months bank statements**
    - Must reflect the name of your financial institution and include all pages for each statement
    - Must reflect receipt of rental income (if applicable)

Approval Comment Here

- **Signed, dated letter explaining any deposits greater than $1,000.00 on the bank statements (if applicable)**
- **For any contributor that resides in the subject property and contributes to the household expenses, we require the following documentation:**
  - Proof of income (as outlined above)
  - Completed IRS Form 4506-T
  - Two (2) most recent months' bank statements
  - Signed, dated letter confirming the amount the contributor provides to the monthly household expenses

You may forward these documents to the Loss Mitigation Department via facsimile at (866) 467-1187 or via email to lossmitigation@shellpointmtg.com. For more information regarding the documents needed or foreclosure status, please contact our Loss Mitigation Department directly at (866) 825-2174 for further information regarding the documentation needed.

Should you have further questions, you may contact Shellpoint's Escalations Department at (888) 536-9761 Monday through Friday between the hours of 8:00 a.m. to 5:00 p.m. (EST).  You may also reach us via email at escalations@shellpointmtg.com.

Si usted no entiende el contenido de esta carta, por favor contacte a uno de nuestros representantes que hablan español al número (800) 365-7107.

Sincerely,


Escalation Department
Shellpoint Mortgage Servicing

Enclosure:        Uniform Borrower Assistance Form, IRS Form 4506-T, and Dodd-Frank Certification Form



### Please read the following important notices as they may affect your rights.

This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector.

If you are a customer in bankruptcy or a customer who has received a bankruptcy discharge of this debt: please be advised that this notice is to advise you of the status of your mortgage loan. This notice constitutes neither a demand for payment nor a notice of personal liability to any recipient hereof, who might have received a discharge of such debt in accordance with applicable bankruptcy laws or who might be subject to the automatic stay of Section 362 of the United States Bankruptcy Code. However, it may be a notice of possible enforcement of the lien against the collateral property, which has not been discharged in your bankruptcy.

**Attention Servicemembers and Dependents:** The federal Servicemembers Civil Relief Act and certain state laws provide important protections for you, including interest rate protections and prohibiting foreclosure under most circumstances during and twelve months after the servicemember's military or other service.  Counseling for covered servicemembers is available from Military OneSource and the United States Armed Forces Legal Assistance or other similar agencies.

The following is a Spanish translation of the information previously provided:

### Lea por favor las siguientes avisos importantes que puedan afectar sus derechos.

El objeto de la presente notificación es gestionar el cobro de la deuda, y toda información obtenida será utilizada a tal fin. La presente comunicación proviene de un agente de cobro de deudas.

Si usted es un cliente en situación de bancarrota o un cliente que ha recibido una eliminación de esta deuda por bancarrota: tenga en cuenta que esta notificación tiene como fin informarle sobre el estado de su préstamo hipotecario. Este aviso no constituye una exigencia de pago ni un aviso de responsabilidad civil contra ningno de los destinatarios de la presente notificación, que pudiese haber recibido un descargo de este tipo de deuda de conformidad con la legislación vigente sobre bancarrota o que pudiera ser objeto de suspensión automática en virtud del Artículo 362 del Código de Bancarrota de los Estados Unidos. No obstante, puede ser una notificación de una posible aplicación de gravamen sobre la propiedad como garantía, que aún no ha sido descargada en su proceso de bancarrota.

Approval Comment Here

**Atención uniformados y dependientes:** la Ley federal de Ayuda Civil para Uniformados y algunas leyes estatales brindan importantes protecciones para usted, que incluyen protecciones para las tasas de interés y la prohibición de las ejecuciones hipotecarias en la mayoría de las circunstancias durante y doce meses después del servicio militar u otro tipo de servicio.  Hay consejería para los uniformados disponible de Military OneSource y  de United States Armed Forces Legal Assistance (Asistencia jurídica para las Fuerzas Armadas de los Estados Unidos) u otros organismos similares.

# **Exhibit TAC/OPP-D**



Services    News    Government    Local

# NYS Department of State
## Division of Corporations
## Entity Information
### The information contained in this database is current through November 16, 2018.

Selected Entity Name: **THE BANK OF NEW YORK COMPANY, INC.**

**Selected Entity Status Information**

Current Entity Name: **THE BANK OF NEW YORK COMPANY, INC.**
DOS ID #: **225633**
Initial DOS Filing Date: **JULY 09, 1968**
County: **NEW YORK**
Jurisdiction: **NEW YORK**
Entity Type: **DOMESTIC BUSINESS CORPORATION**
Current Entity Status: **INACTIVE - Merged Out (Jul 01, 2007)**

**Selected Entity Address Information**

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)
THE BANK OF NEW YORK COMPANY, INC.
ATTN: LEGAL DEPT, HEAD OF LIT.
ONE WALL STREET
NEW YORK, NEW YORK, 10286
**Chief Executive Officer**
THOMAS A. RENYI
1 WALL STREET
NEW YORK, NEW YORK, 10286
**Principal Executive Office**
PATRICIA A. BICKET
1 WALL STREET
NEW YORK, NEW YORK, 10286
**Registered Agent**
NONE

This office does not record information regarding the names and addresses of officers, shareholders or directors of nonprofessional corporations
except the chief executive officer, if provided, which would be listed above. Professional corporations must include the name(s) and address(es)
of the initial officers, directors, and shareholders in the initial certificate of incorporation, however this information is not recorded and only
available by viewing the certificate.

# Exhibit TAC/OPP-E-1



≡ Gmail    Search mail

Back  Archive  Spam  Delete    Mark as unread  Snooze    Move to  Labels  More                    113 of 146    ‹   ›

## Owner of my property / loan    Inbox

Julio M. <ekultan@gmail.com>                                                              Sep 26, 2014, 8:39 AM    ☆    ↩ Reply    ⋮
to mbs.property.inquiries, bcc: mbs.properties.inquiries ▾

I have been receiving payment requests from unknown sources claiming that the current "owner" of my loan is "Bank of New York" (BONY) and from my research BONY is no longer in business since 2007.  Please let me know any and all information you might have on my property located at: 15335 Castle Peak Lane Jamul, CA  91935.

Best Regards,

Julio Mayen

MBS.Property.Inquiries@bnymellon.com                                                      Sep 29, 2014, 5:46 AM    📷    ↩ Reply    ⋮
to me ▾

Thank you for your recent correspondence.

As per our database, you will need to contact the servicer for the address(es) listed in your email.  The servicer info is as follows:

Servicer:  Bank of America N.A.
Phone #:  800.669.6650/ 888.219.7773/ 866.781.0029 (option 3)/ 877.498.7226/ 800.669.2443

The servicer is the direct and only contact who would have the information you are seeking.  BNY Mellon is not an investor but a Trustee and therefore does not physically own the loan or the property.  BNY Mellon does not have any say in how the property is disposed, loan modifications, etc.  This is the responsibility of the Servicer.

If you were referred to BNY Mellon by Bank of America, please provide the name of Bank of America representative for our records.

Thank you for contacting BNY Mellon.

**BNY Mellon Property Inquiries**
Global Corporate Trust – Mortgage Backed Securities • Fax 212.815.8094

**Owner of my property / loan**

Julio M.                    to:         MBS Property Inquiries                                    09/26/2014 11:39 AM

# Exhibit TAC/OPP-E-2

URGENT!!! – ***NOTICE TO CEASE AND DESIST AND IMMEDIATELY CANCEL UNLAWFUL TRUSTEE SALE***   Inbox ×

**Julio M.**
BANK OF NEW YORK MELLON MBS.Property Inquiries Department, Attached please find a copy of my Verified Notice of VOID Assignment of DOT and VOID Substitution of

Fri, Jul 15, 2016, 12:45 AM

**MBS.Property.Inquiries@bnymellon.com**
to me ▾

Mon, Jul 18, 2016, 5:09 AM   ← Reply   ⋮

Thank you for your recent correspondence.

BNY Mellon is acting as a Trustee, and therefore we do not own the loan or the property. As trustee, BNY Mellon is not involved in the servicing of the loans or the foreclosure process. This is the responsibility of the Servicer. Since Bank of America services the loan associated with your property, they are the direct and only contact in regards to your request. I have forwarded your email to them for handling. Please contact me should you not hear from them. I have also included their contact information below.

Servicer: Bank of America, Master Servicer
Phone #: Existing Mortgages/ REO: 800.669.6607 (For callers interested in purchasing an available Bank of America owned property, please refer to BOA's website at www.realestatecenter.bankofamerica.com)
   **Existing Home Equity Lines of Credit & Loans**: 800.934.5626

Thank you for contacting BNY Mellon.

**BNY Mellon Property Inquiries**
Global Corporate Trust – Mortgage Backed Securities · Phone 800.269.6776

URGENT!!! – ***NOTICE TO CEASE AND DESIST AND IMMEDIATELY CANCEL UNLAWFUL TRUSTEE SALE***

Julio M.                         to:        mbs.property.inquiries                                                        07/15/2016 03:45 AM

The information contained in this e-mail, and any attachment, is confidential and is intended solely for the use of the intended recipient. Access, copying or re-use of the e-mail or any attachment, or any information contained therein, by any other person is not authorized. If you are not the intended recipient please return the e-mail to the sender and delete it from your computer. Although we attempt to sweep e-mail and attachments for viruses, we do not guarantee that either are virus-free and accept no liability for any damage sustained as a result of viruses.

Please refer to http://disclaimer.bnymellon.com/eu.htm for certain disclosures relating to European legal entities.
...

[Message clipped] View entire message



# Exhibit TAC/OPP-E-3



# Is BONYM The "Owner" of my loan?

**Julio M.** <ekultan@gmail.com>
to MBS.Property.Inquiries, bcc: Julio

Oct 4, 2018, 1:25 AM

BANK OF NEW YORK MELLON
MBS.Property.Inquiries Department,

Repeatedly I am being told by a debt collector that The Bank of New York Mellon is the "Owner" of my Loan. Will you please advise me if this is a true fact or not? Please give me as much detailed information as possible.

My address is:
15335 Castle Peak Lane.
Jamul, CA. 91935

Best Regards,

Julio Mayen

---

**MBS Property Inquiries** <mbs.property.inquiries@bnymellon.com>
to me

Oct 4, 2018, 4:40 AM

Thank you for your recent correspondence.

As per our records, you will need to contact the servicer for the address(es) listed in your email. The servicer info is as follows:

Servicer: Bank of America N.A., Master Servicer
Phone #: Existing Mortgages/ REO: 800.669.6607 (For callers interested in purchasing an available Bank of America owned property, please refer to BOA's website at https://realestatecenter.bankofamerica.com)
Existing Home Equity Lines of Credit & Loans: 800.934.5626

BNY Mellon is acting as a Trustee, and therefore we do not own the loan or the property. As trustee, BNY Mellon is not involved in the servicing of the loans or the foreclosure process. . This is the responsibility of the Servicer. The servicer is the direct and only contact who would have the information you are seeking.

If you were referred to BNY Mellon by Bank of America, please provide the name of Bank of America representative for our records.

Thank you for contacting BNY Mellon.

**BNY Mellon Property Inquiries**
Global Corporate Trust - Mortgage Backed Securities - Phone 800.269.6776

From: Julio M. <ekultan@gmail.com>
Sent: Thursday, October 4, 2018 4:26 AM
To: MBS Property Inquiries <mbs.property.inquiries@bnymellon.com>

# **Exhibit TAC/OPP-F**

Recording Requested By:
G. COOK

RECORDING REQUESTED BY:
COMMONWEALTH LAND TITLE COMPANY

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
MARICELA SANCHEZ-PEREZ

3700692- 501

**12612**

DOC # 2004-1229184

DEC 30, 2004    8:50 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
GREGORY J. SMITH, COUNTY RECORDER
FEES:        81.00
PAGES:       25        DA:    1

2004-1229184

———————— [Space Above This Line For Recording Data] ————————

96067 G                    0008768258412004
[Escrow/Closing #]              [Doc ID #]

# DEED OF TRUST

MIN 1000157-0004585170-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated  DECEMBER 27, 2004   , together with all Riders to this document.

**(B) "Borrower" is**
JULIO MAYEN, AND SARAH A MAYEN, HUSBAND AND WIFE AS COMMUNITY PROPERTY WITH RIGHT OF        SURVIVORSHIP

**CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 16

-6A(CA) (0207)     CHL (09/02)(d)     VMP MORTGAGE FORMS - (800)521-7291     Form 3005  1/01
CONV/VA

Initials: 

*23991*                    *0876825840000001006A*

*12613*

DOC ID #: 0008768258412004

Borrower's address is
768 FOURTH AVE, CHULA VISTA, CA 91910
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada, Calabasas, CA 91302-1613
(D) "Trustee" is
CTC REAL ESTATE SERVICES
155 N. LAKE AVENUE, PASADENA, CA 91109 ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  DECEMBER 27, 2004   . The Note states that Borrower owes Lender
ONE MILLION EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 1,088,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  JANUARY 01, 2035       .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

VMP®-6A(CA) (0207)          CHL (09/02)          Page 2 of 16          Initials: [signature]
Form 3005 1/01

12614

DOC ID #: 0008768258412004

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY                of              SAN DIEGO                    :
[Type of Recording Jurisdiction]                [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.


Parcel ID Number: 519-210-32-00                         which currently has the address of
15335 CASTLE PEAK LANE, JAMUL
[Street/City]
California    91935    ("Property Address"):
[Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: [signature]

-6A(CA) (0207)      CHL (09/02)      Page 3 of 16                    Form 3005  1/01

12615

DOC ID #: 0008768258412004

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

12616

DOC ID #: 0008768258412004

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

-6A(CA) (0207)          CHL (09/02)          Page 5 of 16          Initials: _____          Form 3005  1/01

12617

DOC ID #: 0008768258412004

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

VMP -8A(CA) (0207)          CHL (09/02)          Page 6 of 16          Initials _____ Form 3005 1/01

12618

DOC ID #: 0008768258412004

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.



12619

DOC ID #: 0008768258412004

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

12620

DOC ID #: 0008768258412004

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials

12621

DOC ID #: 0008768258412004

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

12622

DOC ID #: 0008768258412004

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

-6A(CA) (0207)        CHL (09/02)              Page 11 of 18                    Initials: _____  Form 3005 1/01

12623

DOC ID #: 0008768258412004

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

12624

DOC ID #: 0008768258412004

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

-6A(CA) (0207)          CHL (09/02)          Page 13 of 16          Initials          Form 3005 1/01

12625

DOC ID #: 0008768258412004

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

12626

DOC ID #: 0008768258412004

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     JULIO MAYEN                    -Borrower

_____     _____ (Seal)
                                     SARAH A. MAYEN                  -Borrower

                                     _____ (Seal)
                                                                     -Borrower

                                     _____ (Seal)
                                                                     -Borrower

VMP®-6A(CA) (0207)        CHL (09/02)         Page 15 of 16              Form 3005 1/01

12627

State of California
County of San Diego                    } ss.

DOC ID #: 0008768258412004

On December 27, 2004 before me, KIM C. PHAM, Notary Public, personally appeared

Julio Mayen and Sarah A. Mayen

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)



KIM C. PHAM
Comm. # 1353469
NOTARY PUBLIC · CALIFORNIA
County of San Diego
My Comm. Expires April 25, 2006